| | |
|---|---|
| 1  Andrew James Ensor | |
| 2  2367 Conway Rd #218 | |
| 3  Orlando, Florida 32812 | **IN THE CIRCUIT COURT OF THE** |
| 4  314.882.0551 - 407.235.5301 | **NINTH JUDICIAL CIRCUIT IN AND** |
| 5  AJEnsr@aol.com | **FOR ORANGE COUNTY, FLORIDA** |
| 6 | |
| 7 | |
| 8  Andrew James Ensor, per se | **Case No:** |
| 9  **Plaintiff / Petitioner** | |
| 10          **vs.** | **JUDGE:** |
| 11  1. **The Park at Venosa Apartments** | |
| 12  2320 Conway Road, Orlando, Florida 32812 | |
| 13  AKA: **Blue Rock Premier Properties, LLC** | |
| 14      Florida Entity | |
| 15      **FL.DOC #:** L15000178344 | |
| 16      **FEI/EIN:** 47-5374174; | **COMPLAINT FOR** |
| 17 | **VIOLATION(S) OF LAW** |
| 18  2. **Conway Property Holdings, LLC** | **DAMAGES AND** |
| 19  Foreign Limited Liability Company | **EQUITABLE RELIEF** |
| 20  Delaware | |
| 21  FL File # M21000006467: 26 May 2021 | **JURY TRIAL DEMANDED** |
| 22 | |
| 23  3. **Randy X. Ferreira:** | |
| 24  Blue Rock Premier Properties, LLC | |
| 25  Florida real estate broker license numbers | |
| 26  **BK 3221456** and **3352834,** | |
| 27  issued in 2009 and 2016 respectively | |
| 28 | |
| 29  4. **Lisa Gorsuch** – Executive *Secretary* and | |
| 30  CFO of Blue Rock Premier Properties, LLC | |
| 31 | |
| 32          **Defendant(s)/Respondent(s)** | |
| 33 | |
| 34 | |

35      **COME NOW PLAINTIFF** ANDREW JAMES ENSOR, seeking equitable relief

36  for Harm Imposed Upon Him for violations of law by his landlord and such agents,

37  individuals and or entities lawfully responsible for **The Park at Venosa Apartment**

38  **Homes: 2320 Conway Road, Orlando, Florida 32812.**  In support thereof the plaintiff

39  states the following:

**TABLE OF CONTENTS**

I. Jurisdiction and Venue                                          5

II. Petitioner's Pro Se Status                                     5

III. Parties                                                       7

IV. General Allegations                                            9

V. Claims for Relief                                               12

Count I: Fraudulent Inducement                                     12

Count II: FDUTPA – Fla. Stat. § 501.204                            14

Count III: Disability Discrimination (FHA, ADA)                    15

Count IV: Breach of Quiet Enjoyment / No Ratification              16

Count V: Gross Negligence – Fla. Stat. § 768.72                    24

Count VI: Federal Civil RICO – 18 U.S.C. § 1962(c)                 26

Count VII: Florida Civil RICO – Fla. Stat. §§ 772.103–104          30

Count VIII: Piercing the Corporate Veil / Alter Ego               32

Count IX: Vicarious Liability & Negligent Supervision              34

Count X: Negligent Misrepresentation                               37

Count XI: Constructive Eviction                                    38

Count XII: Civil Conspiracy to Commit Fraud                        40

Count XIII: Breach Americans with Disabilities Act                 42

Count XIV: Unjust Enrichment                                       43

Count XV: Intentional Infliction of Emotional Distress             45

XVI. Request for Declaratory Judgment                              47

DISCUSSION:                                                        48

DISCOVERY will show:                                              49

INFESTATION                                                        50

Prayer for Relief                                                  54

INJUNCTIVE AND DECLARATORY RELIEF                                  58

CERTIFICATE OF SERVICE                                             60

68    **Authorities Cited**

69    Case    Citation(s)
70    Access Now, Inc. v. S. Fla. Stadium Corp. (S.D. Fla. 2001)                    1
71    Agritrade, LP v. Quercia (Fla. 3d DCA 2017)                                   1
72    Absolute Activist Value Master Fund Ltd. v. Devine (11th Cir. 2021)           1
73    Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n (Fla. 1st DCA 2020) 1
74    Boyle v. United States (556 U.S. 938 (2009))                                  1
75    Charles v. Fla. Foreclosure Placement Ctr., LLC (Fla. 3d DCA 2008)            1
76    Dania Jai-Alai Palace, Inc. v. Sykes (Fla. 1984)                             1
77    Deltona Corp. v. Jannotti (Fla. 1st DCA 1981)                                1
78    Dooley v. Gary the Carpenter Constr., Inc. (Fla. 3d DCA 2023)                 1
79    Erickson v. Pardus (551 U.S. 89 (2007))                                       1
80    Francis v. Kings Park Manor (2d Cir. 2021)                                    1
81    Ginsberg v. Lennar Homes, LLC (Fla. 3d DCA 2021)                              1
82    Gilchrist Timber Co. v. ITT Rayonier, Inc. (Fla. 1997)                        1
83    Hankins v. Smith (138 So. 494 (Fla. 1931))                                    1
84    Haines v. Kerner (404 U.S. 519 (1972))                                        1
85    Haines City Community Dev. v. Heggs (Fla. 1995)                              1
86    H.J. Inc. v. Northwestern Bell Tel. Co. (492 U.S. 229 (1989))                1
87    Hankins v. Smith (138 So. 494 (Fla. 1931))                                    1
88    HTP, Ltd. v. Lineas Aereas Costarricenses, S.A. (Fla. 1996)                   1
89    Hunt v. Aimco Props., L.P. (11th Cir. 2016)                                   1
90    Iglesia Cristiana La Casa Del Señor, Inc. v. L.M. (Fla. 3d DCA 2001)          1
91    Javins v. First Nat'l Realty Corp. (D.C. Cir. 1970)                           1
92    Katz Deli of Aventura, Inc. v. Waterways Plaza, LLC (Fla. 3d DCA 2013)        1
93    Kaufman v. High Seas, LLC (Fla. 4th DCA 2024)                                 1
94    Malicki v. Doe (Fla. 2002)                                                    1
95    Merrill Crossings Assocs. v. McDonald (Fla. 1997)                             1
96    Nazareth v. Herndon Ambulance Serv., Inc. (Fla. 5th DCA 1985)                1
97    Oubre v. Entergy Operations, Inc. (U.S. 1998)                                 1
98    Payne v. Cudjoe Gardens Prop. Owners Ass'n (Fla. 3d DCA 2020)                1
99    Reves v. Ernst & Young (507 U.S. 170 (1993))                                 1
100   Roth v. Charter Club, Inc. (Fla. 3d DCA 2007)                                1
101   Samana, Inc. v. Lucena (Fla. 3d DCA 2019)                                    4
102   Santa Rosa Cty. v. Admin. Comm'n (Fla. 1995)                                 1
103   Schaw v. Habitat for Humanity of Citrus Cnty., Inc. (11th Cir. 2019)         1
104   Smith v. Grove Apartments, LLC (Fla. 3d DCA 2007)                            1
105   Tannenbaum v. United States (11th Cir. 1998)                                 1
106   Taylor v. Gutierrez (Fla. 3d DCA 2013)                                       2
107   Tiara Condo. Ass'n v. Marsh & McLennan Cos. (Fla. 2013)                      1

| | | |
|---|---|---|
| 108 | Tooltrend, Inc. v. CMT Utensili, SRL (11th Cir. 1999) | 1 |
| 109 | Turkette (452 U.S. 576 (1981)) | 1 |
| 110 | United States v. Cagnina (11th Cir. 2012) | 1 |
| 111 | Walters v. Blankenship (Fla. 5th DCA 2006) | 1 |
| 112 | Weller v. Reitz (Fla. 5th DCA 1982) | 1 |
| 113 | Williams v. Mohawk Indus., Inc. (11th Cir. 2006) | 1 |
| 114 | _____ | |
| 115 | Statutes | |
| 116 | Statute Citation(s) | |
| 117 | | |
| 118 | 18 U.S.C. § 1961–1968 (RICO predicates) | 1 |
| 119 | 18 U.S.C. § 1962(c) (Civil RICO) | 1 |
| 120 | 18 U.S.C. § 1964(c) (Civil RICO private right) | 1 |
| 121 | 28 U.S.C. § 1331 (Federal question) | 0 (implied) |
| 122 | 42 U.S.C. § 12102 (ADA definition of disability) | 1 |
| 123 | 42 U.S.C. § 12182 (ADA Title III) | 1 |
| 124 | 42 U.S.C. § 3601 et seq. (Fair Housing Act) | 1 |
| 125 | 42 U.S.C. § 3602(h) (FHA definition of disability) | 1 |
| 126 | 42 U.S.C. § 3604(f)(1)–(2) (FHA discrimination) | 1 |
| 127 | Fla. Stat. § 26.012 (Circuit court jurisdiction) | 1 |
| 128 | Fla. Stat. § 47.011 & § 47.051 (Venue) | 1 |
| 129 | Fla. Stat. § 83.51(1)(a) (Landlord habitability) | 1 |
| 130 | Fla. Stat. § 83.53 (Notice to terminate) | 1 |
| 131 | Fla. Stat. § 86.011 (Declaratory judgment) | 1 |
| 132 | Fla. Stat. § 95.11(3)(k) (4-year SOL) | 1 |
| 133 | Fla. Stat. § 768.72 (Punitive damages) | 2 |
| 134 | Fla. Stat. § 772.102–104 (Florida RICO) | 2 |
| 135 | Fla. Stat. § 784.05 (Culpable negligence) | 1 |
| 136 | Fla. Stat. § 501.201 & § 501.204 (FDUTPA) | 1 |
| 137 | | |
| 138 | | |
| 139 | | |
| 140 | | |

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under **Fla. Stat. §26.012**, as the amount in controversy exceeds $50,000 exclusive of fees and costs.

2. Venue is in Orange County under **Fla. Stat. §§47.011 and 47.051** because:

   o The property is located in Orange County, Florida;

   o All material acts and omissions occurred in Orange County, Florida;

   o Defendants conduct substantial business here.

   o FHA (III), ADA (XIII), and federal RICO (VI) claims can be filed in state Circuit Court due to concurrent jurisdiction.

   o Hunt v. Aimco Props, L.P., <u>814 F.3d 1213</u> (11th Cir. 2016): Confirms state court jurisdiction for FHA claims, applicable to the 9th Circuit.

   o Samana, Inc. v. Lucena, <u>264 So. 3d 1076</u> (Fla. 3d DCA 2019): Supports Circuit Court jurisdiction for fraud claims.

   o ADA claims have concurrency: 42 <u>U.S.C.</u> § 12182

   o Federal RICO claims have concurrency: 18 U.S.C. § 1961-1968, § 1962(c)

3. Certain claims herein arise under federal law, including the **Fair Housing Act, 42 U.S.C. §3601 et seq.**, and **the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961–1968**.

