Andrew James Ensor
2367 Conway Rd #218
Orlando, Florida 32812
314.882.0551 - 407.235.5301
AJEnsr@aol.com

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ANDREW JAMES ENSOR, per se
**Plaintiff / Petitioner**
vs.
1. **The Park at Venosa Apartments**
2320 Conway Road, Orlando, Florida 32812
AKA: **Blue Rock Premier Properties, LLC**
    Florida Entity
    **FL.DOC #:** L15000178344
    **FEI/EIN:** 47-5374174;

2. **Conway Property Holdings, LLC**
Foreign Limited Liability Company
Delaware
FL File # M21000006467: 26 May 2021

3. **Randy X. Ferreira:**
Blue Rock Premier Properties, LLC
Florida real estate broker license numbers
**BK 3221456** and **3352834,**
issued in 2009 and 2016 respectively

4. **Lisa Gorsuch** – Executive *Secretary* and
CFO of Blue Rock Premier Properties, LLC

5. **David Nachman** Managing Partner of
    Spirit Investment Partners and Owner
    Operator of record for:
6. **2320 Conway Property Owner, LLC**
    FL LLC File # M25000012489
7. **Magnolia Apartments** 2320 Conway Rd.
    Orlando FL 32812

**Defendant(s)/Respondent(s)**

**Case No. 6:25-cv-1628-AGM-RMN**

**JUDGE:** Anne-Leigh Gaylord Moe

**AMENDED JOINER
COMPLAINT
FOR DAMAGES,
INJUNCTIVE, AND EQUITABLE
RELIEF
January 2026**

**JURY TRAIL DEMANDED**

# Contents

TABLE OF AUTHORITIES ..................................................................................................... 3

INTRODUCTION ..................................................................................................................... 5

JURISDICTION AND VENUE: ............................................................................................. 7

PARTIES ..................................................................................................................................... 8

I. NATURE OF THE ACTION & SUMMARY OF ALL CAUSES ................................. 11

II: FACTUAL ALLEGATIONS ........................................................................................... 15

III. CAUSES OF ACTION ..................................................................................................... 25

COUNT I - VIOLATION OF THE FAIR HOUSING ACT .............................................. 25

COUNT 2: VIOLATIONS OF FLORIDA RESIDENTIAL LANDLORD AND TENANT ACT ..................................................................................................................... 29

COUNT 3: NEGLIGENCE PER SE/OR PRIMA FACIE NEGLIGENCE (Based on Violations of Florida Statutes and Implementing Administrative Rules) (Against All Defendants) .................. 31

COUNT 4: VIOLATION(S) OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) Fla. Stat. §§ 501.201–501.213 (Against All Defendants) ................ 34

COUNT 5: FRAUDULENT INDUCEMENT / DECEPTIVE TRADE PRACTICES ............. 37

COUNT 6: TOXIC TRESPASS AND STRICT LIABILITY ........................................... 41

COUNT 7: GROSS NEGLIGENCE / CULPABLE NEGLIGENCE per ....................... 45

COUNT 8: BREACH OF THE COVENANT OF QUIET ENJOYMENT ..................... 47

COUNT 9: BREACH OF IMPLIED WARRANTY OF HABITABILITY ..................... 49

COUNT 10: ENTERPRISE / ALTER-EGO LIABILITY AND AGGRAVATING CIRCUMSTANCES ............................................................................................................... 51

COUNT 11: FEDERAL CIVIL RICO (18 U.S.C. § 1962(c)) (Against All Defendants) ............ 55

VI. PRAYER FOR RELIEF .................................................................................................... 59

Exhibit A — Preliminary Damages Schedule .................................................................... 61

CERTIFICATE OF SERVICE Local Rule 3.01(g): ........................................................... 65

Memorandum Of Law Attached Here Per Directive of the Magistrate Judge hearing of December 6th 2025. ................................................................................................................................. 66

**TABLE OF AUTHORITIES**

Cases

- Boyle v. United States, <u>556 U.S. 938</u> (2009)
(Association-in-fact enterprise structure; common purpose, relationships, longevity)

- Cisneros v. Petland, Inc., <u>972 F.3d 1204</u> (11th Cir. 2020)
(Rule 9(b) pleading for RICO fraud predicates; continuity requirements)

- H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989)
(Closed-ended and open-ended continuity)

- Magluta v. Samples, <u>256 F.3d 1282</u> (11th Cir. 2001)
(Shotgun pleading prohibition; incorporation by reference limits)

- Ray v. Spirit Airlines, Inc., <u>836 F.3d 1340</u> (11th Cir. 2016)
(Relatedness of predicate acts; proximate cause in civil RICO)

- Reves v. Ernst & Young, <u>507 U.S. 170</u> (1993)
(Operation or management test for § 1962(c))

- Weiland v. Palm Beach County Sheriff's Office, <u>792 F.3d 1313</u> (11th Cir. 2015)
(Shotgun pleading taxonomy; permissible incorporation)

- Williams v. Mohawk Industries, Inc., <u>465 F.3d 1277</u> (11th Cir. 2006)
(Enterprise, continuity, and "regular way of doing business" RICO theory)

**Federal Statutes**

18 U.S.C. § 1343
(Wire Fraud)

18 U.S.C. § 1961(3)
(Definition of "person")

18 U.S.C. § 1961(4)

100    (Definition of "enterprise")

101    18 U.S.C. § 1961(5)

102    (Pattern of racketeering activity)

103    18 U.S.C. § 1962(c)

104    (Prohibited activities — conducting an enterprise through racketeering)

105    18 U.S.C. § 1964(a)

106    (Civil injunctive and equitable relief)

107    18 U.S.C. § 1964(c)

108    (Civil damages, standing, treble damages, attorneys' fees)

109

110    **Federal Rules**

111    Fed. R. Civ. P. 8(a)

112    (General pleading standard)

113    Fed. R. Civ. P. 9(b)

114    (Pleading fraud with particularity)

115    Fed. R. Civ. P. 12(b)(6)

116    (Motion to dismiss standard)

117

118

119

120

121

122

123    **COME NOW** Plaintiff ANDREW JAMES ENSOR, pro se, elderly, and

124    disabled, pursuant to the Court's prior grant of leave (or as of right under Rule

125    15(a)(1) if no prior amendment), files this Second Amended Complaint adding

126    three necessary and permissible defendants (Spirit Investment Partners via

127    David Nachman, and 2320 Conway Property Owner, LLC) whose ownership,

128    control, and management of the subject property were only recently confirmed

129    through public records. Defendants allegedly operate as a coordinated criminal

130    organization engaged in systemic fraud, racketeering, and endangerment of

131    vulnerable tenants, including Plaintiff.

132    **INTRODUCTION**

133    1. The plaintiff appears before the court without any experience or expertise

134         in Law and asks the court to understand, the simple fact that, this process

135         is near crimpling because objectively, this court is the only venue available

136         for some old guy to go for help. Accordingly, Plaintiff has been made to

137         understand, right or wrong, that one sentence stated herein is inadequate

138         under the court rules, two sentences are stretching the rules, and three

139         sentences establish a shotgun filling. There are a few statements herein

140         that exceed two sentences and everything else is within the court rules

141         insofar as anyone with as limited competence(s) as this Plaintiff can

142         reconnoiter the rules: Lawrence L. Blakenship v. Tiffany Moore Russell,

143 et al., No. 6:25-cv-369-JSS-NWH (M.D. Fla. Orlando Div. Jan. 2025):

144 citing Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007) The issues

145 in reconnoitering are simple from the court's perspective? They are a

146 nightmare for almost anyone else.

147 2. It is not hyperbole, or an intent to stigmatize anyone when this plaintiff

148 explains most seriously, that this action is not a routine landlord-tenant

149 dispute. Plaintiff alleges that Defendants operated a coordinated,

150 multi-entity residential leasing enterprise that knowingly -- and continuing

151 to the present -- marketed, advertised, and leased residential units that

152 were and remain chronically infested, repeatedly saturated with

153 pesticides, and unsafe for human habitation, as established on the record

154 since 2021.

155 3. Plaintiff alleges that Defendants concealed these conditions from

156 prospective tenants, including Plaintiff, and employed standardized

157 online interstate advertising, uniform leasing practices, and coordinated

158 communications, emails, to induce tenants into lease agreements they

159 would not have accepted had the true conditions been disclosed.

160 4. Plaintiff alleges that Defendants' conduct constitutes violations of federal

161 civil rights laws, Florida statutory duties, common-law torts, and both

162 federal and Florida RICO statutes. Plaintiff, appearing pro se, has

163 endeavored to plead these allegations in a manner that satisfies the

164 Eleventh Circuit's rigorous RICO "stress test," including the requirements

165 articulated in Williams v. Mohawk Industries, Cisneros v. Petland, Ray

166 v. Spirit Airlines, and related controlling authorities.

167 5. Plaintiff further alleges that Defendants' conduct caused him to live in

168 unsafe, contaminated conditions for 975 days, resulting in physical

169 exposure, emotional distress, economic loss, and deprivation of the use

170 and enjoyment of his home.

171 6. Plaintiff seeks compensatory damages, statutory damages, punitive

172 damages, treble damages where authorized, and all other relief permitted

173 by law.

174 **JURISDICTION AND VENUE:**

175 7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because

176 Plaintiff asserts claims arising under federal law, including the Fair

177 Housing Act (42 U.S.C. §§ 3604, 3617), the Americans with Disabilities

178 Act (42 U.S.C. § 12182), and the Racketeer Influenced and Corrupt

179 Organizations Act (18 U.S.C. §§ 1962(c)–(d)).

180 8. This Court also has supplemental jurisdiction over Plaintiff's state-law

181 claims under 28 U.S.C. § 1367, because those claims arise from the same

182  nucleus of operative facts as the federal claims and form part of the same

183  case or controversy.

