UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION

Andrew James Ensor, Plaintiff,

The Park at Venosa Apartments, et al., Defendants.

Case No. 6:25-cv-1628-AGM-RMN

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF AMENDED COMPLAINT** Pursuant to the Magistrate Judge's directive at December 6, 2025 hearing this memorandum is attached after the complaint.

## I. INTRODUCTION

1. Pursuant to the Magistrate Judge's directive at the December 6, 2025 hearing, Plaintiff submits this Memorandum of Law in support of the Amended Complaint. This memorandum is filed below the complaint per said instructions and provides count-by-count legal authority demonstrating that each claim is plausibly pleaded under governing federal and Florida law.

2. At the pleading stage, Plaintiff is required only to allege sufficient factual matter, accepted as true, to state claims that are plausible on their face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556

U.S. 662 (2009). The Amended Complaint satisfies this standard for each cause of action.

3. This case does not concern routine maintenance disputes. It concerns enterprise-level conduct involving the leasing and continued operation of residential property under conditions alleged to be unsafe, deceptive, and unlawful, with foreseeable harm to tenants, including elderly and disabled individuals. When the allegations are viewed as a whole, Plaintiff states multiple independent bases for liability.

## II. JURISDICTION AND VENUE

4. The Court has federal question jurisdiction under 28 U.S.C. § 1331 based on Plaintiff's claims under the Fair Housing Act and the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). The Court has supplemental jurisdiction over Plaintiff's Florida statutory and common-law claims under 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts.

5. Venue is proper in this District under 28 U.S.C. § 1391 because the property at issue is located in the Middle District of Florida and the events giving rise to Plaintiff's claims occurred in this District.

## III. GOVERNING PLEADING STANDARDS

6. A complaint must contain a short and plain statement showing entitlement to relief. Fed. R. Civ. P. 8(a). Fraud-based claims must satisfy Rule 9(b) by alleging the who, what, when, where, and how of the alleged misconduct. Fed. R. Civ. P. 9(b). RICO claims must plausibly allege enterprise, conduct or participation, predicate acts, continuity, and proximate cause. Reves v. Ernst & Young, 507 U.S. 170 (1993); H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989).

7. The Amended Complaint is drafted to comply with these standards and avoids impermissible shotgun pleading. Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313 (11th Cir. 2015).

8. The Fair Housing Act ("FHA") makes it unlawful to discriminate against a person in the rental of a dwelling because of disability, including by (a) denying equal housing opportunities, (b) refusing reasonable accommodations necessary for the use and enjoyment of the premises, and (c) coercing, threatening, or interfering with the exercise of FHA-protected rights. 42 U.S.C. §§ 3604(f)(1), (f)(3)(B), 3617.

9. To state a disability-discrimination claim under the FHA, a plaintiff must allege:

   1. A qualifying disability;

2. The defendant's knowledge of that disability;

3. A denial of equal housing opportunity, refusal to accommodate, or interference with protected rights; and

4. Resulting injury.

See Bhogaita v. Altamonte Heights Condo. Ass'n, 765 F.3d 1277 (11th Cir. 2014).

10. Plaintiff alleges that he is elderly and disabled, that Defendants were repeatedly informed of his disability status during the leasing process and throughout the tenancy, and that Defendants nonetheless subjected him to prolonged unsafe and unsanitary housing conditions, refused to provide reasonable accommodations, and interfered with his ability to use and enjoy the dwelling. Plaintiff further alleges that Defendants' conduct caused physical, emotional, and economic harm.

11. Taken as true, these allegations plausibly state claims for disability discrimination and interference under 42 U.S.C. §§ 3604(f) and 3617.

## COUNT II – FLORIDA RESIDENTIAL LANDLORD AND TENANT ACT

12. Florida law requires landlords to maintain residential premises in a condition that is safe, sanitary, and fit for human habitation, including compliance with applicable health and building codes. Fla. Stat. § 83.51(1).

When a landlord fails to comply with these statutory duties after receiving notice and an opportunity to cure, the tenant may recover damages. Fla. Stat. § 83.56(1).