## II. PETITIONER'S PRO SE STATUS

4. Petitioner **ANDREW JAMES ENSOR** is an individual citizen of the United States, residing in Orlando, Florida. Petitioner is disabled, served in the U.S. MARINE Corps and suffers from degenerative spinal disease and diabetes, conditions that

173    substantially limit one or more major life activities, qualifying him as an individual

174    with a disability under the Americans with Disabilities Act (ADA), 42 U.S.C. §

175    12102, and the Fair Housing Act (FHA), 42 U.S.C. § 3602(h). Plaintiff is a tenant

176    at The Park at Venosa Apartment Homes: 2320 Conway Road, Orlando, Florida

177    32812 beginning in June 2023. Petitioner is indigent, living on Social Security only,

178    cannot afford the services of a lawyer and is proceeding "pro se". Well established

179    case law assigns pleadings of pro se litigants are held to less stringent standards than

180    formal pleadings drafted by lawyers. SEE: Haines v. Kerner, 404 U.S. 519, 520

181    (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (reaffirming that a "pro se

182    complaint, however in-artfully pleaded, must be held to less stringent standard(s)

183    than formal pleadings drafted by lawyers"); Tannenbaum v. United States, 148 F.3d

184    1262, 1263 (11th Cir. 1998). Petitioners respectfully request the Court to apply the

185    well-established Florida principle that pleadings filed by pro se litigants are held to

186    less stringent standards than those drafted by attorneys. See *Payne v. Cudjoe*

187    *Gardens Property Owners Ass'n, Inc.*, 310 So. 3d 106, 109 (Fla. 3d DCA 2020).

188    Respectfully, the Court is asked to interpret this complaint with due consideration

189    for substance over form and in light of Petitioner's good faith effort to assert legally

190    cognizable claims. Haines City Community Development v. Heggs, 658 So. 2d 523,

191    526 (Fla. 1995) ): *"The right of access to courts must be broadly construed in favor*

192    *of the pro se litigant."* The Court is asked to afford petitioner's pleadings such

193    liberal construction and considerations given his circumstances.   There is no

194    ghostwriting herein.  Just watching a large volume of You Tube Videos and reading

195      examples of complaints filed with the Court(s) in the past, and available on the

196      internet.

197    **III. PARTIES**

198

199    5.  **Plaintiff, Andrew James Ensor**, is a resident of Orange County, Florida, a disabled

200      individual within the meaning of **42 U.S.C. §12102(1)**, and a tenant of The Park at

201      Venosa Apartments, Orlando, FL. SEE paragraph #4 herein.

202      &bull;  **Address:** 2328 Conway Rd., Suite O, Orlando, FL 32812

203    6.  **Defendant, Blue Roc Premier Properties, LLC,** is a Florida limited liability

204      company, acting as property manager and broker (FL Lic. #L0900324).

205      &bull;  **Principal & Mailing Address:**

206      3240 Airfield Drive East

207      Lakeland, FL 33811

208      &bull;  **Registered Agent:**

209      **Erra Registered Agents, LLC**

210      2601 South Bayshore Drive, 18th Floor

211      Coconut Grove, FL 33133

212      &bull;  **Randy Ferreira** – Executive *Manager*

213      Address: 3240 Airfield Drive East, Lakeland, FL 33811

214      Randy Ferreira is also the **Founder and CEO** of the company.

215      &bull;  **Lisa Gorsuch** – Executive *Secretary* and CFO of Blue Rock Premier

216      Properties, LLC

217          1. Business address: 3240 Airfield Drive East, Lakeland, FL 33811

218          2. Also listed at: 3917 Riga Blvd, Tampa, FL 33619

219    7. **Defendant, Conway Property Holdings, LLC,** is a foreign limited liability

220       company registered to do business in Florida (FL Doc #L23000012345), owner and

221       or operator of the Park at Venosa, Orlando, FL. property.

222          • Principal Address: **3917 Riga Blvd, Tampa, FL 33619**

223            (This is the same address associated with Blue Rock Premier Properties

224            and Lisa Gorsuch.)

225          • Registered Agent:

226            **Erra Registered Agents, LLC**

227            2601 South Bayshore Drive, 18th Floor

228            Coconut Grove, FL 33133

229          • Authorized Person:

230            **Lisa Gorsuch** – *Authorized Representative*

231            Address: 3917 Riga Blvd, Tampa, FL 33619

232

233    8. **Defendant, Randy X. Ferreira,** is an individual licensed as a Florida real estate

234       broker, who personally responsible for the oversite of leasing and maintenance

235       policy(s) relevant to said property, and is entirely, Respondent Superior as to the

236       Employee(s) Agent(s), Representative(s) and contractor(s) in operation or

237       employed on said property: broker license numbers **BK 3221456** and **BK3352834**,

238       issued in 2009 and 2016 respectively

239          • Address: 3240 Airfield Drive East, Lakeland, FL 33811

240            Randy Ferreira is also the **Founder and CEO** of the company.

241

242          •     **Erra Registered Agents, LLC**
243                2601 South Bayshore Drive, 18th Floor
244                Coconut Grove, FL 33133IV.

245     **IV. GENERAL ALLEGATIONS**
246

247     9.  Beginning on, near or about **April 1, 2023**, Plaintiff contacted Defendants via

248         **Apartments.com and ApartmentHomeLiving.com**, where Defendants advertised

249         the subject unit as "clean and recently renovated." Office agents by phone repeated,

250         "recently renovated and clean."

251     10. The Plaintiff signed a lease in **June 2023**, relying on these representations.

252     11. Approximately after 14 to 21 days after moving in, Plaintiff discovered a **cockroach**

253         **infestation**, based on personal life experience; **embedded in structural walls and**

254         **HVAC systems**, rendering the unit uninhabitable.

255     12. Between **June 2023 and June 2025**, Plaintiff submitted no fewer than **5 written**

256         **complaints,** {plaintiff did not think to keep copies. He figured the problem(s) would

257         be solved. So, and order of discovery will be required to develop as evidence herein}

258         requesting remediation, and several direct conversations with maintenance

259         supervisors and other maintenance personnel the actual number of whom and the

260         volume of conversations has been lost to me over the last 3 years with one serious

261         conversation happening perhaps every other month; which Defendants either

262         ignored or superficially addressed by spraying pesticides without addressing the

263         structural cause.  In conversation(s) maintenance personnel they left the impression

264         that there just wasn't a whole lot they could do about it even though they knew about

265  it before the plaintiff moved in.   The Letter "P" Apartment is directly below the

266  Letter "O" where plaintiff resides.  The plaintiff took pictures of the "P" Apartment

267  door at night. Those pictures were included in one of the notices to management

268  demanding that they use an article 29 notice [SEE: Florida Statutes § 83.53] to put

269  a weather strip on the door to prevent the free movement of insects in and out of the

270  building. This request was denied. No action was taken, and the picture themselves

271  are of a structure of a door whose condition was preexisting plaintiffs' domicile at

272  this location. The plaintiff could literally, during the day watch lizards patrol outside

273  this door waiting for a cockroach to come in or out, and at nighttime, frogs would

274  engage in the same activity hunting cockroaches by same door. Plaintiff personally

275  explained this to the maintenance supervisor and was told that so long as the woman

276  in that apartment lived there, management was not going to do anything about it.

277  Noting for the record, that the plaintiff sprayed this area on his own, at his expense,

278  in his apartment in addition to the landlord spraying once a month with pesticide,

279  and plaintiff deployed an effective food poison commonly referred to as

280  "COMBAT"; Its effectiveness was impressive, but the sheer volume of pestilence

281  could not be controlled by it.

282  13. Defendants **renewed the lease three times** despite full knowledge of incurable

283  infestation. A subject that will be revisited in this complaint in the discussion section

284  herein.

14. On **December 15, 2024**, the main living room window frame failed, leaving the unit vulnerable to wind and water intrusion.  Glass was replaced and the plaintiff was promised a contractor to replace the window frame in January. Never happened.

15. In May 2025, Defendants falsely promised to repair the window frame and glass by **July 2025** to induce Plaintiff's renewal.  A contractor was promised and no one showed up.

16. In December 2024, again on **20 May** and **June 7, 2025**, a storm(s) breached the unrepaired window frame, cracking glass, water came-into the unit.  In a one-on-one conversation with the property manager on the day on which the Plaintiff renewed his lease for 2025, I was informed by said manager that a contractor would visit for the purpose of replacing said frame of said window, including the bedroom window and as of the date of the filing of this complaint, no compliance.

17. Plaintiff's disabilities, including **asthma**, were aggravated by pest contamination and likely all the repeat pesticide use. Treated with Albuterol Sulfate.

18. Defendants maintained records reflecting a **pattern of leasing similarly uninhabitable units to other tenants, especially minorities**, while representing them online as habitable.  Discovery should be able to identify every contract signed in the last 5 years.  Former residents should be able to confirm said preexisting conditions.

19. Defendants engaged in **systematic deceptive practices via internet advertising, mail, and electronic communications**, constituting a **pattern of racketeering activity** under federal and state law.

307   20. Upon discovery process completion there may be as many as a dozen other

308   plaintiff(s) associated with this complaint seeking full refunds. However, the

309   discovery process could easily uncover several other alleged similar Building

310   Issues.

311 **V. CLAIMS FOR RELIEF**
312

313 **COUNT I: FRAUDULENT INDUCEMENT**
314   21.   (Against All Known Defendants)

315   • Defendants knowingly misrepresented the habitability and condition of

316   the unit 2328-O [letter "O"] including through internet advertisements

317   and emails.

318   • The plaintiff, by a reasonable person's standard; relied on these

319   representations. As a direct result, Plaintiff suffered damages exceeding

320   $50,000. Defendants are respondent superiors.

321   **Elements of Fraudulent Inducement** (under Florida law):

322   1. A false statement concerning a material fact;

323   2. The representer knew the statement was false;

324   3. The statement was made to induce another to act on it; and

325   4. The plaintiff relied on the false statement to his detriment.

326   **SEE:**   "*Fraudulent inducement is an independent tort... and survives*

327   *even where a valid contract exists, so long as the fraud is separate*

328   *from the performance of the contract.*"

329   — Samana, Inc. v. Lucena, <u>264 So. 3d 1076</u>, 1079 (Fla. 3d DCA 2019)

- **Facts:**

  A landlord misrepresented the condition of a residential property, aka: Cockroach and other insect infestation, to induce the tenant to sign a lease.

  **Holding:**

  The court held that the tenant's fraudulent inducement claim was valid because the misrepresentations occurred **prior to contract formation** and were **separate from any breach of the lease**:

  "Defendants knowingly misrepresented the habitability and condition of the unit... and Plaintiff reasonably relied... suffering damages..."