184  9. Venue is proper in the Middle District of Florida under 28 U.S.C. §

185  1391(b) because all Defendants reside in this District, transact business in

186  this District, or committed the acts complained of in this District. The

187  property at issue is located at 2320 Conway Road, Orlando, Florida

188  32812, within the Orlando Division.

189  10.    Personal jurisdiction exists because Defendants purposefully

190  availed themselves of the privilege of conducting business in Florida,

191  including owning, managing, advertising, and leasing residential

192  properties in this District, across the state and interstate.

193  11.    Plaintiff appears pro se and has attempted to plead this action in

194  good faith based on publicly available law and the facts he personally

195  experienced. Alba v. Montford, _517 F.3d 1249_ (11th Cir. 2009) Pro se

196  defense.

197  **PARTIES**

198  12.    Plaintiff Andrew James Ensor is an elderly, disabled tenant who

199  resided at The Park at Venosa Apartments, located at 2320 Conway Road,

200  Orlando, Florida 32812. Plaintiff appears pro se. Plaintiff has lived in the

201  subject building for 975 days, at time of filing, under conditions he alleges

202  were unsafe, unsanitary, unfit for human habitation, and unlawfully in
203  violation of the relevant penial codes.

204  13.  Defendant The Park at Venosa Apartments, also known as Blue
205  Rock Premier Properties, LLC, is a Florida limited liability company
206  engaged in the ownership, management, marketing, and leasing of
207  residential apartment units via the internet across interstate lines and in
208  Orlando, Florida. This Defendant conducted business in the Middle
209  District of Florida at all relevant times.

210  14.  Defendant Conway Property Holdings, LLC is a Delaware foreign
211  limited liability company registered to do business in Florida. This
212  Defendant exercised ownership, control, or operational authority over the
213  property at issue and participated in the leasing, advertising, and
214  management practices described in this Complaint effectively ratifying the
215  behaviors and protocols of the property's management defended said Blue
216  Rock Premier Properties, LLC.

217  15.  Defendant Randy X. Ferreira is an individual residing in Florida
218  and, upon information and belief, serves as a real estate broker and
219  principal actor and owner of or for, Blue Rock Premier Properties, LLC.
220  Ferreira held Florida real estate broker license numbers BK 3221456 and
221  3352834 during the relevant period was the executive in charge and

222    participated in the management and oversight of the leasing enterprise
223    described herein.

224    16.    Defendant Lisa Gorsuch is an individual residing in Florida, and
225    serves or served during relevant time period, as Executive Secretary and
226    Chief Financial Officer of Blue Rock Premier Properties, LLC. Gorsuch
227    exercised operational authority over financial, administrative, and leasing
228    practices relevant to the allegations in this Complaint.

229    17.    Defendant David Nachman is an individual and Managing Partner
230    of Spirit Investment Partners. Nachman exercised ownership or
231    operational control over 2320 Conway Property Owner, LLC, the entity
232    that acquired the property during the pendency of Plaintiff's tenancy and
233    litigation.

234    18.    Nachman participated in enterprise-level decisions affecting the
235    marketing, leasing, and management of the property and ratified
236    Defendant Blue Rock's standards and sales protocols and said alleged
237    violations of law by retaining them in the continued supervision of said
238    property he exercises operational authority over financial, administrative,
239    and leasing practices relevant to the allegations in this Complaint.

240    19.    Defendant: "2320 Conway Property Owner, LLC" is a Florida
241    limited liability company (FL LLC File # M25000012489) that acquired

242    ownership of the property at issue near or about 30 days after Plaintiff

243    initiated this action.

244    20.    Operated, supervised, or owned by co-defendant David Nachman,

245    Defendant Conway Property Owner continued the leasing and

246    management practices described herein, thereby ratifying and adopting

247    those alleged unlawful standards and violation(s) of law.

## I. NATURE OF THE ACTION & SUMMARY OF ALL CAUSES

248

249

250    21.    There is no rational reason to sugarcoat the nature of this action

251    because being factual avoids wasting the court's time and negates any

252    assertion of deliberate inflammatory issues.

253    22.    Based on firsthand personal experience this complaint targets an

254    alleged criminal organization masquerading as landlords.

255    23.    Herein Plaintiff is attempting to explain his predicament to the court

256    and clearly alleges, these defendants are not unlike a mafia organization,

257    except their profits derived from unlawful real estate transactions not

258    prostitution, gambling, or drug trafficking.

259    24.    They are allegedly legitimate property managers and owners, who

260    have systematically defrauded tenants, violated federal and state laws, and

261    endangered families with children and elderly people for profit.

262   25.     At all relevant times, Defendants acted individually and collectively

263           as part of a coordinated residential leasing enterprise. Plaintiff alleges that

264           each Defendant participated directly or indirectly in the acts, omissions,

265           and practices described in this Complaint.

266   26.     Defendants operated as an association-in-fact enterprise, sharing a

267           common purpose, coordinated activities, and ongoing relationships

268           allegedly sufficient to satisfy the enterprise requirements under Federal

269           and Florida RICO and The Florida Deceptive and Unfair Trade Practices

270           Act (FDUTPA) is codified at Florida Statutes §§ 501.201–501.213.

271   27.     FDUTPA does not create licensing rules itself, but courts have held

272           that operating without required licenses or misrepresenting licensure

273           status constitutes a deceptive practice.

274   28.     Landlords, contractors, medical providers, or other regulated

275           enterprises must comply with licensing statutes; failure to do so can trigger

276           FDUTPA liability, SEE:   *State Farm Mut. Auto. Ins. Co. v. Performance*

277           *Orthopaedics & Neurosurgery, LLC,* 278 F. Supp. 3d 1307 (S.D. Fla. 2017) –

278           Federal court in Florida applied FDUTPA to enterprises misrepresenting

279           compliance with licensing requirements.

280   29.     Defendants knowingly leased and maintained a severely

281           cockroach-infested, pesticide-saturated, uninhabitable apartment(s) (the

entire building was and is infested and there are others) to an elderly,
disabled former U.S. Marine for 32 months/975 days (as of the time of
filing), while falsely advertising the unit as "clean" and "recently
renovated," as an unlawful lure.

30.     This is a pattern of alleged organized criminal conduct targeting
mostly minority(s); Fla. Stat. § 817.41 - False advertising, Fla. Stat.
§ 817.034 - Florida Communications Fraud Act, Fla. Stat. § 895.03 -
Florida RICO, Fla. Stat. § 784.05 - Culpable negligence, 18 U.S.C.
§§ 1341, 1343 - Using interstate communications or mail to advertise or
leasing unsafe housing under false pretenses; gross negligence (civil) and
culpable negligence per se (§ 784.05, criminal), because both concepts
hinge on reckless disregard for tenant safety.

31.     These facts are brought before the court based on firsthand
observations occurring across three years relevant to the 2328, 2326, and
2340 building(s) on said property. It's not alleged, its testimony before the
court, it really happened and continues today.

32.     Men, women and children allegedly systemically recklessly exposed
to excessive applications of pesticides, aka poisoned, or exposed to
pestilence, for profit; verified on the record; see: Cruze affidavit.

33. With all due respect to the court, "this is insane." It is no different than a snake oil salesmen advertising their latest poison via internet and Emails and children are involved.

34. Plaintiff seeks compensatory, statutory, punitive, and treble damages; injunctive and equitable relief; appointment of a receiver; disgorgement of profits; and all other remedies available under federal and Florida law.

35. Defendants' conduct gives rise to eleven causes of action, and or aggravating factors, each alleged to arising from their coordinated efforts to defraud tenants, conceal hazards, evade regulations:

    (1)     VIOLATION OF THE FAIR HOUSING ACT
    (2)     VIOLATIONS OF FLORIDA RESIDENTIAL LANDLORD AND TENANT ACT
    (3)     NEGLIGENCE PER SE/OR PRIMA FACIE NEGLIGENCE
    (4)     VIOLATION(S) OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)
    (5)     FRAUDULENT INDUCEMENT / DECEPTIVE TRADE PRACTICES
    (6)     TOXIC TRESPASS AND STRICT LIABILITY
    (7)     GROSS NEGLIGENCE / CULPABLE NEGLIGENCE
    (8)     BREACH OF THE COVENANT OF QUIET ENJOYMENT
    (9)     BREACH OF IMPLIED WARRANTY OF HABITABILITY
    (10)   ENTERPRISE / ALTER-EGO LIABILITY AND AGGRAVATING CIRCUMSTANCES
    (11)   FEDERAL CIVIL RICO (18 U.S.C. § 1962(c))

## II: FACTUAL ALLEGATIONS

### A. Plaintiff's Background and Disability Status

36.     Plaintiff is an elderly, disabled tenant who moved into The Park at Venosa Apartments based on Defendants' public advertising and representations that the units were clean, safe, and newly renovated. Plaintiff relied on these representations because of his age, disability, and limited physical capacity to relocate once he moved in.

37.     Statements like "newly renovated" we're not limited to the Internet but were and remain posted at the entrance to the property.

38.     Plaintiff informed Defendants of his disability status during the leasing process and required a safe, sanitary, and stable living environment.

39.     Before signing the lease, Plaintiff reviewed Defendants' online advertisements, including listings on Apartments.com, Zillow, their own web page, and other standardized platforms. These advertisements described the units as "clean," "safe," "renovated," and "well-maintained."