13. Plaintiff alleges that Defendants allowed chronic infestation, repeatedly subjected him to unsafe and excessive chemical exposure, and failed to correct known hazardous conditions despite receiving written and verbal notice. Plaintiff further alleges that these conditions persisted for an extended period, substantially impairing the safety and habitability of the dwelling and causing physical, emotional, and economic harm. Accepting these allegations as true, Plaintiff plausibly states violations of §§ 83.51 and 83.56 and a statutory basis for recovery of damages.

## COUNT III – NEGLIGENCE PER SE / PRIMA FACIE NEGLIGENCE

14. Under Florida law, violation of a statute or administrative rule enacted to protect a particular class of person(s) from a particular type of harm may constitute negligence per se or prima facie evidence of negligence. deJesus v. Seaboard Coast Line R.R., 281 So. 2d 198 (Fla. 1973). Statutes and regulations governing residential habitability, pesticide application, and landlord licensing are designed to protect tenants from health and safety hazards.

15. Plaintiff alleges that Defendants violated multiple Florida statutes and implementing administrative rules regulating habitability standards, safe pesticide use, and landlord licensing requirements, and that these violations resulted in chronic infestation, repeated chemical exposure, and unsafe living conditions.

16. These allegations establish that Defendants breached duties imposed by law, that the resulting harm was foreseeable, and that Plaintiff suffered physical, emotional, and economic damages. Taken as true, the allegations plausibly state claims for negligence per se and prima facie negligence.

## COUNT IV – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)

17. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To state a claim, a plaintiff must allege (1) a deceptive or unfair act, (2) causation, and (3) actual damages. See Carriuolo v. General Motors Co., 823 F.3d 977 (11th Cir. 2016).

18. Plaintiff alleges that Defendants deceptively marketed and leased residential units as safe, habitable, and properly maintained while concealing chronic infestations, hazardous chemical exposure, and other

known defects. Plaintiff further alleges that these misrepresentations and omissions induced him to enter and remain in the tenancy and caused physical, emotional, and economic harm.

19. Accepting these allegations as true, Plaintiff plausibly states a claim under FDUTPA because the alleged conduct constitutes a deceptive practice likely to mislead a reasonable consumer, directly caused Plaintiff's injuries, and resulted in actual damages.

## FDUTPA COUNT V – FRAUDULENT INDUCEMENT

18. Under Florida law, fraudulent inducement requires: (1) a false statement concerning a material fact; (2) the speaker's knowledge that the representation is false; (3) an intent that the representation induce another to act; (4) justifiable reliance; and (5) resulting damages. Butler v. Yusem, 44 So. 3d 102 (Fla. 2010).

19. Plaintiff alleges that, before execution of the lease, Defendants made affirmative misrepresentations and concealed material facts regarding the safety and condition of the dwelling, intending to induce Plaintiff to enter the tenancy. Plaintiff further alleges that he relied on these statements and omissions in deciding to lease the unit and suffered damage(s) as a result. *The complaint identifies the relevant advertising, communications, timing,*

and content of the misrepresentations, satisfying Rule 9(b)'s particularity requirement and plausibly stating a claim for fraudulent inducement.

## COUNT VI – TOXIC TRESPASS AND STRICT LIABILITY

20. Florida law recognizes common-law trespass where a defendant causes a physical invasion of property, including the intrusion of chemical agents, fumes, or other toxic substances. Florida also imposes strict liability for abnormally dangerous activities that create a high degree of risk of harm and cannot be made safe through the exercise of reasonable care. See West v. Caterpillar Tractor Co., 336 So. 2d 80 (Fla. 1976); Restatement (Second) of Torts §§ 519–520.

21. Plaintiff alleges that Defendants repeatedly caused toxic chemical agents to enter his dwelling without meaningful consent, resulting in a continuing physical invasion of his living space. Plaintiff further alleges that the repeated application of hazardous pesticides in an occupied residential unit constitutes an abnormally dangerous activity. Accepting these allegations as true, Plaintiff plausibly states claim(s) for toxic trespass and strict liability.