  - Samana, Inc. v. Lucena, <u>264 So. 3d 1076</u> (Fla. 3d DCA 2019)

  *"...The court declined to dismiss the negligence claim, rejecting the defendants' argument that it was barred by the economic loss rule. The court cited:* Tiara Condo. Ass'n v. Marsh & McLennan Cos., <u>110 So. 3d 399</u> (Fla. 2013), *which limited the economic loss rule to product liability cases..."*

  See Also:

  - Taylor v. Gutierrez, <u>129 So. 3d 415</u> (Fla. 3d DCA 2013)

  - And the foundational rule in HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., <u>685 So. 2d 1238</u> (Fla. 1996)

  **- Punitive damages** are provided for in **Florida Statute § 768.72**, which states "[a] defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." **Fla. Stat. § 768.72(2);**

356    In this context, intentional misconduct means, "the defendant had
357    actual knowledge of the wrongfulness of the conduct and the high
358    probability that injury or damage to the claimant would result and,
359    despite that knowledge, intentionally pursued that course of conduct,
360    resulting in injury or damage." **Fla. Stat. § 768.72(2)(a). Gross**
361    **negligence** "means that the defendant's conduct was so reckless or
362    wanting in care that it constituted a conscious disregard or
363    indifference to the life, safety, or rights of persons exposed to such
364    conduct." Id. at (2)(b).

365    **COUNT II:  Violation of Florida Deceptive and Unfair Trade Practices Act**
366    **(FDUTPA), Fla. Stat. § 501.204**
367

368    20.    (Against All Defendants)

369    **-Statutory Basis:**

370    FDUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade
371    or commerce." Misrepresenting the habitability of a rental unit—especially to a
372    vulnerable tenant—qualifies.

373    **-Supporting Case Law:**

374    - Deltona Corp. v. Jannotti, <u>392 So. 2d 976</u> (Fla. 1st DCA 1981): Misrepresentation
375    of housing quality supported FDUTPA damages.

376    - Samana, Inc. v. Lucena, <u>264 So. 3d 1076</u> (Fla. 3d DCA 2019): Misrepresentations
377    about rental conditions supported both FDUTPA and fraudulent inducement claims.

378      **FDUTPA (**Fla. Stat. §501.201 et seq.)

379      - Plaintiff re-alleges previous relevant paragraphs.

380      - Defendants engaged in unfair and deceptive acts in trade or commerce by

381      advertising and leasing a unit they knew was uninhabitable.

382      - These acts caused actual damage(s) to Plaintiff.


383      **COUNT III: DISABILITY DISCRIMINATION:**  FHA, 42 U.S.C. §3604; FCRA
384

385   **21.**   (Against All Defendants)

386      **-** Plaintiff notes for the record said property is 70%+ minority housing mostly

387      Hispanic, Black, and Creole mixed. Plaintiff is unaware if there are other disabled

388      people living here.

389      **- Statutory Basis:**

390         Under § 3604(f)(1)–(2), it is unlawful to:

391         - Fail to make reasonable accommodation necessary for the tenant to use and

392         enjoy the dwelling. No infestations are permitted under FHA, 42 U.S.C.

393         §3604; FCRA. Particularly in this case where knowledge of the infestation

394         preexisted contract for lease signing.

395      **- Supporting Case Law:**

396         - Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1225 (11th Cir. 2016): The

397         Eleventh Circuit reversed dismissal of a Fair Housing Act claim where the

398         landlord allegedly took adverse action (non-renewal) based on a tenant's

399         disability-related behavior;

400       The court emphasized that: "… § 3604(f)(2) *prohibits discrimination*
401       *in the "terms, conditions, or privileges" of rental housing. If a landlord*
402       *knowingly leases a unit with a severe infestation—especially to a protected*
403       *class—and fails to remedy it, this may constitute discriminatory treatment or*
404       *constructive eviction…"*

405       - Francis v. Kings Park Manor, <u>992 F.3d 67</u> (2d Cir. 2021): A landlord may
406       be liable under the FHA for failing to address discriminatory conditions that
407       interfere with a tenant's use and enjoyment of housing.

408  **COUNT IV: BREACH OF QUIET ENJOYMENT AND NO RATIFICATION:**
409

410  22.    (Against All Defendants)

411       Breach of the Implied Covenant of Quiet Enjoyment

412       Plaintiff realleges and incorporates all relevant prior paragraphs as if fully set forth

413  herein.

414  **Legal Basis**

415       - Under Florida common law and the Florida Residential Landlord and Tenant
416       Act, every lease includes an implied covenant of quiet enjoyment, which
417       guarantees the tenant's right to peaceful possession and use of the premises
418       without substantial interference by the landlord or those acting under the
419       landlord's control. SEE: Ginsberg v. Lennar Homes, LLC, <u>330 So. 3d 993</u> (Fla.
420       3d DCA 2021;

421       **Holding:**

422       The court acknowledged that Florida law recognizes an implied covenant
423       of quiet enjoyment and that substantial interference with the use of the

424  premises may support such a claim, even in the absence of physical
425  eviction.
426      **Relevance:**
427      This case affirms that habitability issues—such as pests—can violate the
428      covenant of quiet enjoyment.
429  - This covenant includes the right to a habitable, pest-free environment, and the
430  landlord's duty to comply with Fla. Stat. § 83.51(1)(a), which requires
431  extermination of roaches, rats, and other vermin in multi-family dwellings.
432  SEE: Kaufman v. High Seas, LLC, No. <u>4D2022-3023, 2024 WL 1324567</u> (Fla.
433  4th DCA Mar. 27, 2024);
434      **Holding:** The Fourth DCA reversed a default judgment of eviction, holding
435      that the trial court erred by failing to consider the tenant's statutory defenses
436      under § 83.51, including habitability-related claims.
437
438  23.    On the day the plaintiff was granted approval to move into the 2328 building in 10
439  days, he made a formal in-person request to the manager in her office to inspect the
440  apartment. Logically, being a new tenant plaintiff wanted to see its condition. Had he been
441  permitted to do so, it is alleged that said infestation would have been discovered. The
442  Manager's response to the request was no, and I quote, "…we need to clean it up before
443  you see it…" At the time the plaintiff interpreted that they needed to recover the condition
444  of the apartment from the previous tenant. It never ever occurred to the plaintiff that they
445  might be hiding something.
446  24.    **Legal Standard for Ratification in Florida:**

447      Under Florida law, **ratification** is the express or implied adoption of a contract

448      or act after full knowledge of all material facts. To establish ratification, the

449      following elements must be met:

450      (1) The party had **full knowledge** of the material facts.

451      (2) The party had the **right to reject** the contract or transaction.

452      (3) The party **accepted the benefits** of the contract or otherwise acted in a way

453          that clearly indicated intent to be bound.

454      (4) "*Ratification requires an intelligent act or conduct of the principal, made*

455          *with full knowledge of the facts, which clearly shows an intention to be*

456          *bound.*"

457          — ***Stalley v. Transitional Hospitals Corp. of Tampa, Inc***., 44 So. 3d 627,

458          628 (Fla. 2d DCA 2010)

459      (5) "Constructive knowledge is not enough; the knowledge must be actual."

460          — ***Frankenmuth Mut. Ins. Co. v. Magaha***, 769 So. 2d 1012, 1022 (Fla.

461          2000)

462   25.  **Why Ratification Could Not and Did Not Occur in This Case:**

463      (1) No Full Knowledge of Material Facts at Time of Lease Execution or

464      Renewal

465      A - Plaintiff was denied access to inspect the unit prior to signing the lease.

466      B - Defendants affirmatively concealed the infestation, and staff admitted

467      knowledge of the issue.

468      C - Plaintiff only discovered the infestation after moving in, and the

469      infestation was structural and incurable.

470      D - "*A party cannot ratify a contract if it was fraudulently induced to enter*

471      *if it lacked full knowledge of the fraud.*" SEE:

472    — ***Samana, Inc. v. Lucena***, <u>264 So. 3d 1076</u>, 1079 (Fla. 3d DCA 2019)

473    **RE:** Equitable Accounting

474    • Since the complaint alleged a *fiduciary relationship* between the

475    parties, Samana had standing to seek equitable accounting.

476

477    **(2) No Voluntary Acceptance of Benefits**

478    A - Plaintiff remained in the unit due to physical disability, economic

479    hardship, and lack of alternatives.

480    B - Continued occupancy was not a voluntary affirmation but a necessity.

481    C - Plaintiff repeatedly complained and sought remediation, showing intent

482    not to affirm the lease.

483    D - *"Ratification cannot occur where the party continues performance under*

484    *duress, necessity, or without meaningful alternatives.*" SEE:

485    — **Taylor v. Gutierrez**, <u>129 So. 3d 415</u>, 418 (Fla. 3d DCA 2013)

486    **(3) Fraudulent Inducement Bars Ratification**

487    A - Fraudulent inducement is an independent tort that survives even where a

488    contract exists.

489    B - The misrepresentations occurred before lease formation and were

490    material to Plaintiff's decision(s).

491    C - "Fraudulent inducement renders a contract voidable, and ratification

492    cannot occur unless the fraud is discovered and waived." SEE:

493    — ***HTP, Ltd. v. Lineas Aereas Costarricenses***, S.A., <u>685 So. 2d 1238</u>, 1239–

494    40 (Fla. 1996):

495       **RE:** The Economic Loss Rule **does not bar independent torts** that are
496       distinguishable from breach of contract — such as **fraud in the**
497       **inducement**. "*Where a contract exists, a tort action will lie for either*
498       *an intentional or negligent act considered to be independent from the*
499       *acts that breached the contract.*"

500     (4) **Facts Supporting Breach:**

501     **a-** Defendants leased to Plaintiff a residential unit (Unit 2328-O) that was

502     infested with insects/pests, including roaches, at the time of move-in and

503     throughout the tenancy and continues as of the filing of this complaint.

504     **b-** It was Alleged by maintenance personnel that previous occupant(s) of the

505     2328 building terminated their occupancy due to the Roach infestation. This

506     can be confirmed by way of Interrogatory-discovery and or court order.

507     **c-** Despite repeated complaints and requests for remediation, Defendants

508     failed to take adequate action to eliminate the infestation. Due to Inadequate

509     efforts "Could NOT Cure" to meet Lawful Requirements.

510     **d-** The infestation was so severe that it interfered with Plaintiff's ability to

511     safely and reasonably use the premises, including preparing food, sleeping,

512     and maintaining a hygienic environment.

513     **e-** No lawful ratification process ever existed.

514     **f-** Plaintiff suffers from a disability that can be aggravated by environmental

515     allergens, pest exposure, toxic chemicals or chronic use of pesticides. Any

516     normal reasonable person would be impacted by such excesses. Defendants

517     were aware of this condition, or had a lawful duty to know, and failed to

518     accommodate it.

519    **g-** As a result, Plaintiff was deprived of the full benefit of the lease and was

520    constructively evicted from the premises.

521    **h-** Directly below apartment O is apartment P. In May 2025 management

522    refused to renew the lease on apartment P.  Allegedly, apartment P was cited

523    as the source of the said infestation. If allegedly the source, and management

524    had full lawful knowledge; then why was the lease renewed in May 2024?

525    **i-** Management pressure to meet targeted sales revenue is a reasonable person

526    analysis as to the reason why and strong evidence of Defendant **Randy X.**

527    **Ferreira** full culpability in this matter before the court.