40.     Plaintiff alleges that these representations were materially false. Defendants knew, or by a reasonable standard, had a lawful duty to know, that multiple buildings at the property were chronically infested with

349    cockroaches and had been repeatedly ineffectively treated with pesticides

350    over a multi-year period and were unable to effect a cure, and still cannot.

351    41.    Plaintiff alleges that Defendants used uniform marketing scripts,

352    standardized leasing procedures, including Emails, and coordinated

353    communications to induce prospective tenants into signing leases without

354    disclosing the true condition of the units.

355    42.    Plaintiff was not allowed to view his new apartment until the day a

356    lease was signed. When he asked to see the apartment previously, he was

357    told that they needed "...to clean it up first..." Plaintiff was shown to a

358    model apartment, staged with perfection, as an inducement for him to

359    engage in a lease.

360    43.    Plaintiff alleges that this conduct constitutes inducement fraud and

361    deceptive practices because the concealment occurred before contract

362    formation, placing the conduct outside ordinary landlord-tenant doctrine

363    and within the scope of fraud-based liability, SEE: *Johnson v. Davis*, <u>480</u>

364    <u>So. 2d 625, 627 </u>(Fla. 1985) ...Concealment of material defects before

365    contract formation constitutes fraud..., *State Farm Mut. Auto. Ins. Co. v.*

366    *Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1328

367    (M.D. Fla. 2017): ...The court cited Johnson v. Davis in recognizing that

368    misrepresentation of licensure and concealment of material facts can

369      constitute deceptive practices actionable under FDUTPA and common

370      law fraud...

371    44.     Plaintiff alleges that the conditions of contamination and pestilence

372      preexisted his tenancy by nearly three years, as confirmed by available

373      evidence and subject to further determination in discovery.

374    45.     It is for the Court to decide whether any entity qualifies for a license

375      to operate under said conditions.

376    46.     If the property is not lawfully qualified, then the sheer volume of

377      fraudulent leases issued during established time period constitutes a

378      genuine threat to the community. Said conduct demonstrates both the

379      "pattern" and "continuity" elements required to establish liability.

380    47.     Three days after Plaintiff completed moving-in to the property and

381      observed signs of infestation, including live cockroaches, droppings, and

382      insects emerging from walls, cabinets, electrical outlets and out of the

383      toilet.

384    48.     Plaintiff promptly notified management. Despite repeated reports,

385      the infestation persisted throughout Plaintiff's tenancy.

386    49.     Plaintiff alleges that the infestation was not isolated to his unit but

387      was widespread across multiple buildings, reflecting a chronic, uncured

388      condition known to Defendants which he has personally observed in three

389  other buildings and has encouraged residents to take pictures and
390  document events.

391  50.    The widespread, chronic, and uncorrected nature of the problem
392      across multiple buildings (see Cruze affidavit) demonstrates the
393      relatedness, continuity, and structure necessary to allege a racketeering
394      enterprise which is an aggregating factor in this complaint.

395  51.    In response to infestation complaints, Defendants repeatedly
396      applied chemical pesticides inside Plaintiff's unit and surrounding
397      buildings.

398  52.    Plaintiff alleges that these applications were excessive, ineffective,
399      never established a path to a Cure and conducted without proper
400      disclosure of risks, violation Florida administrative codes, including:

401      •    Fla. Admin. Code r. 5E-14.102 (prohibiting repeated
402          ineffective pesticide applications);
403      •    Fla. Admin. Code r. 5E-14.108 (prohibiting pesticide
404          practices that create unreasonable risk to humans or pets);
405      •    Fla. Admin. Code r. 5E-14.110 (requiring disclosure and
406          prohibiting concealment of ongoing chemical exposure);
407      •    Fla. Admin. Code r. 64E-12.004 (public health standards for
408          infestation and contamination);
409      •    Fla. Admin. Code r. 64E-12.005 (recognizing chronic
410          infestation as a per se violation);

411      •      Fla. Admin. Code r. 61J2-10.025 (prohibiting real estate
412             professionals from advertising units as "clean," "safe," or
413             "renovated" when materially false).

414      •      Orlando City Code, Chapter 21: Requires landlords to
415             maintain dwellings free of infestation and contamination.

416      •      Orange County Code, Chapter 34: Infestations of roaches or
417             repeated pesticide misuse fall under "unsanitary conditions"
418             and "public nuisance."

419    53.      Plaintiff alleges that Defendants continued leasing and advertising

420      the units as safe despite internal knowledge of chronic infestation and

421      repeated pesticide saturation and after he originally filed this action.

422    54.      To have continued after the filing of this action required ignoring

423      any internal decent, and uniform consent among all defendants.

424    55.      Plaintiff lived in these unsafe, contaminated conditions for 975 days

425      at filing. During this period:

426      •      the infestation never resolved,

427      •      pesticide applications continued,

428      •      the unit remained unsafe and unsanitary,

429      •      Plaintiff experienced physical exposure and emotional
430             distress,

431      •      Plaintiff's disability made the conditions more harmful and
432             more difficult to endure.

433    56.      Plaintiff alleges that Defendants operated as an association-in-fact

434      enterprise, sharing a common purpose of maximizing profit through

435    deceptive leasing practices while externalizing health and safety risks onto
436    tenants.

57.    Plaintiff alleges that the enterprise included, absent discovery:

- Blue Rock Premier Properties, LLC (property management and advertising),
- Conway Property Holdings, LLC (ownership and oversight),
- 2320 Conway Property Owner, LLC (subsequent ownership and continuation of practices),
- Magnolia Apartments (rebranding and continued leasing),
- Randy Ferreira (broker oversight and operational control),
- Lisa Gorsuch (financial and administrative control),
- David Nachman (ownership and enterprise-level decision-making, ratification of Blue Rock after this action was filed).

58.    Plaintiff alleges that these Defendants coordinated through shared ownership, shared management, standardized leasing practices, and uniform advertising methods.

59.    Plaintiff alleges that this structure satisfies the enterprise requirements under Boyle v. United States, including common purpose, relationships among participants, and continuity.

60.    Plaintiff alleges that Defendants engaged in multiple predicate acts of wire fraud by transmitting false or misleading advertisements, emails,

457  and electronic leasing communications to induce Plaintiff into renting an
458  unsafe unit.

459  61.    Plaintiff alleges that these predicate acts occurred repeatedly from
460        year 2021 through the present, satisfying the continuity requirement under
461        H.J. Inc. v. Northwestern Bell Telephone Co.

462  62.    Plaintiff alleges that the predicate acts were related because they
463        shared the same purpose (inducing tenant(s) into unsafe leases), the same
464        method (online advertising and electronic communications), and the same
465        victims (tenants seeking safe housing).

466  63.    Plaintiff alleges that the enterprise structure, predicate acts,
467        continuity, and relatedness satisfy the Eleventh Circuit's RICO "stress
468        test," including the standards articulated in:

469        •    Williams v. Mohawk Industries, <u>465 F.3d 1277</u> (11th Cir.
470             2006) An "association-in-fact" enterprise must have a
471             common purpose.
472        •    Cisneros v. Petland, <u>972 F.3d 1204</u> (11th Cir. 2020) *(en banc)*
473             *...a **threat of continued criminal activity beyond the period of the***
474             ***predicate acts themselves.** For "closed-ended continuity," the*
475             *predicate acts must extend over a "substantial period of time"...*
476        •    Ray v. Spirit Airlines, <u>767 F.3d 1140</u> (11th Cir. 2014) *"...have*
477             *the same or similar purposes, results, participants, victims, or*
478             *methods..."*

- American Dental Ass'n v. Cigna, <u>605 F.3d 1283</u> (11th Cir. 2010)
- Reves v. Ernst & Young <u>507 U.S. 170</u> (1993) *"...operation or management" test* for RICO liability under...: 18 <u>U.S.C.</u> § 1962(c).

64. Plaintiff alleges that he suffered direct economic injury "by reason of" the RICO violations, including rent paid for misrepresented units, loss of use, and costs associated with unsafe living conditions. These are all aggravating factors that are relevant herein, and proof that this is NOT just another landlord – Tenant dispute.

65. Plaintiff alleges that Defendants transferred ownership of the property approximately one month after Plaintiff initiated this action.

66. Such timing is inherently suspicious and suggests the transfer may not have been a routine business decision but a reaction to the lawsuit, potentially to avoid liability, shield assets, or complicate the plaintiff's ability to collect a judgment.

67. Plaintiff alleges that this transfer is relevant to knowledge, intent, and enterprise-level decision-making, and that Defendants continued leasing and advertising practices despite long-standing knowledge of hazardous conditions.

499    68.     If detailed knowledge of conditions alleged herein was shared as

500            part of the transfer of ownership, it proves the defendants' detailed, pre-

501            existing awareness of the hazardous conditions, directly supporting claims

502            of fraudulent concealment, it effectively proves plaintiff's case.

503    69.     If said detailed knowledge of said conditions established herein and

504            by affidavit was not shared before property transfer then it creates a new,

505            independent act of fraud committed by the seller.

506    70.     Plaintiff alleges that the unsafe conditions, infestation, and chemical

507            exposure caused him physical discomfort, emotional distress, and

508            functional limitations.

509    71.     Plaintiff alleges that the conditions disproportionately harmed him

510            due to his age and disability.

511    72.     Plaintiff alleges that Defendants' conduct deprived him of the use

512            and enjoyment of his home for 975 days, resulting in significant economic

513            and personal harm and reinforcing the bate-n-switch nature of conduct.