## COUNT VII – GROSS NEGLIGENCE / CULPABLE NEGLIGENCE

22. Under Florida law, gross negligence is conduct "so reckless or wanting in care that it constitutes a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." Valladares v. Bank of America Corp., 197 So. 3d 1 (Fla. 2016). Culpable negligence similarly involves a reckless disregard for human life or safety and a level of misconduct substantially more egregious than ordinary negligence.

23. Plaintiff alleges that Defendants knowingly subjected him to prolonged and repeated exposure to hazardous conditions, including chronic infestation, toxic chemical intrusion, and unsafe environmental conditions—despite actual notice of the dangers and repeated opportunities to remediate. Plaintiff further alleges that Defendants were aware of his age, disability, and heightened medical vulnerability, yet consciously disregarded the substantial risk of serious harm. Such allegations describe conduct that federal courts characterize as "so reckless or wanting in care that it constitutes a conscious disregard or indifference to the rights or safety of others." Cottrell v. Caldwell, 85 F.3d 1480, 1487 (11th Cir. 1996). Taken as true, these facts plausibly support claims for gross negligence and culpable negligence, as well as the imposition of punitive damages.

## COUNT VIII – BREACH OF COVENANT OF QUIET ENJOYMENT

24. Florida law implies a covenant of quiet enjoyment into every residential lease, protecting a tenant's right to use and enjoy the premises without substantial interference by the landlord. Ginsberg v. Lennar Homes, Inc., 121 So. 3d 539 (Fla. 4th DCA 2013).

25. A breach occurs where the landlord's acts or omissions "materially disturb the tenant's beneficial enjoyment of the property," even if the tenant does not vacate. See Hankins v. Smith, 103 So. 2d 237 (Fla. 2d DCA 1958); see also Sullivan v. Stock, 958 F. Supp. 2d 1360, 1366 (M.D. Fla. 2013) (recognizing substantial interference as actionable).

26. Plaintiff alleges that Defendants caused or permitted chronic infestation, repeated toxic chemical intrusion, and unsafe environmental conditions that substantially interfered with his ability to safely occupy and enjoy his home. Plaintiff further alleges that these conditions persisted for an extended period despite notice, depriving him of the essential benefits of the tenancy. Accepting these allegations as true, Plaintiff plausibly states a claim for breach of the implied covenant of quiet enjoyment.

## COUNT IX: BREACH OF IMPLIED WARRANTY OF HABITABILITY

27. Florida law recognizes an implied warranty of habitability in residential leases, reflected in the statutory duty to maintain premises in a condition that is safe, sanitary, and fit for human habitation. See Fla. Stat. § 83.51(1); see also Javins v. First Nat'l Realty Corp., 428 F.2d 1071 (D.C. Cir. 1970) (adopted in substance through Florida's statutory and common-law framework). A breach occurs where conditions materially affect the health, safety, or essential use of the dwelling.

28. Plaintiff alleges that the premises were materially uninhabitable for an extended period due to chronic infestation, repeated chemical intrusion, and unsafe environmental conditions, and that Defendants failed to remedy these hazards despite notice. Florida law makes clear that a tenant's continued occupancy does not waive claims arising from uninhabitable conditions. Aspen v. Bayless, 564 So. 2d 1081 (Fla. 1990). Accepting the allegations as true, Plaintiff plausibly states a claim for breach of the implied warranty of habitability.

## COUNT X – ENTERPRISE / ALTER-EGO LIABILITY

29. Florida and federal law permit enterprise and alter-ego liability where multiple entities operate as a unified enterprise, share common control, or

are used to shield one another from accountability. Under Florida law, veil-piercing and alter-ego liability apply where entities are mere instrumentalities of one another and are used to perpetrate misconduct or evade legal responsibility. Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114 (Fla. 1984).

30. Federal courts similarly recognize enterprise liability where entities function collectively with common ownership, management, and operational integration. See Williams v. Mohawk Indus., Inc., 465 F.3d 1277 (11th Cir. 2006) (recognizing association-in-fact enterprise through coordinated corporate activity).

31. Plaintiff alleges that the Defendant entities shared ownership, financial control, management personnel, leasing operations, and decision-making authority, and that they jointly marketed, operated, and profited from the residential property at issue.