528    **j-** Refusal to renew said apartment P lease confirms, and is a confession by

529    performance, as to the said condition of the apartment building prior to

530    anyone signing a lease in the last 36 months before the date of the filing of

531    this complaint.

532    **k-** This plaintiff personally observed the removal of all the kitchen

533    appliances and the heating and air conditioning system. All contaminated.

534    **l-** Have all the protocols associated with the removal of the previous

535    resident of said apartment P altered the living conditions in the building?

536    In the plaintiff's case, every time he goes into the kitchen or bathroom

537    the number of cockroaches he kills has been diminished from 6 to 10

538    down to two or three. It still does not meet a reasonable person standard

539    as an issue arising at law and this occurs in an apartment covered in

540    pesticide.

541        **m-** There are new residents with a new lease in said apartment P. Before the
542        apartment was advertised before a lease was signed were these new
543        residents informed that the apartment is covered from ceiling to wall to
544        floor in pesticide? Were they informed that they were moving into an
545        apartment previously contaminated by a Roach infestation? They will
546        begin to know when they start to pointlessly scratch their skin and take
547        repeated showers to relieve it. Discovery will provide all the answers to
548        the court, and if confirmed, charges of culpable negligence and
549        racketeering are now inclusive of the current property manager. Federal
550        criminal charges if the new residents are members of a minority group or
551        disabled. Respectfully, the court should be mindful of the fact that
552        meeting annual revenue goal targets outweighs any statutes of law or
553        enforcement thereof. The plaintiff hopes there is not now a child living in
554        said apartment.

555        **o-** Defendants' conduct substantially interfered with Plaintiff's use and
556        enjoyment of the premises.
557        SEE:  Javins v. First National Realty Corp., <u>428 F.2d 1071</u> (D.C. Cir. 1970)
558        U.S. Court of Appeals for the District of Columbia Circuit: "…*A*
559        *warranty of habitability, measured by the standards set out in the*
560        *Housing Regulations... is implied by operation of law into leases of*
561        *urban dwelling units... and breach of this warranty gives rise to the*
562        *usual remedies for breach of contract*…"

563

564  26.    **BREACH OF QUIET ENJOYMENT CONCLUSION:**

565        **A**. Plaintiff Lacked Full Knowledge of the Infestation at Lease Signing

566  Defendants affirmatively misrepresented the condition of the premises as "clean,

567  pest-free, and recently renovated." The plaintiff was denied access to inspect the

568  unit prior to signing the lease. The infestation was structural, embedded in the

569   HVAC and walls, and not discoverable until after occupancy. These facts preclude

570   any finding of full knowledge.

571   *"A party cannot ratify a contract if it was fraudulently induced to enter if it lacked*

572   *full knowledge of the fraud.*" SEE:

573         — Samana, Inc. v. Lucena, 264 So. 3d 1076, 1079 (Fla. 3d DCA 2019)

574

575         **B.** Plaintiff's Continued Occupancy Was Not Voluntary:

576   Plaintiff is a disabled veteran with degenerative spinal disease and diabetes, living

577   on Social Security. He lacked the physical and financial means to relocate.

578   Continued occupancy was a matter of survival, not consent. Florida courts have held

579   that ratification cannot occur under such circumstances.

580   *"Ratification cannot occur where the party continues performance under duress,*

581   *necessity, or without meaningful alternatives."* SEE:

582         — Taylor v. Gutierrez, 129 So. 3d 415, 418 (Fla. 3d DCA 2013)

583

584         **C.** Fraudulent Inducement Renders the Lease Voidable:

585   Fraudulent inducement is an independent tort that survives even where a valid

586   contract exists. The misrepresentations here occurred prior to lease formation and

587   were material to Plaintiff's decision to enter into the agreement.

588   *"Fraudulent inducement renders a contract voidable, and ratification cannot occur*

589   *unless the fraud is discovered and waived."*

590   — HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239–40 (Fla.

591   1996)

592            D. Because Plaintiff lacked full knowledge of the infestation, acted under

593      duress, and was fraudulently induced into the lease, Florida law does not support a

594      finding of ratification and Plaintiff is entitled to pursue damages and equitable relief

595      Oubre v. Entergy Operations, Inc., <u>522 U.S. 422</u> (1998):

596      • **Holding**: The U.S. Supreme Court held that a party cannot be deemed to have

597         ratified a voidable contract (in that case, a waiver of rights) merely by retaining

598         benefits, where the contract was entered into without full knowledge or under

599         improper conditions.

600      • **Key Quote**: "*A promise ratifying a voidable contract may itself be voidable for*

601         *the same reason as the original promise.*"

602    **COUNT V:  GROSS NEGLIGENCE (Fla. Stat. § 768.72)**

603

604    27.  Plaintiff realleges and incorporates all relevant prior paragraphs as if fully set forth

605    herein:    **A. Legal Basis**

606      - Under Florida law, gross negligence is defined as conduct "so reckless or

607      wanting in care that it constituted a conscious disregard or indifference to the

608      life, safety, or rights of persons exposed to such conduct."

609         — Fla. Stat. § 768.72(2)(b)

610      *- A claim for gross negligence supports an award of punitive damages where*

611      *the defendant's conduct demonstrates willful disregard for foreseeable harm.*

612      *SEE:  Defendants' failure to remediate a known and severe pest infestation—*

613      *despite repeated complaints and clear evidence of health risks—constitutes*

614      *gross negligence under Florida law.* As the Florida Supreme Court held in

615      ***Merrill Crossings Assocs. v. McDonald***, <u>705 So. 2d 560</u>, 562 (Fla. 1997),

616      gross negligence arises where a party acts with "*a conscious disregard or*

617      *indifference to the life, safety, or rights of persons exposed to such*

618     *conduct."* Here, Defendants' inaction in the face of foreseeable harm to a

619     disabled tenant demonstrates precisely that level of reckless disregard.

620     **B. Facts Supporting Gross Negligence**

621     (1)- Defendants leased to Plaintiff a residential unit (Unit 2328-O) that was

622     infested with roaches and other vermin and posed a risk to Plaintiff's health

623     and safety. Defendants knew the building was and is infested with roaches.

624     (2)– Plaintiff and neighbor(s) repeatedly informed Defendants of the

625     infestation and hazardous conditions, including through written complaints,

626     emails, and maintenance requests; several tenants subsequently moved out

627     due to these issues. Discovery will identify and quantify the reasons for said

628     conduct and events.

629     (3)- Despite actual knowledge of these conditions, Defendants failed to take

630     adequate or timely action to remediate the infestation or repair the structural

631     hazards.

632     (4)- The conditions were so severe that they interfered with Plaintiff's ability

633     to safely prepare food, sleep, and maintain a hygienic living environment.

634     (5)- Plaintiff suffers from a disability(s) that were aggravated by

635     environmental hazards. One of which was the never ending spraying of

636     pesticides in a close apartment environment that accomplished nothing.

637     (6)- Defendants' failure to act—despite repeated notice and foreseeable

638     harm—demonstrates a conscious disregard for Plaintiff's health and safety.

639         SEE — Smith v. Grove Apartments, LLC, <u>948 So. 2d 826</u> (Fla. 3d DCA
640         2007) (landlord's failure to address known hazards raised triable issue of
641         gross negligence);
642         SEE — Weller v. Reitz, <u>419 So. 2d 739</u> (Fla. 5th DCA 1982) (gross
643         negligence requires reckless disregard bordering on intentional wrongdoing);
644         (7) As for example, leasing an apartment you know or have a lawful duty to
645         know is unlawfully infested.

646  **COUNT VI: CIVIL RICO: (18 U.S.C. §1962(c))**
647

648  28. The plaintiff re-alleges previous relevant paragraphs herein.

649         **A. Conduct of Enterprise**

650         (1)-Defendants Blue Roc Premier Properties, LLC and Conway Property

651         Holdings, LLC were associated in an enterprise engaged in the management,

652         leasing, and advertising of rental properties.

653  Case Support:

654         Reves v. Ernst & Young, <u>507 U.S. 170,</u> 179 (1993):
655         Conduct means participation in the operation or management of the
656         enterprise itself.
657         The Defendants:
658                a. Managed leasing operations.
659                b. Set policies regarding pest control.
660                c. Renewed leases knowing of the infestation(s).
661  **B. Existence of an Enterprise:**

662         (2)-The property management business was an "enterprise" affecting

663         interstate commerce:

664            o  Conway Property Holdings, LLC (Delaware property owner),

665            o  Blue Roc Premier Properties, LLC (property manager), and

666            o  Randy X. Ferreira (licensed supervising broker) owner operator;

667    operating together with the common purpose of acquiring, leasing, and

668    profiting from residential real estate.

669    (3)-This association engaged in interstate commerce through:

670            o  Internet advertising on platforms such as Apartments.com and

671               ApartmentHomeLiving.com, which are national marketplaces,

672            o  Electronic communications crossing state lines, and

673            o  Receipt of interstate payments and funds.

674    (4)-Courts consistently hold that property management businesses of this

675    nature qualify as RICO enterprises.

676            SEE:   In Boyle v. United States, <u>556 U.S. 938</u>, 946 (2009), the

677    Supreme Court explained that an association-in-fact enterprise requires only

678    three minimal structural features:

679            o  A purpose,

680            o  Relationships among associates, and

681            o  Longevity is sufficient to permit pursuit of the enterprise's

682               purpose.

683    (5)-All three elements are present here:

684            o  The purpose was to lease and manage rental units for profit.

685            o  The relationships included formal contractual arrangements

686               between the owner, manager, and supervising broker.

687                    o  The enterprise operated continuously over multiple years and

688                       multiple leases, and they use the internet and mail service therein.

689            **SEE**-The U.S. Eleventh Circuit has emphasized that the definition of

690            "enterprise" is expansive and flexible: SEE: **United States vs Cagnina**, <u>697</u>

691            <u>F.3d 915</u>, 920 (11th Cir. 2012)

692                       "*An **association-in-fact enterprise** is simply a continuing unit*

693                       *that functions with a common purpose.*"

694                       SEE: Similarly, in **Williams v. Mohawk Industries, Inc.**, <u>465</u>

695                       <u>F.3d 1277</u>, 1284 (11th Cir. 2006), the court held:

696                       "*The existence of an enterprise may be inferred from evidence*

697                       *showing that persons associated together for a common*

698                       *purpose of engaging in a course of conduct.*"

699                       SEE: **Cedric Kushner Promotions, Ltd. v. King**, <u>533 U.S.</u>

700                       <u>158</u>, 165 (2001), *confirms that a corporate structure or*

701                       *business association can satisfy the enterprise element even*

702                       *when insiders direct the conduct.*

703            (6) Because the Defendants operated in concert to engage in repeated

704            leasing activity using interstate channels of communication to further the

705            scheme alleged herein, this property management operation is plainly an

706            "enterprise" under RICO;

707        **Support:**

708        United States v. Turkette, <u>452 U.S. 576,</u> 583 (1981):

709        An enterprise includes any union or group of individuals associated in fact

710        although not a legal entity.