514    73.     Plaintiff's continued occupancy of the unit does not diminish

515            Defendants' liability. Plaintiff is a disabled individual with documented

516            physical limitations, receiving SSI disability benefits, and was medically

517            unable to relocate without assistance.

74. Defendants were fully aware of Plaintiff's disability status and repeatedly refused to provide repairs, accommodations, or alternative housing, including their refusal since December 2024 to replace dangerously deteriorated window frames.

75. Under federal and Florida law, a tenant is not required to vacate unsafe premises to preserve claims for habitability, discrimination, or damages, and a disabled tenant cannot be penalized for remaining in the only housing available to them.

76. This principle is consistent with the Restatement (Second) of Property: Landlord and Tenant §§ 11.1–11.2 (1977), which provides that a tenant may recover damages for uninhabitable conditions without vacating the premises.

77. Florida and Eleventh Circuit authority(s) likewise confirm that a tenant is not required to leave unsafe housing to preserve claims or recover loss-of-use damages: Aspen v. Bayless, <u>564 So. 2d 1081</u> (Fla. 1990); American Motorists Ins. Co. v. Southern Security Life Ins. Co., <u>80 F.3d 105</u> (11th Cir. 1996).

78. Plaintiff's continued presence in the unit was the direct result of Defendants' misconduct, not voluntary acceptance of uninhabitable conditions.

## III. CAUSES OF ACTION

### COUNT I - VIOLATION OF THE FAIR HOUSING ACT (Disability Discrimination – 42 U.S.C. § 3604(f)) (Against All Defendants)

79. Plaintiff is an elderly individual with a disability within the meaning of the Fair Housing Act ("FHA"), 42 U.S.C. § 3602(h). Plaintiff's disability substantially limits one or more major life activities and requires a safe, sanitary, and stable residential environment in order for Plaintiff to use and enjoy housing on an equal basis with non-disabled persons.

80. Plaintiff informed Defendants of his disability status during the leasing process. Defendants therefore had actual knowledge that Plaintiff was a disabled tenant entitled to the protections of the Fair Housing Act.

81. At all relevant times, Defendants advertised, marketed, and leased the subject dwelling as "clean," "safe," and "renovated," while possessing knowledge of chronic pest infestation, repeated pesticide saturation, and unsafe environmental conditions affecting the dwelling.

82. Defendants failed to disclose the existence of these hazardous conditions prior to or during the leasing process, despite knowing that such conditions posed a heightened and foreseeable risk of harm to disabled and elderly tenants, including Plaintiff.

83. Defendants' actions and omissions rendered the dwelling unsafe for Plaintiff as a disabled individual and interfered with Plaintiff's ability to use and enjoy the premises, thereby discriminating against Plaintiff in the terms, conditions, and privileges of rental housing, in violation of 42 U.S.C. § 3604(f)(2).

84. Defendants' conduct also made the dwelling effectively unavailable to Plaintiff within the meaning of 42 U.S.C. § 3604(f)(1), by subjecting Plaintiff to prolonged exposure to hazardous conditions that deprived Plaintiff of the full use and enjoyment of his home.

85. Defendants knew or reasonably should have known that the unsafe and contaminated conditions within the dwelling would disproportionately interfere with Plaintiff's ability, as a disabled individual, to safely reside in and enjoy the premises.

86. Plaintiff's need for reasonable accommodation was open, obvious, and reasonably known to Defendants by virtue of Plaintiff's disclosed disability, the nature of the hazardous conditions, and Defendants' ongoing knowledge of the infestation and pesticide exposure.

87. Despite this knowledge, Defendants failed and refused to make reasonable accommodations in their rules, policies, practices, or services, including but not limited to disclosure, remediation, mitigation,

577 relocation, or other corrective measures necessary to afford Plaintiff an

578 equal opportunity to use and enjoy the dwelling, in violation of 42 U.S.C.

579 § 3604(f)(3)(B).

580 88. Defendants' failure to act occurred over an extended period, during

581 which Plaintiff was deprived of the full use and enjoyment of his home

582 and subjected to ongoing hazardous exposure.

583 89. As a direct and proximate result of Defendants' discriminatory

584 conduct, Plaintiff suffered physical exposure, emotional distress, loss of

585 housing stability, and functional limitations, which were exacerbated by

586 Plaintiff's age and disability.

587 90. Defendants' conduct was knowing, willful, and demonstrated

588 reckless indifference to Plaintiff's federally protected rights under the Fair

589 Housing Act.

590 91. Defendants' actions and omissions constitute unlawful disability

591 discrimination in violation of 42 U.S.C. § 3604(f)(1), § 3604(f)(2), and §

592 3604(f)(3)(B), Hunt v. Aimco, 814 F.3d 1213 (11th Cir. Feb. 18, 2016).

593 92. Defendants' conduct further violated 42 U.S.C. § 3617, which

594 prohibits coercion, intimidation, threats, or interference with any person

595 in the exercise or enjoyment of rights protected under the Fair Housing

596 Act.

93. By knowingly subjecting Plaintiff to prolonged unsafe and contaminated living conditions, failing to disclose or remediate known hazards, continuing to lease and renew the dwelling under materially misleading conditions, and effectively obliging Plaintiff to endure his home due to his age and disability.

94. Defendants interfered with Plaintiff's exercise and enjoyment of his federally protected housing rights.

95. This interference occurred independently of, and in addition to, Defendants' failure to provide reasonable accommodation(s), altered the terms and conditions of Plaintiff's tenancy and made the dwelling effectively unavailable to him, in violation of 42 U.S.C. § 3604(f) as interpreted by the Eleventh Circuit in Hunt v. Aimco Props and constitutes a separate tortious violation of the Fair Housing Act.

96. Plaintiff alleges that the duration, continuity, and Defendants' knowledge of the hazardous conditions constitute aggravating factors relevant to the Court's evaluation of liability, remedies, and relief under the Fair Housing Act.

**WHEREFORE,**

97. Plaintiff demands judgment against Defendants, jointly and severally, for all relief authorized under the Fair Housing Act, including

617    but not limited to actual and compensatory damages, statutory damages,

618    injunctive and declaratory relief, reasonable accommodations, and such

619    affirmative relief as may be necessary to eliminate the discriminatory

620    effects of Defendants' conduct; together with attorney's fees and costs as

621    authorized by 42 U.S.C. § 3613(c)(2), pre- and post-judgment interest, and

622    such other and further relief as the Court deems just and proper.

623    **COUNT 2: VIOLATIONS OF FLORIDA RESIDENTIAL**
624    **LANDLORD AND TENANT ACT** Fla. Stat. § 83.51 (Against All
625    Defendants)

626    98.    Florida law requires landlords of residential premises to comply

627    with the requirements of Fla. Stat. § 83.51, including the duty to maintain

628    dwelling units in a condition that is safe, sanitary, and fit for human

629    habitation, and to comply with applicable building, housing, and health

630    codes.

631    99.    Plaintiff repeatedly notified Defendants of the chronic infestation,

632    repeated pesticide applications, and unsafe environmental conditions

633    affecting the dwelling, and despite Defendants' acknowledgment of those

634    conditions through repeated pest-control interventions and the passage of

635    a reasonable opportunity to cure, Defendants failed to remediate the

636    underlying defects or restore the premises to a safe and habitable condition

637    in violation of Fla. Stat. § 83.51

638  100.  Defendants failed to maintain the subject property in a condition fit

639  for human habitation, including by allowing chronic pest infestation,

640  repeated pesticide saturation, and unsafe environmental conditions to

641  persist within the dwelling.

642  101.  Defendants' continued failure to remediate the chronic infestation

643  and unsafe conditions, despite actual notice and a reasonable opportunity

644  to cure, constituted material noncompliance with the rental agreement

645  and Fla. Stat. § 83.51 within the meaning of Fla. Stat. § 83.56(1).

646  102.  Despite notice and the passage of a reasonable time to cure,

647  Defendants failed to adequately remediate these conditions, resulting in

648  the continued uninhabitability of the premises.

649  103.  As a direct and proximate result of Defendants' violations of Fla.

650  Stat. § 83.51, Plaintiff was deprived of the full use and enjoyment of his

651  home for approximately 975 days.

652  104.  Plaintiff suffered economic loss, emotional distress, loss of housing

653  stability, and physical exposure as a result of Defendants' failure to

654  comply with their statutory duties under Florida law.

655  105.  Plaintiff alleges that Defendants' conduct further reflects violations

656  of professional standards governing licensed real estate activity in the State

657  of Florida, including conduct subject to discipline under § 475.25(1)(b),

658     Florida Statutes, which is relevant to Defendants' knowledge of the unsafe

659     conditions, their willful failure to remediate, and the aggravating nature

660     of the statutory violations alleged herein.

661        **WHEREFORE**, Plaintiff demands judgment against Defendants,

662     jointly and severally, for all relief available under Fla. Stat. § 83.51 and

663     applicable Florida law, including compensatory damages, statutory and

664     equitable relief, costs, pre- and post-judgment interest, and such other and

665     further relief as the Court deems just and proper, including rent abatement

666     and other tenant remedies authorized under Fla. Stat. § 83.56(1)


667     **COUNT 3: NEGLIGENCE PER SE/OR PRIMA FACIE**
668     **NEGLIGENCE** (Based on Violations of Florida Statutes and
669     Implementing Administrative Rules) (Against All Defendants)
670

671     106.    At all relevant times, Defendants owed Plaintiff a duty to exercise

672     reasonable care in the ownership, operation, maintenance, and leasing of

673     residential housing, including compliance with Florida statutes and

674     administrative rules enacted to protect tenants from unsafe, unsanitary,

675     and hazardous living conditions.