32. Plaintiff further alleges that the entities functioned as a unified enterprise for the purpose of leasing unsafe units while obscuring responsibility among interrelated corporate actors. Accepting these allegations as true, Plaintiff plausibly states a basis for enterprise-wide and alter-ego liability, as well as

aggravating circumstances relevant to punitive damages and joint and several liability.

## COUNT XI – FEDERAL CIVIL RICO (18 U.S.C. § 1962(c))

33. To state a RICO claim, Plaintiff must allege: (1) an enterprise; (2) conduct or participation; (3) a pattern of racketeering activity; (4) continuity; and (5) proximate cause. Boyle v. United States, 556 U.S. 938 (2009).

34. Plaintiff alleges an association-in-fact enterprise engaged in repeated wire fraud through advertising and leasing communications, continuity over multiple years, and direct injury.

35. These allegations satisfy Twombly, Rule 9(b), and Eleventh Circuit RICO standards. Cisneros v. Petland, Inc., 972 F.3d 1204 (11th Cir. 2020); Ray v. Spirit Airlines, Inc., 836 F.3d 1340 (11th Cir. 2016).

## EQUITABLE RELIEF AND DISGORGMENT

36. In addition to compensatory damages, Plaintiff seeks equitable relief expressly authorized by statute, including accounting and disgorgement where appropriate. The Fair Housing Act permits courts to award injunctive and "other equitable relief" to remedy and prevent unlawful housing practices, including relief necessary to eliminate unjust enrichment

and ongoing effects of discrimination. See 42 U.S.C. §§ 3613(c), 3614(d). Where, as here, Plaintiff alleges systemic and repeated misconduct in residential leasing operations that generated revenue while unsafe and unlawful conditions were concealed or ignored, equitable remedies are properly considered to ensure compliance and deterrence.

37. Disgorgement is independently and expressly available under Plaintiff's civil RICO and FDUTPA claims, both of which authorize broad equitable relief to deprive defendants of profits obtained through unlawful conduct and to prevent wrongdoers from retaining ill-gotten gains. See 18 U.S.C. § 1964(a); Fla. Stat. § 501.207. Plaintiff alleges coordinated enterprise conduct, deceptive practices, and profit-driven decision-making that, if proven, establish a sufficient factual basis for equitable relief, including accounting and disgorgement. The scope and amount of any such relief are inherently fact-dependent and appropriately determined after discovery and proof, not at the pleading stage.

## V. CONCLUSION

38. For the foregoing reasons, each count of the Amended Complaint states a plausible claim for relief under the applicable federal and Florida standards and should not be dismissed at the pleading stage. The Amended Complaint

alleges detailed facts showing prolonged unsafe and unsanitary conditions, repeated chemical intrusions, chronic infestation, deceptive leasing and advertising practices, and Defendants' knowing refusal to remediate despite notice and Plaintiff's heightened vulnerability as an elderly and disabled tenant. Taken together, these allegations support claims for disability discrimination and interference under the Fair Housing Act, RICO liability, FDUTPA and related Florida statutory and common-law causes of action.

39. Plaintiff has attached a Preliminary Damages Schedule as Exhibit A to put Plaintiff to his proofs; Exhibit A is labeled "Preliminary — Subject to Discovery and Expert Analysis" and is supported by documentary sources identified in the Exhibits Index. Plaintiff expressly reserves the right to supplement or amend the damages amounts following discovery, accounting, and expert reports. Plaintiff also requests that the Court permit targeted discovery into Defendants' financial records, rent rolls, ledgers, and other documents necessary to determine disgorgement, treble damages, and any other equitable relief.

40. Accordingly, Plaintiff respectfully requests that the Court deny any motion to dismiss, allow the Amended Complaint to proceed to discovery, and adjudicate the claims on the merits. Plaintiff further requests all relief

sought in the Complaint, including compensatory and statutory damages, disgorgement and accounting, injunctive and declaratory relief, punitive damages where appropriate, attorneys' fees and costs, prejudgment and post judgment interest, and any other relief the Court deems just and proper. Plaintiff demands a trial by jury on all claims and issues so triable Respectfully submitted,

Andrew James Ensor
Plaintiff, Pro Se