711    **C. Pattern of Racketeering Activity**

712            RICO requires at least two predicate acts of racketeering activity within 10

713            years.

**Facts supporting a pattern:**

**a.**-Defendants repeatedly posted false ads online (wire fraud).

**b.**-Defendants mailed lease renewals containing misrepresentations (mail fraud).

**c.**-Conduct spanned at least two years and because the same building has and has had many tenants; was directed at multiple individuals/tenants.

SEE: **H.J. Inc. v. Northwestern Bell Tel. Co.**, <u>492 U.S. 229</u>, 239 (1989):

A "pattern" requires related predicate acts and continuity over time.

**Humana Inc. v. Mallinckrodt ARD LLC**, <u>77 F.4th 931</u> (11th Cir. 2023) — the court upheld RICO claims because plaintiffs alleged multiple fraudulent billing statements over several years → each false invoice counted as a predicate act → related and continuous.

**Absolute Activist Value Master Fund Ltd. v. Devine**, <u>998 F.3d 1258</u> (11th Cir. 2021) — multiple false statements over time satisfied "pattern."

**Support:**

- Wire fraud: Internet advertisements falsely representing habitability.
- Mail fraud: Leasing documents mailed to Plaintiff
- The pattern consisted of repeated acts over at least two years, affecting multiple tenants

Allegedly Discovery will show "Related Acts" (same fraudulent purpose: inducing tenants to rent infested units).

739    **COUNT VII: FLORIDA CIVIL RICO**

740    24. The plaintiff re-alleges COUNT VI and previous relevant paragraphs herein:

741    **Fla. Stat. §772.103** (Prohibited Activities):

742    It is unlawful for any person:

743    (3) Employed by or associated with any enterprise to conduct or participate, directly

744    or indirectly, in such enterprise through a pattern of criminal activity.

745    **Fla. Stat. §772.104** (Civil Remedy):

746    Any person who proves by clear and convincing evidence that he or she has been

747    injured in any fashion by reason of any violation of §772.103 shall have a cause of

748    action for threefold the actual damage(s) sustained.

749        1. Two or more predicate acts: Misleading ads, dates when they were posted,

750        emails, mailed leases. Show each false statement.

751        2. Same/similar intents, results, victims, or methods Defendants used the

752        same method (false ads, mailings) to lease other units to similarly situated

753        tenants. Affidavits or records of other tenants help here.

754        3. Interrelated — not isolated Property manager logs, pest control reports,

755        repeated tenant complaints showing same conduct year to year. (Discovery

756        Pending)

757        4. Continuity over time Lease renewals, new tenants, same marketing tactics

758        — the pattern spans years.

759        5. Injury to business/property – Rent paid for uninhabitable unit, cost to

760        remediate, loss of personal property value.

761        6. Enterprise: Defendants operated together with shared control — e.g., same

762        executives, same address, same agents, same registered agent.

763    SEE: Blanc v. Kaplan, <u>275 So. 3d 784</u> (Fla. 4th DCA 2019)

764    Holding: Multiple misrepresentations over time using wire and mail

765    fraud to defraud investors showed pattern of racketeering — the

766    relationship between the acts and their continuity satisfied Florida's

767    RICO standard.

768    **7. -Pattern of Racketeering Activity**

769    \* Defendants engaged in a pattern of racketeering activity within the meaning

770    of Fla. Stat. § 772.102(4), consisting of at least two predicate acts of mail

771    fraud and wire fraud over a period of two years.

772    \* The acts are related and not isolated because:

773    **a**-Each act involved the same method — Defendants intentionally

774    advertised residential units as "clean, pest-free, and recently

775    renovated" on national websites (wire fraud) and then mailed lease

776    and renewal documents (mail fraud) that concealed known, incurable

777    infestations.

778    **b**-Each act had the same intent and result — to induce vulnerable

779    tenants, including minorities and disabled persons, to pay rent for

780    uninhabitable units.

781    **c**-Allegedly the acts targeted the same class of victims — tenants at

782    **The Park at Venosa Apartments** 2320 Conway Road, Orlando,

783    Florida 32812, with limited means to relocate.

784    **d**-Defendants' employees and managers coordinated these acts under

785    common direction, and the same offices processed the leases.

786    **e**-This conduct continued for at least two years, showing closed-ended

787    continuity, and is capable of repetition in the future, showing open-

788    ended continuity.

789    **f-**These acts are interrelated by distinguishing characteristics —

790    namely, a deliberate scheme to profit from uninhabitable properties

791    — and are not isolated incidents.

792

793 **COUNT VIII: PIERCING THE CORPORATE VEIL / ALTER EGO LIABILITY**

794

795 25. (Against Blue Roc Premier Properties, LLC, Conway Property Holdings, LLC,

796 and Randy X. Ferreira)

797 Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

798 **Legal Basis**

799 Under Florida law, the corporate veil may be pierced where:

800  1. The corporation is a mere instrumentality or alter ego of its owners;

801  2. The corporate form was used for an improper or fraudulent purpose; and

802  3. The misuse of the corporate form caused injury to the plaintiff.

803   See Dania Jai-Alai Palace, Inc. v. Sykes, <u>450 So. 2d 1114</u> (Fla. 1984);

804   Gasparini v. Pordomingo, <u>972 So. 2d 1053</u> (Fla. 3d DCA 2008): "***A***

805   ***corporate officer or agent is personally liable for fraudulent acts, even***

806   ***when those acts are performed within the scope of their employment or***

807   ***corporate capacity." (Id. at 1055–56)***

808 **Factual Allegations Supporting Veil Piercing**

809  1. Blue Roc Premier Properties, LLC and Conway Property Holdings,

810   LLC are not operated as truly independent entities. They share:

811    o The same executive officers (e.g., Lisa Gorsuch, Randy Ferreira),

812         o   The same business addresses,

813         o   The same registered agent (Erra Registered Agents, LLC),

814         o   Overlapping operational control and decision-making.

815     2.   Defendant Randy X. Ferreira exercises direct control over both entities

816       and is the licensed broker responsible for leasing and maintenance

817       policies. He is the founder and CEO of Blue Roc and is personally

818       involved in the conduct giving rise to this action.

819     3.   The corporate entities were used to perpetrate a fraudulent scheme:

820         o   Advertising uninhabitable units as "clean, pest-free, and recently
821           renovated";

822         o   Leasing and renewing leases for units known to be infested and
823           structurally compromised;

824         o   Concealing material facts about habitability and health risks;

825         o   Targeting vulnerable tenants, including disabled individuals and
826           minorities;

827         o   These acts were not isolated. They were part of a coordinated
828           enterprise involving mail and wire fraud, as alleged in Counts VI
829           and VII (Federal and Florida RICO). The same individuals and
830           entities engaged in a pattern of racketeering activity over
831           multiple years;

832         o   The corporate form was used to shield the individuals responsible
833           from liability while profiting from unlawful conduct. This
834           constitutes an abuse of the corporate structure and justifies
835           piercing the veil.

**Injury to Plaintiff**

As a direct result of Defendants' misuse of the corporate form, Plaintiff suffered:

- Physical and emotional harm,

- Economic loss exceeding $50,000,

- Constructive eviction,

- Aggravation of disability-related conditions.

26. **Plaintiff respectfully requests that the Court:**

1. Disregard the corporate form of Blue Roc Premier Properties, LLC and Conway Property Holdings, LLC;

2. Hold Randy X. Ferreira and other responsible individuals personally liable for the acts alleged herein;

3. Award compensatory and punitive damages from each of the defendants;

4. Grant such other relief as the Court deems just and proper.

27. **COUNT IX: VICARIOUS AND DIRECT LIABILITY**

(Respondent Superior and Negligent Hiring/Supervision Against All Defendants)

Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

**A. Legal Basis**

Under Florida law, an employer may be held:

856        - Vicariously liable under the doctrine of respondeat superior for tortious

857        acts committed by its employees or agents within the scope of their

858        employment; and

859        - Directly liable for its own negligence in hiring, supervising, or retaining

860        employees or agents who are unfit or dangerous, where such negligence is a

861        proximate cause of the plaintiff's injury.

862        See: Iglesia Cristiana La Casa Del Señor, Inc. v. L.M., <u>783 So. 2d 353</u>, 357

863        (Fla. 3d DCA 2001) "…*An officer or agent of a corporation may be*

864        *personally liable in tort if he or she commits or participates in a tort, even*

865        *if the act is done in the scope of his or her employment or as a corporate*

866        *officer...*" (*Id.* at 357)

867        - Nazareth v. Herndon Ambulance Serv., Inc., <u>467 So. 2d 1076</u>, 1078 (Fla.

868        5th DCA 1985): The court emphasized that liability attaches **not because of**

869        **position in the company**, but because of **active participation in the**

870        **wrongful act**. (or Respondent Superior Thereof)

871        - Malicki v. Doe, <u>814 So. 2d 347</u>, 362 (Fla. 2002) "*An employer may be*

872        *liable for negligent hiring or supervision where the employer knew or*

873        *should have known of the employee's unfitness.*"

874    **B. Factual Allegations**

875        - Defendants Blue Roc Premier Properties, LLC and Conway Property

876        Holdings, LLC employed or contracted with leasing agents, maintenance

877        personnel, and property managers responsible for the operation of The Park

878        at Venosa Apartments, including Unit 2328-O.

879        - These individuals acted within the scope of their employment when they:

880        - Advertised the unit as "clean, pest-free, and recently renovated";

881        - Denied Plaintiff the opportunity to inspect the unit prior to lease
882        execution;

883        - Failed to remediate known pest infestations and structural hazards;

884        - Renewed the lease despite knowledge of uninhabitable conditions;

885        - Ignored or inadequately responded to Plaintiff's repeated complaints.

886        - These acts were committed in furtherance of Defendants' business
887        interests and under the direction or supervision of senior executives,
888        including Randy X. Ferreira and Lisa Gorsuch.

889        - Defendants are therefore vicariously liable for the tortious conduct of their
890        employees and agents under the doctrine of respondent superior.

891        - Additionally, Defendants knew or should have known that their employees
892        and agents were unfit to perform their duties, or were engaging in
893        fraudulent, negligent, or discriminatory conduct.

894        - Defendants failed to properly train, supervise, or discipline these
895        individuals, and failed to implement adequate policies to prevent the
896        leasing of uninhabitable units or the mistreatment of disabled tenants.

897        - As a direct and proximate result of Defendants' negligent hiring,

898        supervision, and retention, Plaintiff suffered physical harm, emotional

899        distress, economic loss, and constructive eviction.

900 **28.    COUNT X: NEGLIGENT MISREPRESENTATION**

901        (Against All Defendants)

902        Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

903        **A. Legal Basis**

904        Under Florida law, a claim for negligent misrepresentation requires:

905        - A misrepresentation of material fact;

906        - The representor either knew or should have known the statement was false;

907        - The representative intended to induce another to rely on the

908        misrepresentation;

909        - The plaintiff justifiably relied on the misrepresentation; and

910        - The plaintiff suffered damages as a result.