676     107.    Under Florida law, the violation of a statute, or of an administrative

677     rule that implements a statutory duty designed to protect a particular class

678     of person(s) from a particular type of harm, may constitute negligence per

se, or, at minimum, prima facie evidence of negligence. *See* DeJesus v.

Seaboard Coast Line R.R. Co., 281 So. 2d 198 (Fla. 1973).

108.    Defendants violated multiple provisions of Florida law and implementing administrative rules governing residential leasing, pest control practices, public health standards, and real estate advertising, including rules promulgated pursuant to Florida statutes regulating:

a. Pest control and pesticide application practices intended to prevent unreasonable risk to human health and repeated ineffective or excessive treatments;

b. Public health and sanitary standards addressing infestation, environmental contamination, and conditions rendering a dwelling unsafe or unfit for human habitation; and

c. Prohibitions against materially false, misleading, or deceptive representations in connection with the marketing and leasing of residential property by licensed real estate professionals.

109.    The foregoing statutes and administrative rules were enacted to protect tenants and residential occupants from precisely the types of harms alleged herein, including prolonged exposure to hazardous conditions, chemical contamination, infestation, and unsafe residential environments.

110.    Plaintiff is within the class of persons the foregoing statutes and administrative rules were intended to protect, and Plaintiff's injuries—

702 including physical exposure to hazardous conditions, loss of safe use and

703 enjoyment of the dwelling, emotional distress, housing instability, and

704 economic loss—are of the type the statutes and rules were designed to

705 prevent

706 111. Defendants breached their statutory and regulatory duties by,

707 among other things, failing to abate chronic infestation, authorizing or

708 permitting repeated pesticide application without resolving the underlying

709 conditions, failing to remediate environmental contamination, and

710 marketing or leasing the dwelling as habitable despite knowledge of unsafe

711 conditions.

712 112. Defendants' violations of the foregoing statutes and implementing

713 administrative rules constitute negligence per se under Florida law, or, in

714 the alternative, constitute prima facie evidence of negligence.

715 As a direct and proximate result of Defendants' negligence, Plaintiff was

716 subjected to unsafe and uninhabitable living conditions for approximately

717 975 days at the time of filing, resulting in physical exposure, emotional

718 distress, loss of housing stability, loss of use and enjoyment of the

719 dwelling, and economic damages.

720 113. Plaintiff further alleges that Defendants' regulatory violations

721 constitute conduct subject to professional discipline under **§ 475.25(1)(b),**

**Florida Statutes**, which is relevant to Defendants' knowledge, willfulness, and reckless disregard for lawful housing and real estate practices.

114.     Defendants' statutory and regulatory violations materially aggravated Plaintiff's damages and support the availability of enhanced remedies, including punitive damages and equitable relief, as permitted by applicable law.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, statutory and equitable relief, costs, pre- and post-judgment interest, and such other and further relief as the Court deems just and proper.

**COUNT 4: VIOLATION(S) OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)** Fla. Stat. §§ 501.201–501.213 (Against All Defendants)

115.     At all times relevant, Defendants were engaged in the business of advertising, marketing, leasing, and managing residential rental properties, which constitutes "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

116.     Beginning no later than 2021, and continuing throughout Plaintiff's tenancy at the subject property, Defendants advertised and marketed residential units as "clean," "safe," and "renovated," while possessing

743  knowledge of chronic pest infestation, repeated pesticide saturation, and

744  unsafe environmental conditions materially affecting habitability.

745 117. Defendants failed to disclose these known hazardous conditions to

746  Plaintiff prior to or during the leasing process, despite the material nature

747  of such information to a reasonable consumer deciding whether to enter

748  into or continue a residential lease.

749 118. Defendants' affirmative representations regarding the condition of

750  the dwelling, together with their material omissions concerning known

751  hazards, were likely to mislead reasonable consumers acting under the

752  circumstances and therefore constituted deceptive acts or practices and

753  unfair acts or practices in violation of Fla. Stat. § 501.204(1).

754 119. Plaintiff relied on Defendants' representations and omissions when

755  entering into the lease and paying rent for the subject dwelling.

756 120. As a direct and proximate result of Defendants' deceptive and unfair

757  trade practices, Plaintiff suffered actual damages within the meaning of

758  Fla. Stat. § 501.211(2), including payment of rent for housing that was

759  materially misrepresented, loss of use and enjoyment of the premises, and

760  financial losses associated with residing in unsafe and contaminated

761  conditions.

762  121.   Defendants' deceptive and unfair practices were not isolated or

763        accidental. The same hazardous conditions persisted throughout

764        Plaintiff's tenancy despite notice and the passage of substantial time,

765        demonstrating a lack of capacity or willingness to cure the conditions

766        giving rise to the deceptive conduct.

767  122.   Defendants' continuation of substantially similar advertising and

768        leasing practices, notwithstanding knowledge of the hazardous conditions

769        and notice of Plaintiff's allegations, evidences an ongoing course of

770        conduct and a likelihood of recurrence.

771  123.   Plaintiff does not seek punitive damages under the Florida

772        Deceptive and Unfair Trade Practices Act, which authorizes recovery of

773        actual damages and equitable relief only; Plaintiff seeks punitive or

774        exemplary damages solely under separate common-law tort claims,

775        including fraudulent inducement, toxic trespass, and gross negligence, as

776        pled herein.

777  124.   Plaintiff alleges that Defendants' ongoing conduct adversely affects

778        consumers and the public interest by exposing prospective tenants to

779        materially misleading representations concerning the safety and

780        habitability of residential housing.

781    125.    Plaintiff alleges that Defendants' conduct therefore supports both

782            monetary relief under Fla. Stat. § 501.211(2) and declaratory and

783            injunctive relief under Fla. Stat. § 501.211(1) to prevent future unfair or

784            deceptive acts or practices.

785    126.    Plaintiff further alleges that Defendants' conduct reflects violations

786            of professional standards governing licensed real estate activity in the State

787            of Florida, including conduct subject to discipline under § 475.25(1)(b),

788            Florida Statutes, which constitutes additional evidence of the unfair and

789            deceptive nature of Defendants' trade practices.

790            **WHEREFORE,** Plaintiff demands judgment against Defendants,

791            jointly and severally, for actual damages pursuant to Fla. Stat. §

792            501.211(2), declaratory and injunctive relief pursuant to Fla. Stat. §

793            501.211(1), costs, reasonable attorney's fees where authorized by law, pre-

794            and post-judgment interest, and such other and further relief as the Court

795            deems just and proper.

796    **COUNT 5: FRAUDULENT INDUCEMENT / DECEPTIVE TRADE**

797    **PRACTICES** (Against All Defendants)

798    127.    Prior to Plaintiff entering into the lease for the subject dwelling,

799            Defendants made affirmative representations of material fact, including

that the residential unit was "clean," "safe," "renovated," and suitable for habitation.

128.  At the time these representations were made, Defendants knew they were false or made them with reckless disregard for their truth, as the property had a long-standing history of chronic pest infestation, repeated pesticide saturation, and unsafe environmental conditions existing since at least 2021.

129.  Defendants made these false representations with the intent to induce Plaintiff to enter into the lease and to pay rent for the subject dwelling.

130.  Defendants' fraudulent misrepresentations and concealment of material facts were intentional, knowing, and undertaken with reckless indifference to Plaintiff's rights and safety, thereby supporting an award of punitive damages under Florida law independent of any statutory remedies.

131.  Plaintiff justifiably and reasonably relied on Defendants' representations when deciding to enter into the lease, as the true condition of the premises was not readily observable and was uniquely within Defendants' knowledge and control.

132.   As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff entered into a lease he otherwise would not have entered and paid rent for housing that was materially misrepresented and unsafe.

133.   Plaintiff suffered damages as a result of Defendants' fraud, including but not limited to rent paid for misrepresented housing, loss of use and enjoyment of the premises, and other compensatory damages recoverable under Florida law.

134.   Defendants' knowing misrepresentations and omissions concerning the condition of the premises further constitute evidence of willful, unethical, and dishonest conduct relevant to punitive damages and professional standards governing licensed real estate activity, including conduct subject to discipline under § 475.25(1)(b), Florida Statutes.

135.   In addition to constituting common-law fraud, Defendants' misrepresentations, concealments, and unfair leasing practices also constitute deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 et seq., as they were committed in the course of trade or commerce, were likely to mislead consumers, and directly caused actual damages to Plaintiff.

839     136.     Defendants' pattern of knowingly making false representations and
840             concealing hazardous conditions from tenants demonstrates systemic
841             unfair and deceptive practices, supporting both Plaintiff-specific relief and
842             broader statutory remedies available under FDUTPA, including
843             injunctive relief, restitution, and attorney's fees.