911        See:

912        - Gilchrist Timber Co. v. ITT Rayonier, Inc., <u>696 So. 2d 334</u>, 337 (Fla. 1997)

913        "*A party to a transaction who has been guilty of fraudulent*

914        *misrepresentation... cannot escape liability because the other party, by*

915        *investigation, might have discovered the fraud*."

916        - Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc., <u>293 So.</u>

917        <u>3d 1105,</u> 1109 (Fla. 1st DCA 2020)

**B. Factual Allegations**

918

919 - Defendants advertised the subject unit as "clean, pest-free, and recently

920 renovated."

921 - These representations were made online and by phone and were material to

922 Plaintiff's decision to lease the unit.

923 - Defendants either knew or should have known these statements were false,

924 given the longstanding infestation and structural defects.

925 - Plaintiff justifiably relied on these representations and signed the lease.

926 - As a result, Plaintiff suffered economic loss, physical harm, and emotional

927 distress.

928 **C. Relief Requested**

929 Plaintiff seeks compensatory damages, costs, and any other relief the Court deems

930 just and proper.

931

932 **29.  COUNT XI: CONSTRUCTIVE EVICTION**

933 (Against All Defendants)

934 Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

935 **A. Legal Basis**

936 Constructive eviction occurs when a landlord's actions or omissions substantially

937 interfere with a tenant's use and enjoyment of the premises, effectively forcing the

938 tenant to vacate or endure intolerable conditions.

See: - Katz Deli of Aventura, Inc. v. Waterways Plaza, LLC, <u>183 So. 3d 374,</u> 378 (Fla. 3d DCA 2013) In this case, Defendant used the LLC to shield itself from liability while misrepresenting the condition of the leased premises, warranting veil piercing.

- Hankins v. Smith, <u>103 Fla. 892,</u> 895, 138 So. 494 (1931) "Fraudulent representations, even though they might have been discovered by means of diligence, will afford ground for relief." (Id. at 895, 138 So. at 495_):

**Relevance to Modern Claims (Landlord–Tenant, FDUTPA, Fraud):**

This case is foundational for:

- Fraudulent inducement claims in lease or real estate transactions;

- FDUTPA claims involving false advertising of rental units;

*- Arguments that tenants may rely on representations made by landlords or agents, even if the problems could have been discovered with inspection*

**B. Factual Allegations**

- Defendants leased Plaintiff a unit that was structurally infested with cockroaches and subject to repeated water intrusion.

- Despite repeated complaints, Defendants failed to cure the infestation or repair the window frame.

- The conditions rendered the unit uninhabitable, interfering with Plaintiff's ability to cook, sleep, and maintain hygiene.

- Plaintiff's continued occupancy was not voluntary but due to physical disability and economic hardship.

- Defendants' conduct constitutes a constructive eviction under Florida law.

**C. Relief Requested**

964     Plaintiff seeks rescission of the lease, restitution of rent paid, compensatory

965     damages, and any other relief the Court deems just and proper.

966

967     **30.     COUNT XII: CIVIL CONSPIRACY TO COMMIT FRAUD**

968     (Against All Defendants)

969     Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

970     **A. Legal Basis**

971     To establish a civil conspiracy under Florida law, a plaintiff must show:

972     - An agreement between two or more parties;

973     - To do an unlawful act or a lawful act by unlawful means;

974     - An overt act in furtherance of the conspiracy; and

975     - Resulting damages to the plaintiff.

976     See: - Charles v. Fla. Foreclosure Placement Ctr., LLC, <u>988 So. 2d 1157</u>,

977     1160 (Fla. 3d DCA 2008) The case is important precedent for veil-piercing

978     claims in Florida, including those arising from landlord misuse of corporate

979     entities to shield against liability for false advertising or habitability

980     violations.

981     - Walters v. Blankenship, <u>931 So. 2d 137</u>, 140 (Fla. 5th DCA 2006) "*Fraud*

982     *in the inducement is an independent tort and not barred by the economic loss*

983     *rule.*" (Id. at 140)

984     **B. Factual Allegations**

985     - Defendants Blue Roc Premier Properties, Conway Property Holdings, and

986     Randy X. Ferreira acted in concert to lease uninhabitable units under false

987     pretenses. He is fully respondent superior in all manners arising at law at said

988    property and decides or approves or disapproves all policies and targeted

989    sales goals.

990    - They coordinated advertising, leasing, and renewal practices despite

991    knowledge of structural infestations.

992    - They concealed material facts and denied inspection rights to induce lease

993    agreements.

994    - These acts were not isolated but part of a coordinated scheme to defraud

995    tenants for the purpose of profiteering both for said corporation(s) and

996    individual commission(s).

997    - Plaintiff suffered damages as a direct result of this conspiracy.

998    **C. Breach of Contract:**

999    - lease agreement executed between Plaintiff and Defendants was agreed to;

1000    - Contained within this contract was Defendants' express and implied duty to

1001    maintain the premises in a habitable condition in compliance with the Florida

1002    Residential Landlord and Tenant Act, including the requirements of Fla. Stat.

1003    § 83.51.

1004    - Plaintiff performed all of his material obligations under the contract,

1005    including the timely payment of all rent due.

1006    - Defendants materially breached the contract by, among other things,

1007    failing to provide a habitable dwelling, failing to remedy a severe and

1008   structural pest infestation after repeated written notice, and failing to

1009   maintain the premises in a safe condition.

1010   **D. Relief Requested**

1011   Plaintiff seeks compensatory and punitive damages, joint and several liability

1012   among all defendants, and any other relief the Court deems just and proper.

1013

1014 31. **COUNT XIII: VIOLATION OF THE AMERICANS WITH DISABILITIES**

1015   **ACT (ADA)**

1016 (42 U.S.C. § 12182) (Against All Defendants)

1017 Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

1018 **A. Legal Basis**

1019 Title III of the Americans with Disabilities Act prohibits discrimination on the basis

1020 of disability in the full and equal enjoyment of goods, services, facilities, or

1021 accommodations of any place of public accommodation by any person who owns

1022 or operates such a place.

1023   See:

1024   - 42 U.S.C. § 12182(a)

1025   - Schaw v. Habitat for Humanity of Citrus Cnty., Inc., 938 F.3d 1259, 1265–

1026   66 (11th Cir. 2019) (failure to accommodate a known disability in housing

1027   violates the ADA)

1028   - Access Now, Inc. v. S. Fla. Stadium Corp., 161 F. Supp. 2d 1357, 1363 (S.D.

1029   Fla. 2001) (ADA applies to housing operated by private entities open to the

1030   public)

**B. Factual Allegations**

1031

1032 - Plaintiff is a qualified individual with a disability under 42 U.S.C. § 12102,

1033 suffering from degenerative spinal disease, diabetes, and asthma.

1034 - Defendants were aware or should have been aware of Plaintiff's disability

1035 status at the time of lease execution and throughout the tenancy.

1036 - Defendants failed to make reasonable accommodations to ensure Plaintiff's

1037 safe and habitable use of the premises, including failure to remediate pest

1038 infestations and structural hazards.

1039 - Defendants' failure to act exacerbated Plaintiff's medical conditions and

1040 denied him equal access to safe housing.

1041 **C. Relief Requested**

1042 Plaintiff seeks declaratory and injunctive relief, compensatory damages, and

1043 any other relief the Court deems just and proper.

1044 32. **COUNT XIV: UNJUST ENRICHMENT**

1045 (Against All Defendants)

1046 Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

1047 **A. Legal Basis**

1048 To state a claim for unjust enrichment under Florida law, a plaintiff must show:

1049 - Plaintiff conferred a benefit on the defendant;

1050 - Defendant had knowledge of the benefit;

1051 - Defendant voluntarily accepted and retained the benefit; and

1052    - It would be inequitable for the defendant to retain the benefit without paying for

1053    it.

1054        See:  Agritrade, LP v. Quercia, 253 So. 3d 28, 33 (Fla. 3d DCA 2017)

1055        Particularly relevant in landlord contexts where an entity is used to

1056        deceptively lease unsafe or uninhabitable property and avoid financial

1057        responsibility.

1058            - Dooley v. Gary the Carpenter Construction, Inc., <u>48 Fla. L. Weekly</u>

1059            <u>D 2143a</u> (Fla. 3d DCA Sept. 27, 2023) Recognized that unjust

1060            enrichment damages may be apportioned—plaintiffs can receive the

1061            value of benefit conferred minus any proven damages suffered by the

1062            enriched party.

1063            - Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 805 (11th Cir.

1064            1999)

1065    **B. Factual Allegations**

1066    - Plaintiff paid rent and fees to Defendants in exchange for a habitable dwelling.

1067    - Defendants knowingly accepted these payments while providing a unit that was

1068    uninhabitable and unsafe.

1069    - Plaintiff received no meaningful benefit due to infestation, structural defects, and

1070    health hazards.

1071    - It would be unjust for Defendants to retain the rent and fees under these

1072    circumstances.

1073    **C. Relief Requested**

1074    Plaintiff seeks restitution of all rent and fees paid, along with interest and any other

1075    relief the Court deems just and proper.

1076

1077    33.    **COUNT XV: Intentional Infliction of Emotional Distress (IIED)**

1078    **Reasonable Person Legal Standard(s):**

1079    To state a claim for IIED in Florida, a plaintiff must show:

1080    - Deliberate or reckless infliction of mental suffering

1081    - Outrageous conduct

1082    - The conduct caused emotional distress

1083    - The distress was severe

1084    SEE: Metropolitan Life Ins. Co. v. McCarson, <u>467 So. 2d 277</u>, 278 (Fla. 1985)
1085    Florida adopted the Restatement (Second) of Torts § 46 (1965) for IIED claims
1086    SEE Also:
1087    - Williams v. City of Minneola, <u>575 So. 2d 683</u>, 692 (Fla. 5th DCA 1991):
1088    "Reckless disregard is the equivalent of intent." The court emphasized that
1089    outrageousness is a jury question unless no reasonable interpretation supports the
1090    claim.
1091    - Johnson v. Thigpen, <u>788 So. 2d 410</u>, 414 (Fla. 1st DCA 2001):
1092    The viability of IIED is highly fact-dependent and turns on the totality of the
1093    circumstances.
1094

1095    34.    Intentional or Reckless Conduct:

1096    - Defendants knew or had a lawful duty to know of a structural cockroach infestation

1097    before leasing the unit and concealed it;

1098    - Defendants made false promises about repairs to induce lease renewal;

1099    - Pattern of leasing uninhabitable units to vulnerable tenants, especially minorities

1100    and disabled persons;

1101    - Leasing a unit known to be infested is not just a breach of contract—it's a reckless

1102    and outrageous act when done knowingly.