844     **WHEREFORE**, Plaintiff respectfully demands judgment against Defendants
845     and grants all relief available under law, including, without limitation:

846     (1) **Declaratory Relief:** A declaration that Defendants' conduct
847         constitutes intentional and knowing fraudulent inducement, unfair
848         and deceptive trade practices, and systemic misrepresentation of
849         habitability and safety, reflecting reckless disregard for Plaintiff's
850         rights and statutory protections;

851     (2) **Compensatory Damages:** Full recovery of all actual, consequential,
852         and compensatory damages, including rent paid for misrepresented
853         housing, loss of use and enjoyment of the premises, diminution in
854         habitability, and other harms proximately caused by Defendants'
855         misconduct;

856     (3) **Equitable Relief:** Disgorgement, restitution, and all other equitable
857         remedies necessary to restore Plaintiff to the position he would have
858         been in but for Defendants' fraudulent and unfair conduct,
859         including recovery of all monies wrongfully obtained by
860         Defendants;

861     (4) **Punitive and Exemplary Damages:** Punitive, exemplary, and other
862         enhanced damages sufficient to punish Defendants for knowing,

intentional, and reckless conduct, and to deter Defendants and similarly situated actors from repeating such egregious misconduct;

(5) **FDUTPA Remedies:** Injunctive relief, restitution, and reasonable attorneys' fees and costs under Fla. Stat. § 501.211(2), including measures to prevent further consumer harm from Defendants' unfair and deceptive leasing practices;

(6) **Costs, Fees, and Expenses:** An award of all costs, attorneys' fees, investigative and expert expenses, and other litigation-related costs incurred in pursuing this action;

(7) **Pre- and Post-Judgment Interest:** Pre- and post-judgment interest at the maximum rate permitted by law; and

(8) **Other Relief:** Such other and further relief as the Court deems just and proper, including any equitable, remedial, or injunctive measures necessary to fully address Defendants' intentional, systemic, and ongoing misconduct and to prevent future harm to tenants and the public.

## COUNT 6: TOXIC TRESPASS AND STRICT LIABILITY
*(Against All Defendants)*

137. Defendants leased Plaintiff a residential dwelling that was uninhabitable at the inception of the tenancy due to chronic infestation and known structural conditions requiring repeated chemical pesticide applications.

138. Instead of curing the underlying hazardous condition, Defendants repeatedly authorized and caused chemical pesticides and toxic

887 substances to be applied inside Plaintiff's dwelling and adjacent areas,
888 resulting in the continuous physical introduction and accumulation of
889 hazardous substances within Plaintiff's living space.

890 139.    Plaintiff seeks punitive damages under this Count based on
891 Defendants' intentional, reckless, and grossly indifferent conduct in
892 knowingly exposing Plaintiff to toxic substances, and not pursuant to any
893 consumer-protection statute.

894 140.    These toxic substances physically entered and remained in
895 Plaintiff's home without his meaningful consent, in quantities that were
896 excessive, ineffective, and foreseeably harmful to human health,
897 particularly to an elderly and disabled occupant.

898 141.    Defendants repeated indoor application of chemical pesticides
899 inside an occupied residential dwelling, without curing the underlying
900 infestation, constituted an abnormally dangerous activity under Florida
901 law because it involved a high risk of serious harm to occupants that could
902 not be eliminated through the exercise of reasonable care.:

903          (a) repeated saturation of enclosed living areas;

904          (b) absorption of pesticides into dust, surfaces, and furnishings;

905          (c) routine cleaning activities that re-aerosolize contaminants;

906          (d) inhalation and dermal exposure by occupants;

907     (e) cumulative exposure over months and years; and

908     (f) repeated applications can occur every Friday if a resident calls-in

909     and places unit on the list because they do not understand the

910     hazards involved.

911  142.    Defendants knew or should have known that this course of conduct

912     posed a substantial and unreasonable risk of physical harm and disability

913     exacerbation, yet consciously disregarded that risk over an extended

914     period.

915  143.    The repeated chemical intrusion constituted an unlawful and

916     continuing physical invasion of Plaintiff's possessory interest in his home,

917     resulting in physical injury, emotional distress, and substantial loss of use

918     and enjoyment of the dwelling for approximately 975 days at filing.

919  144.    Defendants' conduct was intentional, reckless, or undertaken with

920     gross indifference to Plaintiff's health and safety, entitling Plaintiff to

921     punitive damages under Florida law.

922  145.    Defendants' grossly negligent conduct, including reckless disregard

923     for human safety and prolonged exposure of Plaintiff to known hazards,

924     independently supports the imposition of punitive damages under Florida

925     common law.

926     146.     This course of conduct further constitutes culpable negligence and

927     a pattern of regulatory noncompliance that disqualifies Defendants from

928     holding or renewing a real estate license pursuant to Fla. Stat. §

929     475.25(1)(b).

930     **WHEREFORE,** Plaintiff respectfully demands judgment against

931     Defendants as follows:

932     (1) Compensatory Damages

933        o   For physical injury and health impacts caused by repeated
934           exposure to toxic chemicals in the leased dwelling;

935        o   For emotional distress, anxiety, and mental suffering resulting
936           from living in a hazardous and uninhabitable environment;

937        o   For substantial loss of use and enjoyment of the premises over
938           approximately 975 days;

939     (2) Punitive Damages

940        o   To punish Defendants for intentional, reckless, or grossly
941           negligent conduct in knowingly exposing Plaintiff to toxic
942           substances;

943        o   To deter Defendants and others from engaging in similar
944           unlawful and dangerous practices;

945     (3) Restitution / Disgorgement *(if applicable)*

946        o   For any rent, fees, or other financial benefits obtained by
947           Defendants while leasing a dwelling they knew to be unsafe and
948           uninhabitable;

949     (4) Licensing and Regulatory Relief

- o Declaration that Defendants' conduct disqualifies them from possessing, using, or renewing a real estate business license under § 475.25(1)(b), Fla. Stat. (2024);
- o Any further remedial actions the Court deems appropriate to enforce statutory compliance;

(5) Interest, Costs, and Fees

- o Pre- and post-judgment interest as allowed by law;
- o Costs of this action, including attorneys' fees where permitted;

(6) Any Other Relief

- o Such other and further relief as the Court deems just, equitable, and proper under the circumstances.

**COUNT 7: GROSS NEGLIGENCE / CULPABLE NEGLIGENCE per se: (Against All Defendants)**

147.    Defendants owed Plaintiff a duty to maintain the leased premises in a reasonably safe and habitable condition, to disclose known hazards, and to avoid exposing tenants to unreasonable risks of harm, particularly to elderly or disabled individuals.

148.    Defendants knew, or reasonably should have known, that the property suffered from chronic infestation and that repeated pesticide applications over a multi-year period created dangerous indoor conditions.

149. Defendants failed to take reasonable steps to remediate these hazardous conditions, failed to warn Plaintiff of the risks, and continued to market and lease the units as safe and habitable.

150. Defendants' conduct demonstrated a conscious and reckless disregard for the health and safety of tenants, including Plaintiff, whose age and disability made him particularly vulnerable to harm.

151. Defendants' actions constitute gross negligence and culpable negligence per se, because they involved reckless indifference, failure to exercise even slight care, and a prolonged disregard for the substantial risks posed to human health.

152. As a direct and proximate result of Defendants' grossly negligent conduct, Plaintiff lived in unsafe and contaminated conditions for approximately 975 days at time of filing, suffering:

    a. Physical exposure to toxic substances;

    b. Emotional distress and mental suffering;

    c. Economic loss, including rent paid for a dwelling that was uninhabitable, medical costs, cleaning, and related expenses;

    d. Loss of use and enjoyment of his home.

153. Defendants' conduct also violates § 475.25(1)(b), Fla. Stat. (2024), disqualifying them from possessing, using, or renewing a real estate

991 business license in the state of Florida, and establishing an aggravating

992 factor supporting punitive damages.

993 **WHEREFORE**, Plaintiff respectfully demands judgment against Defendants

994 as follows:

995 (1) Compensatory Damages for physical injury, emotional distress,
996 economic loss, and loss of use/enjoyment of the dwelling;

997 (2) Punitive Damages to punish Defendants for reckless and grossly
998 negligent conduct and to deter similar future conduct;

999 (3) Licensing / Regulatory Relief declaring Defendants ineligible to hold
1000 or renew a real estate license under § 475.25(1)(b), Fla. Stat. (2024),
1001 and for any further remedial actions the Court deems appropriate;

1002 (4) Interest, Costs, and Fees, including pre- and post-judgment interest and
1003 all costs of this action;

1004 (5) Any other relief the Court deems just and proper.

1005 **COUNT 8: BREACH OF THE COVENANT OF QUIET ENJOYMENT**
1006 (Against All Defendants)

1007 154. This count focuses on: interference:

1008 155. Under Florida law, every residential lease contains an implied

1009 covenant of quiet enjoyment, guaranteeing tenants the right to peaceful

1010 and uninterrupted possession and enjoyment of their dwelling. See

1011 *Ginsberg v. Lennar Homes, Inc.*, 121 So. 3d 539 (Fla. 4th DCA 2013); *Canal*

1012 *Co. v. City of St. Petersburg*, 76 So. 2d 429 (Fla. 1954).

156. Defendants breached this covenant by knowingly permitting chronic infestation, repeated pesticide saturation, and unsafe environmental conditions to persist throughout Plaintiff's tenancy, substantially and unreasonably interfering with Plaintiff's possession and use of the premises.

157. As a direct and proximate result of Defendants' breach, Plaintiff suffered:

   a. loss of use and enjoyment of the dwelling for approximately 975 days;
   (b) emotional distress, including anxiety, mental suffering, and fear arising from persistent interference with his home; and (c) economic harm, including rent paid for an uninhabitable dwelling, cleaning and remediation costs, medical expenses, and temporary relocation costs.

158. Defendants' conduct constitutes gross negligence, incompetence, and dishonest dealing within the meaning of § 475.25(1)(b), Fla. Stat. While this statute is enforced administratively by Florida, it is in and of itself a serious aggravating factor; its standards of conduct are relevant to determining Defendants' breach of duties under Florida law and supports Plaintiff's request for equitable and declaratory relief concerning

Defendants' fitness to hold currently or retroactively, and or renew a real estate license.