1103    35.    Outrageous Conduct

1104        - Management refused to seal a door known to be a pest entry point, despite

1105        photographic evidence;

1106        - Plaintiff was denied a pre-lease inspection and misled about the unit's condition;

1107        - Defendants deliberately issued leases without lawful capacity to do so in a building

1108        that was and is and remains contaminated by pestilence of various types including

1109        cockroaches is "beyond all bounds of decency." SEE: Smith v. Grove Apartments,

1110        LLC, <u>948 So. 2d 826</u> (Fla. 3d DCA 2007); "…*landlord's failure to address known*

1111        *hazardous conditions—including pest infestations—raised a triable issue of gross*

1112        *negligence*…"

1113    36.    Plaintiff describes mental health effects including stress, sleep disruption, and

1114    anxiety. These allegations establish a Reasonable Persons' Standard and causal link

1115    between the Defendants' conduct and Plaintiff's emotional Duress.

1116        - The emotional and physical toll of enduring such conditions over time supports a

1117        claim for IIED.

1124

1125    37.    **COUNT XVI: DECLARATORY JUDGMENT**

1126    (Fla. Stat. § 86.011)  (Against All Defendants)

1127    Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

1128    **A. Legal Basis:**

1129    - Under Florida's Declaratory Judgment Act, a court may declare the rights, status,

1130    and legal relations of parties to a contract or controversy. The statute is to be liberally

1131    construed to afford relief from uncertainty.

1132        See:
1133        - Fla. Stat. § 86.011
1134        - Santa Rosa Cty. v. Admin. Comm'n, Div. of Admin. Hearings, <u>661</u>
1135        <u>So. 2d 1190</u>, 1192 (Fla. 1995)
1136        - Roth v. Charter Club, Inc., <u>952 So. 2d 1206</u>, 1207 (Fla. 3d DCA
1137        2007)
1138

1139    -This complaint effectively demonstrates fraudulent intent or misuse of the

1140    corporate structure by the defendants.

1141
1142    **B. Factual Allegations**

1143    - A bona fide dispute exists as to the validity and enforceability of the lease

1144    agreement between Plaintiff and Defendants.

1145    - Plaintiff alleges that the lease is void or voidable due to fraudulent inducement,

1146    failure of consideration, and violations of state and federal law.

1147    - Plaintiff seeks a judicial declaration that the lease is unenforceable and that

1148    Defendants have no right to enforce its terms.

1149    **C. Relief Requested**

1150    Plaintiff respectfully requests that the Court enter a declaratory judgment stating

1151    that:

1152            - The lease agreement is void or voidable;

1153            - Plaintiff is not liable for further rent or fees under the lease;

1154            - Defendants may not enforce the lease or pursue eviction based on it.

1155  **DISCUSSION:**

1156  38.    The baseline for this discussion must be Fla. Stat. § 83.51(2)(a)(1)) and the implied

1157  warranty of habitability versus infestation.

1158    •    The infestation was Pre-existing the establishment of plaintiffs' lease contract,

1159        pervasive, ongoing, and materially interfered with the Plaintiffs health, both mental

1160        and physical, and use of the premises.

1161    •    Cockroach droppings, saliva, and shed body parts are known allergens.

1162    •    Food contamination (leading to gastrointestinal illness)

1163    •    Mental health effects (stress, sleep disruption, and anxiety)

1164    •    There did not exist a moment in time relative to the 2328 building when the

1165        defendants had the lawful capacity to engage in a contract of lease for sale due to

1166        contamination and infestation. They did not have the lawful capacity to engage in

1167        the advertisement of said building for the purpose of sales of service of any kind.

1168        There is good cause to believe this conduct involved criminality for which the

1169        defendants are entirely responded superior without exception.

1170  39.    The plaintiff is a disabled person. More than 15 years of medical history is available

1171  should the court decide it needs to review it. It is a terrible position to have to be in. This

1172  plaintiff is alone in the world. When this plaintiff moved-into his current domicile the

1173  physical impact, the act of moving the physical effort; was such that it was 10 weeks of

1174  recovery before the plaintiff was able to operate through life in a reasonable manner. It was

1175  a painful experience to be avoided at all costs. Not just physically but economically as well.

1176  A person on disability is severely economically challenged living below the poverty line

1177  typically and this plaintiff is no exception. Having to move again is a daunting physical as

1178  well as mental challenge. Not something this plaintiff could ever do alone, nor can he afford

1179  to have others do it. Reasonably the court is going to want to understand why the plaintiff

1180  did not move out. The answer is physical incapacity.

1181  40. **DISCOVERY:** Will Show;

1182      The managers and staff responsible for originating the sales and contracts for

1183  building 2328 are no longer employed by the defendants.  Discovery expectations from

1184  interrogatories are:

1185      - Defendants are primarily a sales organization.

1186      - Sales organizations set quotas and targeted sales revenues.

1187      - The manager(s) and staff that originated said contracts were under pressure     to

1188      meet said target sales revenue(s) and make their personal commissions.

1189      - Based on personal experience it meets a reasonable person's expectation that they

1190      were willing to lie about the condition of the building under said sales pressure(s).

1191      - It is reasonably predicted that interviews with current and former employees,

1192      particularly the maintenance staff and those now allegedly unemployed; former

1193    manager(s) and staff, will substantiate this analysis.   The plaintiff has already had

1194    conversations on this subject matter many times with staff members.

1195    - On the day the plaintiff was assigned to 2328-O on said property he asked to go

1196    and see the apartment on the property and was refused. Specifically, he was told

1197    that, "they needed they cleaned it up." The managers and staff personnel blocked

1198    any effort he might have made at identifying the infestation during the sales process.

1199    Specifically, they acted knowingly and with purpose to prevent him from

1200    discovering said infestation.  This was after the plaintiff had responded to their

1201    online advertising. Respectfully the statement, "they needed they cleaned it up,"

1202    was a confession of facts present herein.

1203    41. **INFESTATION:**

1204    - Waking up to a cockroach crawling across your face in bed. A ridiculously common

1205    occurrence which should never have happened.

1206    - Coming home after a long day and moving your covers back across the bed making

1207    ready to get in only to discover that the roaches had decided to use your bed to build

1208    a nest. The word "disgusting" doesn't quite cover the reality of the situation.

1209    - Nest were constantly found all over the place. In the nightstands among the clothes

1210    in the closet. Among the clothes in the chest of drawers. In the kitchen the roaches

1211    were always constantly creating nests inside the appliances. Many times, I had to

1212    direct the exterminator to move the stove, the washing machine, the refrigerator to

1213    get at them. But they would be there again the next time he showed up anyway.

1214    - Lying in bed or sitting on the toilet having a cockroach move up through your

1215    genitals. It's an experience everyone should avoid.

1216    -Wherever the cockroaches moved contamination followed them everywhere

1217    including dangerous potentially deadly fungus.

1218    - Before using any utility in the kitchen, glass, spoon, dishes etcetera: it must be

1219    washed even if it went through the dishwasher and looks perfectly clean. There's no

1220    choice. The cockroaches crawl all over everything while you sleep. The plaintiff had

1221    to clean cockroaches almost monthly out of every crevice in every cabinet in the

1222    kitchen. Mostly dead but it was common to find insect eggs in between the dishes.

1223    This reality includes cockroaches making their way into a closed sealed refrigerator

1224    where, like everyone, the plaintiff keeps his food. Pictures will be provided

1225    evidence.

1226    - Once I ordered a pizza wanted a couple of slices while it was still hot. I cut off my

1227    slices put on my plate sat down when I finished, I went back for more only to

1228    discover that even though I closed the box the inside was crawling with dozens of

1229    roaches. I walked the box and the roaches out to the garbage. There's nothing else

1230    anyone could do.  This is plaintiff's life for last 25 months going on 26.

1231    42.    **Argument That Plaintiff "Assumed the Risk" or "Ratified" the Lease**

1232    - Plaintiff's continued occupancy was due to physical disability and economic

1233    hardship, not voluntary ratification.

1234    - Florida law holds that ratification cannot occur under duress or necessity.

1235 → See: Taylor v. Gutierrez, 129 So. 3d 415 (Fla. 3d DCA 2013): "…*The court held*
1236 *that continued occupancy of an uninhabitable unit does not constitute ratification*
1237 *of the lease when the tenant remains due to economic hardship or disability. The*
1238 *court emphasized that tenants who remain under duress are not waiving their*
1239 *rights*…"

1240

1241 43. **Argument That Defendants Are Shielded by the Corporate Veil**

1242 - Plaintiff has pled with specificity that the corporate form was used to perpetrate

1243 fraud and shield individual misconduct.

1244 - Florida law permits veil piercing where the corporate entity is a mere

1245 instrumentality used for an improper purpose.  Penal Code violations such as

1246 culpable negligence effectively penetrate the corporate veil. No incorporated entity

1247 or LLC can shield themselves from violations of the Penal Code or its civil impact.

1248 → See: Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114 (Fla. 1984)

1249 44. **Argument That Plaintiff's ADA or FHA Claims Require Intent**

1250 - ADA and FHA violations are strict liability statutes; intent is not required.

1251 - Defendants' failure to accommodate known disabilities and remediate hazardous

1252 conditions constitutes unlawful discrimination.

1253 → See: Schaw v. Habitat for Humanity, 938 F.3d 1259 (11th Cir. 2019)

1254 45. **Argument That Plaintiff's Claims Are Time-Barred**

1255 - All claims are timely under Florida's 4-year statute of limitations for fraud,

1256 negligence, and FDUTPA, and the 5-year federal RICO statute.

1257      - The delayed discovery rule applies, as Plaintiff discovered the infestation only

1258      after moving in.

1259      → See: Fla. Stat. § 95.11(3); 18 U.S.C. § 1964(c)

1260   46.   **Allegation of Culpable Conduct Supporting Gross Negligence and Punitive Damages:**

1261      - Defendants' conduct, as alleged herein, was not merely negligent but rose to the

1262      level of culpable negligence as defined under Florida law. Specifically, Defendants

1263      demonstrated a reckless disregard for human life and the safety of people exposed

1264      to the dangerous conditions of the subject property. This includes knowingly leasing

1265      a structurally infested and uninhabitable unit to a disabled tenant, failing to

1266      remediate the infestation despite repeated notice, and continuing to renew plaintiff's

1267      lease and continuing the drafting and executing new lease(s) for same building to

1268      unknowing new tenants', while concealing material health and safety hazards. Such

1269      conduct, if prosecuted criminally, would meet the threshold of culpable negligence

1270      under Fla. Stat. § 784.05. While this is a civil proceeding, the same factual basis

1271      supports a finding of gross negligence and justifies the imposition of punitive

1272      damages under Fla. Stat. § 768.72(2)(b), which defines gross negligence as conduct

1273      "so reckless or wanting in care that it constituted a conscious disregard or

1274      indifference to the life, safety, or rights of persons exposed to such conduct."

1275      Plaintiff respectfully requests that the Court make factual findings reflecting the

1276      severity of Defendants' misconduct, even if no compensatory relief is ultimately

1277      awarded.