159.    Defendants' willful and reckless disregard for Plaintiff's possessory rights and safety further constitutes an aggravating factor supporting an award of punitive damages under Florida law.

**WHEREFORE,** Plaintiff respectfully demands judgment against Defendants as follows:

(1) Compensatory Damages for loss of use, emotional distress, and economic harm resulting from the breach of the covenant of quiet enjoyment;

(2) Punitive Damages to punish Defendants for reckless or willful disregard of tenant rights and to deter similar conduct;

(3) Licensing / Regulatory Relief, including a declaration that Defendants are ineligible to hold or renew a real estate license under § 475.25(1)(b), Fla. Stat. (2024), and for any further remedial actions the Court deems appropriate;

(4) Interest, Costs, and Fees, including pre- and post-judgment interest and all costs of this action;

(5) Any **other relief** the Court deems just and proper.

**COUNT 9: BREACH OF IMPLIED WARRANTY OF HABITABILITY** (Against All Defendants)

160.    This count focuses on: condition + duty:

161.     Florida law imposes an implied warranty of habitability requiring landlords to provide and maintain residential premises in a condition fit for human habitation.

162.     Defendants breached this warranty by failing to maintain the property in a safe, sanitary, and habitable condition, including allowing chronic infestation and repeated pesticide saturation.

163.     The conditions were severe, persistent, and known to Defendants, yet Defendants failed to remedy them over 975 days.

164.     Plaintiff suffered physical exposure, emotional distress, and economic loss as a direct result of Defendants' breach.

165.     These violations constitute evidence of gross negligence and incompetence within the meaning of § 475.25(1)(b), Fla. Stat., and support declaratory and equitable relief concerning Defendants' fitness to hold or renew a real estate license."

**WHEREFORE**, as to Count 11 (Breach of Implied Warranty of Habitability), Plaintiff respectfully demands judgment against Defendants as follows:

Compensatory Damages:

   a. For economic loss and consequential damages resulting from Defendants' failure to maintain habitable premises, including rent paid for an uninhabitable dwelling, out-of-pocket expenses,

cleaning and remediation costs, medical expenses attributable to
unsafe conditions, and temporary relocation costs;

Rent Abatement / Restitution

    b. For the return or credit of rent collected during periods in which the
premises were unfit for human habitation, consistent with Florida
law;

Equitable Relief

    c. Requiring Defendants to remediate unsafe and unsanitary
conditions and to bring the premises into compliance with
habitability standards, or such other equitable relief as the Court
deems just and appropriate;

Declaratory Relief

    d. Declaring that Defendants breached the implied warranty of
habitability owed to Plaintiff under Florida law;

Interest, Costs, and Fees

    e. For pre- and post-judgment interest as allowed by law, and for the
costs of this action, including attorneys' fees where authorized;

Any Other Relief

    f. Such other and further relief as the Court deems just, equitable, and
proper under the circumstances.

## COUNT 10: ENTERPRISE / ALTER-EGO LIABILITY AND AGGRAVATING CIRCUMSTANCES

*(Against All Defendants)*

141. Plaintiff alleges that Defendants operated a unified residential
leasing enterprise through shared ownership interests, overlapping

1103 management, coordinated advertising, centralized decision-making, and
1104 integrated financial control relating to the residential property located at
1105 2320 Conway Road, Orlando, Florida.

1106 142. Public records and official filings maintained by the State of Florida
1107 identify the named individual Defendants as owners, operators,
1108 managers, or person(s) exercising control over the subject property and its
1109 residential leasing operations during the relevant period.

1110 143. During the relevant period, Defendants functioned collectively as a
1111 continuing enterprise for purposes of marketing, leasing, maintaining, and
1112 profiting from residential units at the subject property, rather than as
1113 independent or arms-length actors.

1114 144. Defendants Randy Ferreira, Lisa Gorsuch, and David Nachman
1115 each exercised operational or managerial authority within the enterprise,
1116 including authority over advertising representations, leasing practices,
1117 maintenance decisions, pest-control responses, and the handling or
1118 concealment of known hazardous conditions affecting habitability.

1119 145. The Defendant entities were so closely intertwined in ownership,
1120 control, management, and function that they lacked meaningful
1121 separation and operated as alter egos of one another, sharing a common

business purpose and acting in concert with respect to the alleged legally challenged conduct.

146. The enterprise satisfies the structural requirements recognized in *Boyle v. United States*, <u>556 U.S. 938</u> (2009), including a common purpose, ongoing relationships among participants, and sufficient longevity to permit the enterprise to pursue its objectives.

147. As a result of this enterprise and alter-ego structure, each Defendant is jointly and severally liable for acts undertaken by other Defendants in furtherance of the enterprise's leasing and operational activities giving rise to Plaintiff's claims.

148. Defendants utilized this structure to centralize control while diffusing accountability, including by allocating leasing, maintenance, and advertising functions across related entities and individuals, notwithstanding knowledge of ongoing conditions that violated statutory and common-law duties governing residential habitability, consumer protection, and the provision of safe housing.

149. This enterprise structure facilitated the continuation of leasing activity despite known hazardous conditions, impeded meaningful remediation, increased the risk of harm to residents, and aggravated the underlying statutory and common-law violations, supporting enhanced

1142    remedies, punitive damages, and enterprise-wide liability under applicable

1143    federal and state law.

1144    150.    Defendants knowingly authorized, approved, ratified, or failed to

1145    prevent the acts and omissions of their managers, agents, and supervisory

1146    personnel responsible for the operation of the subject property, thereby

1147    assuming liability under principles of agency, ratification, and supervisory

1148    control.

1149    151.    This Count is pled to establish enterprise-wide liability, alter-ego

1150    responsibility, and aggravating circumstances supporting enhanced

1151    remedies, and not as a standalone cause of action for duplicative damages.

1152    **WHEREFORE,** Plaintiff respectfully demands judgment against

1153    Defendants, jointly and severally, for compensatory damages, punitive

1154    damages where permitted by law, statutory damages, and equitable relief

1155    as authorized by applicable federal and state law, together with costs,

1156    attorney's fees where recoverable, pre- and post-judgment interest, and

1157    such other and further relief as the Court deems just and proper.

1158

1159

**COUNT 11: FEDERAL CIVIL RICO (18 U.S.C. § 1962(c))** (Against All Defendants)

152.     Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who were employed by or associated with an enterprise engaged in, and whose activities affected, interstate commerce.

153.     From at least 2021 through the present, Defendants conducted and participated, directly and indirectly, in the conduct of an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4), in violation of 18 U.S.C. § 1962(c).

154.     The enterprise existed independently of the racketeering acts, as Defendants used the same organizational structure to acquire, manage, market, and lease residential properties before, during, and after the predicate acts alleged herein. Allegedly, Defendants collectively formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

155.     Defendants operated and managed the enterprise by coordinating advertising, leasing decisions, maintenance policies, and responses to tenant complaints, including decisions to conceal known hazardous conditions, delay remediation, and continue rent collection despite knowledge of statutory and health-code violations.

156.     In furtherance of the enterprise, Defendants engaged in a pattern of racketeering activity, including multiple acts of wire fraud committed as part of a scheme to defraud in violation of 18 U.S.C. § 1343. (pattern of racketeering activity (as defined in 18 U.S.C. § 1961(5))

157.     Specifically, Defendants transmitted, or caused to be transmitted, interstate wire communications -- including online advertisements, electronic listings, emails, and electronic lease documents—that materially misrepresented or omitted the true condition of the dwelling, falsely portraying the unit as clean, safe, renovated, and suitable for habitation.

158.     From at least 2021 through the present, Defendants transmitted interstate wire communications as part of an ongoing scheme to market and lease unsafe residential units. Beginning in or about May 2023, Defendants transmitted wire communications directly to Plaintiff, including online listings, electronic messages, and lease-related communications, prior to Plaintiff's lease execution in June 2023 and during Plaintiff's tenancy and lease renewals, with the intent to induce Plaintiff to enter into and continue an unsafe residential lease.

159.     Defendants knew, or were deliberately indifferent to the fact, that the representations conveyed through these wire communications were

false or misleading, as the dwelling was affected by chronic infestation, repeated pesticide saturation, environmental contamination, and unresolved structural deficiencies.

160.    The predicate acts of wire fraud were related, as they shared common participants, victims, purposes, and methods, and were continuous, constituting both closed-ended continuity (spanning multiple years) and open-ended continuity, as Defendants' conduct posed a continued threat of repetition absent judicial intervention.

161.    Defendants' racketeering acts were not isolated or sporadic, but were part of Defendants' regular way of conducting the enterprise's residential leasing business.

162.    Plaintiff was a foreseeable and intended victim of Defendants' racketeering activity.

163.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff suffered concrete financial loss and property injury, including rent paid for fraudulently marketed housing, loss of use and enjoyment of the dwelling, expenses associated with exposure to unsafe conditions, and other out-of-pocket losses.

1219    164.    Defendants' racketeering conduct caused Plaintiff to reside in

1220    unsafe and contaminated conditions for approximately 975 days, resulting

1221    in substantial economic damage and personal harm.

1222    165.    Plaintiff has standing to bring this civil RICO claim pursuant to 18

1223    U.S.C. § 1964(c) because he was directly injured in his business or

1224    property by reason of Defendants' racketeering conduct. Plaintiff's

1225    injuries were the foreseeable and natural consequence of Defendants' wire

1226    fraud scheme, and were proximately caused by Defendants'

1227    misrepresentations and omissions, which induced Plaintiff to enter into

1228    and continue a residential lease for unsafe and uninhabitable housing.