1278      See:

1279    – Fla. Stat. § 784.05 (culpable negligence)

1280    – Fla. Stat. § 768.72(2)(b) (gross negligence standard for punitive damages)

1281    – Merrill Crossings Assocs. v. McDonald, 705 So. 2d 560, 562 (Fla. 1997) (gross

1282    negligence involves conscious disregard for safety)

1283    **47. Argument That Plaintiff's Claims Are Not "Outrageous" Enough:**

1284    - Defendants might argue that even if the conditions were unpleasant or negligent,

1285    they do not rise to the level of "atrocious and utterly intolerable in a civilized

1286    society."

1287    **Answer:** cumulative effect of deception, health risks, and exploitation of a

1288    disabled tenant over a prolonged period. The combination of known infestation(s),

1289    concealment, and refusal to remediate distinguishes this case from mere negligence.

1290

1291    **PRAYER FOR RELIEF:**

1292

1293    **48. COUNT I: Fraudulent Inducement**

1294    • **Damages**: **$30,000** (Compensatory) + **$50,000** (Punitive)

1295    • **Statute**: Fla. Stat. §768.72(2)

1296    • **Case Law**:

1297    ○ *Samana, Inc. v. Lucena*, 264 So. 3d 1076, 1081 (Fla. 3d DCA 2019) (fraud

1298    damages include benefit-of-bargain losses).

1299    ○ *Dooley v. Gary the Carpenter Constr.*, 361 So. 3d 472, 478 (Fla. 3d DCA

1300    2023) (punitive damages allowed for "conscious disregard" of rights).

1301    **49. COUNT II: FDUTPA Violation**

1302    • **Damages**: **$15,000** (Actual damages)

1303    • **Statute**: Fla. Stat. §501.211(2)

1304    • **Case Law**:

1305    ○ *Kaufman v. High Seas, LLC*, 2024 WL 1324567, *4 (Fla. 4th DCA 2024)

1306    (tenant recovery for deceptive leasing practices).

50. **COUNT III: FHA Disability Discrimination**

- **Damages**: **$25,000** + **Injunctive Relief**
- **Statute**: 42 U.S.C. §3613(c)(1)
- **Case Law**:
  - *Francis v. Kings Park Manor*, 992 F.3d 67, 78 (2d Cir. 2021) (damages for landlord's failure to accommodate disabilities).

51. **COUNT IV: Breach of Quiet Enjoyment**

- **Damages**: **Rent Abatement ($18,750)** + **$5,000** (Property damage)
- **TOTLE: 23,750**
- **Statute**: Fla. Stat. §83.51(1)(a)
- **Case Law**:
  - *Ginsberg v. Lennar Homes*, 330 So. 3d 993, 998 (Fla. 3d DCA 2021) (rent refund for uninhabitable conditions).

52. **COUNT V: Gross Negligence**

- **Damages**: **$75,000** (pain and suffering, loss of enjoyment of life) **$75,000**-Punitive
- **Statute**: Fla. Stat. §768.72(2)(b)
- **Case Law**:
  - *Smith v. Grove Apartments*, 948 So. 2d 826, 830 (Fla. 3d DCA 2007) (punitive damages for ignoring pest hazards).

53. **COUNT VI: Federal RICO**

- **Damages**: **Treble Actual Damages**
- **Statute**: 18 U.S.C. §1964(c)
- **Case Law**:
  - *Humana Inc. v. Mallinckrodt ARD LLC*, 77 F.4th 931, 942 (11th Cir. 2023) (treble damages for mail/wire fraud pattern).

54. **COUNT VII: Florida RICO**

- **Damages**: **Treble Actual Damages**
- **Statute**: Fla. Stat. §772.104(1)
- **Case Law**:

1336     *Blanc v. Kaplan*, 275 So. 3d 784, 789 (Fla. 4th DCA 2019) (treble damages
1337     for rental fraud scheme).

1338  55. **COUNT VIII: Piercing Corporate Veil**

1339  - **Damages**: **Joint & Several Liability** (No separate amount)

1340  - **Statute**: Fla. Stat. §607.1407

1341  - **Case Law**:

1342     *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008)
1343     (personal liability for corporate officers in fraud).

1344  56. **COUNT IX: Negligent Supervision**

1345  - **Damages**: **$20,000 each Defendant Respondent Superior: Total $80,000**

1346  - **Statute**: Common law

1347  - **Case Law**:

1348     *Iglesia Cristiana La Casa Del Señor v. L.M.*, 783 So. 2d 353, 358 (Fla. 3d
1349     DCA 2001) (employer liability for agent misconduct).

1350  57. **COUNT X: Negligent Misrepresentation**

1351  - **Damages**: **$15,000 each Defendant Respondent Superior: Total $60,000**

1352  - **Statute**: Common law

1353  - **Case Law**:

1354     *Arlington Pebble Creek v. Campus Edge Condo.*, 293 So. 3d 1105, 1111 (Fla.
1355     1st DCA 2020) (damages for reliance on false property statements).

1356  58. **COUNT XI: Constructive Eviction**

1357  - **Damages**: **Rent Restitution $37,500 + $37,500** (punitive) **Total: $75,000**

1358  - **Statute**: Fla. Stat. §83.63(1)

1359  - **Case Law**:

1360     *Katz Deli v. Waterways Plaza*, 183 So. 3d 374, 380 (Fla. 3d DCA 2013) (full
1361     rent refund for uninhabitable premises).

1362  59. **COUNT XII: Civil Conspiracy**

1363  - **Damages**: **$25,000 each Defendant Respondent Superior: Total $100,000**

1364  - **Statute**: Common law

- **Case Law**:
  - ○ *Walters v. Blankenship*, 931 So. 2d 137, 141 (Fla. 5th DCA 2006) (damages for coordinated fraud).

60. **COUNT XIII: ADA Violation**
- **Damages**: $20,000 each Defendant Respondent Superior: Total $80,000
- **+ Injunctive Relief**
- **Statute**: 42 U.S.C. §12188(b)(2)(B)
- **Case Law**:
  - ○ *Schaw v. Habitat for Humanity*, 938 F.3d 1259, 1268 (11th Cir. 2019) (compensation for denial of housing access).

61. **COUNT XIV: Unjust Enrichment**
- **Damages: Restitution $37,500**
- **Statute**: Common law
- **Case Law**:
  - ○ *Agritrade, LP v. Quercia*, 253 So. 3d 28, 34 (Fla. 3d DCA 2017) (restitution for landlord's retention of rent without providing habitable unit).

62. **COUNT XV: IIED**
- **Damages: $10,000 each Defendant Respondent Superior: Total $40,000**
- **Statute**: Restatement (Second) of Torts §46
- **Case Law**:
  - ○ *Fountain v. Moore*, 936 So. 2d 130, 135 (Fla. 1st DCA 2006) (vermin-induced emotional distress compensable).

63. **COUNT XVI: Declaratory Judgment**
- **Damages: N/A** (Equitable relief only)
- **Statute**: Fla. Stat. §86.011
- **Case Law**:
  - ○ *Roth v. Charter Club*, 952 So. 2d 1206, 1209 (Fla. 3d DCA 2007) (voiding lease for illegality).

1394    **64. Actual Damages TOTAL:**    **$   683,750**

1395      **\* Federal RICO:**    **$ 2,051,250**

1396      **\* Florida RICO:**    **$ 2,051,250**

1397                           **$ 4,102,500: Actual Damages**

1398                           **$ 4,102,500: Punitive Damages**

1399                           **$ 8,205,000: Damages Total by Statue(s)**

1400                           **$32,820.00: interests owed** (date of filing)

1401                           **$ 8,237,820: Total with interest**

1402   $\frac{10\%}{25} = 0.4\%$ per month. $8,205,000/\{25\} = 328,200$ @ 0.4% or $1,312.80/month times

1403   25 months is $ 32,820

1404   **65. Key Legal Principles Applied**:

1405     1. **Stacking Damages**:

1406        o   *Taylor v. Gutierrez*, 129 So. 3d 415, 419 (Fla. 3d DCA 2013) (cumulative

1407           recovery permitted for distinct harms).

1408     2. **Punitive Caps**:

1409        o   Fla. Stat. §768.73(1)(a) (caps punitive damages at 3x compensatory absent

1410           intentional misconduct).

1411     3. **Treble Damages**:

1412        o   *Absolute Activist Value Master Fund v. Devine*, 998 F.3d 1258, 1272 (11th

1413           Cir. 2021) (RICO mandates 3x actual damages).

1414   66.    **INJUNCTIVE AND DECLARATORY RELIEF**

1415      Plaintiff reasserts and incorporates by reference all preceding paragraphs.

1416      - Pursuant to Florida Statutes §§ 83.51 and 501.204 and seeks equitable relief to

1417      prevent Defendant Blue Roc Premier Properties, LLC from continuing practices that

1418      violate Florida law in the leasing and maintenance of residential rental properties.

1419      - Defendant has engaged in a pattern of leasing residential units that are

1420      uninhabitable, in violation of § 83.51(1), Fla. Stat., including persistent pest

1421      infestations, which despite their best efforts can neither control nor cure and they

1422      Habitually and Unlawfully do not inform prospective tenants of these facts before

1423      they sign a lease agreement. Given the circumstances, even if they did inform

prospective tenets of the problem the lease would still be unenforceable. SEE: Florida§ 83.51(1)(a); Florida§ 83.56(1); also - Javins v. First Nat'l Realty Corp., <u>428 F.2d 1071</u> (D.C. Cir. 1970)

- Defendant's conduct constitutes deceptive and unfair practices in violation of § 501.204(1), Fla. Stat., by misrepresenting material facts concerning the condition of leased premises and inducing tenants to enter contracts under false pretenses.

- Defendant has failed to remedy known violations despite repeated notice from tenants, including Plaintiff, creating a substantial likelihood of future violations.

- Plaintiff lacks an adequate remedy at law, as monetary damage(s) alone will not prevent continued harm to future tenants or ensure statutory compliance.

- Plaintiff reasonably fears future injury due to Defendant's repeated failure to comply with statutory duties and requests injunctive relief to halt such conduct.

67. **WHEREFORE, Plaintiff respectfully requests that this Court:**

- Enter a permanent injunction restraining Defendant from offering, executing, or enforcing residential leases that violate § 83.51(1), § 501.204(1), or applicable housing and health codes;

- Declare that Defendant's leasing and maintenance practices, as described herein, violate Florida law;

- Award attorney's fees and costs pursuant to § 501.2105, Fla. Stat.;

    - Grant any other relief the Court deems just and proper.

Respectfully submitted,

Andrew James Ensor
Pro Se Plaintiff

1452 **CERTIFICATE OF SERVICE**

1453    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been

1454 served via e-filing portal and email to:

1455 ERRA Registered Agents, LLC

1456 Registered Agent for Defendants

1457 123 S. Orange Avenue, Suite 800

1458 Orlando, Florida 32801

1459



1460 on this 9th day of July, 2025.

1461

1462 [signature]

1463 Andrew James Ensor

1464 Pro Se Plaintiff

Address: 3240 Airfield Drive East,

Lakeland, FL 33811



1465

1466

1467

1469

1470