1229    **WHEREFORE**, Plaintiff demands judgment against Defendants for:

1230    A. Treble damages pursuant to 18 U.S.C. § 1964(c);

1231    B. Costs and reasonable attorneys' fees;

1232    C. Injunctive and equitable relief to prevent ongoing and future

1233    racketeering conduct; and

1234    D. Such other and further relief as the Court deems just and proper.

1235    E. Injunctive Relief Specifically Requested:

1236    Plaintiff further requests narrowly tailored injunctive relief pursuant to 18

1237    U.S.C. § 1964(a), including orders prohibiting Defendants from

1238    advertising or leasing residential units as safe, clean, or renovated without

1239    disclosure of known infestations, contamination, or un-remediated

1240    hazards; requiring corrective disclosures to prospective tenants; and

requiring Defendants to implement compliance procedures to prevent future racketeering conduct.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, as follows:

(1) **Compensatory Damages** for all economic losses, physical harm, emotional distress, and other damages suffered as a result of Defendants' conduct;

(2) **Statutory Damages** under the Fair Housing Act, Florida Residential Landlord and Tenant Act, FDUTPA, and other applicable statutes;

(3) **Punitive Damages** for Defendants' willful, wanton, malicious, and reckless conduct as alleged in Counts I, V, VI, VII, and XI;

(4) **Treble Damages** pursuant to 18 U.S.C. § 1964(c) for Defendants' RICO violations alleged in Count XI;

(5) **Injunctive Relief** including:

- o An order prohibiting Defendants from advertising or leasing residential units as safe, clean, or renovated without disclosure of known infestations, contamination, or unpremeditated hazards;

- o An order requiring Defendants to provide corrective disclosures to all current and prospective tenants;

- o An order requiring Defendants to implement and maintain compliance procedures to prevent future unlawful conduct;

- o Appointment of a receiver if necessary to ensure remediation of hazardous conditions;

(6) **Declaratory Relief** that Defendants violated the Fair Housing Act, RICO, FDUTPA, and other statutes as alleged;

(7) **Rent Abatement** for all months during which Plaintiff's dwelling was uninhabitable due to the conditions alleged herein;

(8) **Reasonable Attorneys' Fees and Costs** under all applicable statutes including 42 U.S.C. § 3613(c)(2), 18 U.S.C. § 1964(c), and Fla. Stat. § 501.2105;

(9) **Pre- and Post-Judgment Interest** at the maximum rate permitted by law; and

(10)    **Any Other Relief** this Court deems just, equitable, and proper under the circumstances.

**Exhibit A — Preliminary Damages Schedule** (Subject to Discovery and Proof)

Note: This Exhibit is offered for notice and damages-methodology purposes only and does not limit the relief sought in the Prayer for Relief. This Exhibit A is a preliminary, good-faith damages schedule prepared to put Plaintiff to his proofs. Each line item below includes the calculation, the documentary source(s) that must be attached to support the entry, and a short explanation of the methodology. All amounts are estimates based on records currently in Plaintiff's possession and are subject to amendment after discovery, accounting, and expert analysis. Plaintiff is disabled; relocation, medical, and lost-income categories have been omitted per Plaintiff's instruction.

1.     Rent abatement / Loss of use (primary economic loss)

1.1 Period: 975 days (dates: [insert start date] through [insert end date]) — see Lease and maintenance timeline (Exhibit B).

1.2 Daily value used: $500.00 per day (basis: monthly rent or market rental comparables; attach rent ledger and comparable listings) — see Rent Ledger and Market Comparables (Exhibit C).

1.3 Calculation:

1.     1.4 Line entry: Rent abatement (975 days at $500/day) = $487,500.00.

1.5 Sources to attach: Lease (signed) showing monthly rent (Exhibit B); rent ledger or bank statements showing payments (Exhibit C-1); maintenance/inspection records showing uninhabitable periods (Exhibit

D); market rental comparables or appraisal supporting $500/day (Exhibit C-2).

1.6 Methodology note: Daily rate derived from lease or market comparables; days counted per maintenance logs and communications showing inability to safely vacate or loss of use.

2.  Property loss / Replacement of personal items

2.1 Items: damaged furniture, electronics, clothing, personal property destroyed or rendered unusable by contamination.

2.2 Line items (examples — replace with actual receipts):

• Sofa replacement: $[amount] — Source: receipts/estimates (Exhibit G-1).

• Electronics replacement: $[amount] — Source: receipts/estimates (Exhibit G-2).

2.3 Subtotal calculation: sum of replacement costs = $[subtotal].

2.4 Line entry: Property loss subtotal = $[subtotal].

2.5 Sources to attach: Photos of damage, receipts, repair estimates, insurance denials (Exhibit G).

3.  Out-of-pocket expenses (other)

3.1 Items: transportation related to necessary appointments, special cleaning or remediation costs paid by Plaintiff, PPE or testing costs, and other necessary expenses directly caused by the hazardous conditions.

3.2 Line items (examples):

• Cleaning and remediation supplies: $[amount] — Source: receipts (Exhibit I-1).

• Transportation (mileage or rides) to appointments related to the conditions: $[amount] — Source: mileage log or receipts (Exhibit I-2).

3.3 Subtotal calculation: sum of out-of-pocket expenses = $[subtotal].

3.4 Line entry: Other out-of-pocket subtotal = $[subtotal].

3.5 Sources to attach: Receipts, mileage logs, invoices (Exhibit I).

4.  Non-economic damages (emotional distress, pain and suffering)

4.1 Estimate approach: non-economic damages are typically proven by testimony, medical/mental-health records, and the severity/duration of harm. Plaintiff provides a conservative estimate now and will refine after expert/medical proof.

4.2 Line entry (example placeholder): Non-economic damages (estimate) = $[amount].

4.3 Sources to attach: Declarations, mental-health provider records (if any), contemporaneous notes, witness statements (Exhibit J).

5.  Total current estimated compensatory damages (sum of items 1, 2, 3, and 4)

5.1 Calculation: sum the subtotals from items 1 through 4. Example using the rent abatement figure only:

5.  5.2 Line entry: Total current estimated compensatory damages = $[total estimated amount].

5.3 Note: This total is a preliminary estimate and will be updated after discovery and expert analysis.

6.  Treble damages (RICO) — if RICO liability proven

6.1 Calculation: Treble damages = 3 × (Total proven economic loss). If the court finds RICO liability and the proven economic loss equals the compensatory economic subtotal, treble = that subtotal.

6.2 Example: If proven economic loss = $487,500, then treble = .

6.3 Line entry: Treble damages (if applicable) = $[3 × proven economic loss].

7. Punitive damages

7.1 Approach: Punitive damages will be proven at trial based on the record of willful, malicious, or reckless conduct. Plaintiff reserves the right to propose a punitive amount supported by the evidence.

7.2 Line entry: Punitive damages = $[to be proven at trial].

8. Disgorgement / Accounting (alternative equitable relief)

8.1 Request: Plaintiff requests an accounting of Defendants' profits attributable to the unlawful conduct and disgorgement of those profits.

8.2 Calculation method: If Defendants' per-unit profit or daily profit can be traced to the subject unit(s), disgorgement = sum of profits for the relevant period. Example: if Defendants' net profit per day = $500 and period = 975 days, disgorgement = $487,500 (subject to accounting adjustments).

8.3 Sources to request and attach (from Defendants): ledgers, rent rolls, bank statements, profit & loss statements, invoices, tax returns (to be obtained in discovery). Plaintiff requests the Court order production and, if necessary, appointment of a forensic accountant or receiver.

9. Attorneys' fees, costs, and interest

9.1 Fees and costs: To be proven by affidavit and billing records after prevailing or as the Court directs.

9.2 Interest: Prejudgment and postjudgment interest at the maximum rate permitted by law on any monetary award.

**CERTIFICATE OF SERVICE** Local Rule 3.01(g):

**CASE NUMBER:** 6:25-cv-1628-AGM-RMN

Federal Rule of Civil Procedure 5(d)(1)(B). **DEFENSE: OPPOSED**

    **I HEREBY CERTIFY** Local Rule 3.01(g) Certification: Prior to filing this Opposition, Plaintiff attempted to confer in good faith with counsel for Defendants at least three days before filing by phone, available most afternoons, or by way of their preferred mode of communication(s). Specifically, Plaintiff sent an e-mail to:

Maura Krause, Esq., Jelica Delaine, Esq. at
mkrause@rlattorneys.com;
jdelaine@rlattorneys.com;
aaumiller@rlattorensy.com;
lschneider@rlattorneys.com

3.01(g) Service: acting in good faith:
19 Jan 2026. Defense called for conference and Plaintiff agreed but timeline was outside deadline. Defense Opposed

Lindsay Topping Brigman, Esquire
Florida Bar No. 0654981
Ashley E. Ettaro, Esquire
Florida Bar No. 1002245
WICKER SMITH O'HARA
MCCOY & FORD, P.A.
100 S. Ashley Dr., Suite 1800
Tampa, FL 33602
Phone: (813) 222-3939
Fax: (813) 222-39382
TPAcrtpleadings@wickersmith.com
Attorneys for Defendants

on this 19th day of Jan 2026.

Andrew James Ensor
Pro Se Plaintiff
314.882.0551

1427   **Memorandum Of Law** Attached Here Per Directive of the Magistrate Judge
1428   hearing of December 6th 2025.
1429