UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:25-cv-1628-AGM-RMN

ANDREW JAMES ENSOR,

      Plaintiff,

v.

BLUE ROCK PREMIER PROPERTIES,
LLC, CONWAY PROPERTY HOLDINGS,
LLC, RANDY X. FERREIRA, and LISA
GORSUCH,

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH PREJUDICE

COME NOW Defendants BLUE ROCK PREMIER PROPERTIES, LLC, CONWAY PROPERTY HOLDINGS, LLC, RANDY X. FERREIRA and LISA GORSUCH (hereinafter "Defendants"), by and through the undersigned counsel, and hereby file their Motion to Dismiss the Plaintiff's Second Amended Complaint with Prejudice and in support hereof state:

### STATEMENT OF FACTS

1.     On December 4, 2025, pro se Plaintiff ANDREW ENSOR (hereinafter "Plaintiff") filed a Motion for Joinder of Indispensable Party and for Leave to File

Second Amended Complaint ("Motion") with a proposed "Amended Join[d]er Complaint for Damages, Injunctive, and Equitable Relief." See ECF No. 73.

2.      This Court granted the Plaintiff's Motion and ordered him to file his Second Amended Complaint on or before December 31, 2025. See ECF No. 80.

3.      On January 23, 2026, the Plaintiff filed a Second Amended Complaint. See ECF No. 97.

4.      The Plaintiff's Second Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted for the reasons set forth herein.

## ARGUMENT AND MEMORANDUM OF LAW

### I.  Standard of Review

Pursuant to Fed. R. Civ. P. 8(a), a pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the sought. The plaintiff must allege "[e]nough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "The primary purpose of a motion to dismiss is to request the trial court to

determine whether the complaint properly states a cause of action upon which relief can be granted and, if it does not, to enter an order of dismissal." *Sobi v. Fairfield Resorts, Inc.*, 846 So. 2d 1204, 1206 (Fla. Dist. Ct. App. 2003).

General, vague and conclusory statements are insufficient to satisfy the requirements that a pleader allege "a short and plain statement of ultimate facts showing the pleader is entitled to relief." *Jordan v. Nienhuis*, 203 So.3d 974, 976 (Fla. 5th DCA 2016). If a complaint is so vague, indefinite and ambiguous as to wholly fail to state a cause of action, it is subject to dismissal. *Frisch v. Kelly*, 137 So.2d 252, 253 (Fla. 1st DCA 1962). A plaintiff's failure to state a claim upon which relief can be granted warrants dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## II. <u>The Second Amended Complaint is an Impermissible Shotgun Pleading</u>

Generally, the Second Amended Complaint should be dismissed with prejudice, as it is an impermissible shotgun pleading that fails to provide Defendants with adequate notice of the claims being asserted against them and the grounds upon which each claim rests. The Second Amended Complaint is 66 pages long and contains 11 counts. It contains conclusory and immaterial facts that fail to support the numerous causes of action being asserted.

Specifically, the Plaintiff failed to state causes of action against each individual Defendant and instead grouped the Defendants together under each count. This type of group pleading is improper under Fed. R. Civ. P. 8(a)(2), which

requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Due to the Plaintiff's allegations of fraud, the Plaintiff's group pleading further violates Fed. R. Civ. P. 9(b), which requires him to plead the circumstances constituting fraud to be stated with particularity.

The Eleventh Circuit has squarely rejected the practice of attributing the same conduct to all defendants in undifferentiated fashion, particularly where fraud or deception is alleged. In *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1217–18 (11th Cir. 2020), the court faulted the plaintiff for "blending the identities of the defendants" and failing to allege what role each defendant played in the supposed scheme—holding that such group pleading fails to state a RICO claim and cannot satisfy Rule 9(b) or Rule 12(b)(6). Because the Second Amended Complaint impermissibly groups all Defendants together and omits any defendant-specific facts, it constitutes an impermissible shotgun pleading and fails to state a claim upon which relief can be granted. Accordingly, the Second Amended Complaint should be dismissed with prejudice.

### III.  The Second Amended Complaint Exceeds the Scope of Leave Granted and Improperly Adds New Causes of Action.

The Second Amended Complaint should be dismissed with prejudice, as it exceeds the scope of leave granted by this Court and improperly adds new causes of action. Fed. R. Civ. P. 15(a)(2) allows a party to amend its pleading only with the opposing party's written consent or leave of court. It is well established that

any amendment outside the scope of the Court's authorization is procedurally improper.

In *Hill v. Allianz Life Insurance Co. of North America*, the Middle District of Florida struck an amended complaint that added a breach of contract claim never contemplated in the plaintiff's motion for leave to amend. *Hill v. Allianz Life Ins. Co. of N. Am.*, No. 6:14-cv-950-Orl-41KRS, 2015 WL 12838838, at *4 (M.D. Fla. June 17, 2015). This Court stated that "Plaintiff cannot reasonably claim that this Court's December 5, 2014 Order granted Plaintiff leave to asserts claims, which, at that time, were not before the Court." *Id.* The court emphasized that "[i]t is mistaken, if not misleading, for Plaintiff to interpret the Court's ruling as [a] carte blanche grant of authority to reformulate the proposed First Amended Civil Complaint to not only add Lifestyles, but to add additional legal theories and claims for relief." *Id.*

In this case, the Court granted the Plaintiff's Motion and ordered him to file his Second Amended Complaint on or before December 31, 2025. See ECF No. 80. On January 23, 2026, 23 days after the Court's deadline, the Plaintiff filed a Second Amended Complaint, which materially differs from the version he originally attached to his Motion. See ECF No. 97 and ECF No. 73. The Plaintiff's proposed Second Amended Complaint contained 16 counts, whereas his filed Second Amended Complaint contains 11 counts that differ significantly.

The Plaintiff's Second Amended Complaint asserts two new causes of action against Defendants: Count II (Florida Residential Landlord & Tenant Act) and Count III (Negligence Per Se/Prima Facie Negligence), which this Court did not authorize the Plaintiff to add, exceeding the scope of leave granted by this Court. See ECF No. 97 and ECF No. 80. Moreover, Defendants did not provide written consent for the Plaintiff to materially alter the Second Amended Complaint that he ultimately filed in accordance with Fed. R. Civ. P. 15(a)(2). This Court's Order on Defendant's previous Motion to Dismiss expressly cautioned the Plaintiff that failure to comply with the Court's directives may result in dismissal without further notice. See EFC No. 98. The Plaintiff's Second Amended Complaint should be dismissed for failure to comply with Fed. R. Civ. P. 15(a)(2) and failing to comply with the Court's directives, as it clearly exceeds the authorized scope of amendment.

**IV.    The Second Amended Complaint and attached Memorandum of Law Distort Cited Case Law Through AI-Generated Errors, Including Incorrect Citations and Misstated Legal Principles**

This case should further be dismissed with prejudice because the Second Amended Complaint and the "Memorandum of Law in Support of Amended Complaint" that was attached contain six instances of AI-generated hallucinations. See ECF No. 97, Lines 530–34, 1008–12, and Count VIII of Plaintiff's Memorandum

of Law in Support of the Amended Complaint. The Plaintiff has cited cases that either (1) misstate what the authority says or (2) do not exist in the form presented.

The Statement of Facts contains two citation errors that are particularly prejudicial because they purport to establish fabricated background propositions. The first case, *Aspen v. Bayless*, 564 So. 2d 1081 (Fla. 1990) is a real Florida Supreme Court decision, but it concerns cost shifting / offers of judgment and recovery of costs paid by a nonparty, not the landlord-tenant or substantive propositions the Plaintiff attributes to it. See EFC No. 97, Lines 530-34.

The second case, *American Motorists Ins. Co. v. Southern Security Life Ins. Co.*, 80 F.3d 105 (11th Cir. 1996) appears to be a fabricated citation. There is no Eleventh Circuit decision at 80 F.3d 105 (1996) by that caption. The case Plaintiff seems to invoke is a district court decision from the Middle District of Alabama reported at 80 F. Supp. 2d 1280 (M.D. Ala. 2000). That case addressed insurance coverage (CGL/professional services exclusions) in a declaratory-judgment action and is not controlling Eleventh Circuit precedent; moreover, it post-dates 1996 by four years. *American Motorists Ins. Co. v. Southern Security Life Ins. Co.*, 80 F. Supp. 2d 1280 (M.D. Ala. 2000). Four hallucinated cases were also cited in Count VIII, which are later discussed in this Motion.

AI-type hallucination defects are not trivial. *Pro se* litigants, such as the Plaintiff, must follow the same rules as represented parties and non-compliance is

sanctionable. The Middle District warns pro se parties that "the rules apply to all parties regardless of whether they have a lawyer" and that failure to comply with rules or court orders "could result in sanctions, including dismissal." (M.D. Fla. Order for *Pro Se* Litigants, 5:24-cv-111-TJC-PRL, at 1 (Ocala Div.)) (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)). The Eleventh Circuit likewise holds that, although *pro se* filings are construed liberally, litigants must conform to procedural rules. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). Beyond dismissal, this Court enforces the full array of sanctions under Rule 37, including striking filings, monetary sanctions, and contempt, and treats failure to comply with court orders with "special gravity and disfavor." (M.D. Fla. Discovery Handbook, § E "Timeliness and Sanctions").

On January 15, 2026, the Eleventh Judicial Circuit in and for Miami-Dade County issued Administrative Order No. 26-04 governing disclosure and use of generative artificial intelligence by litigants. *See* Admin. Order No. 26-04, Disclosure of Use of Generative Artificial Intelligence by Attorneys and Self-Represented Litigants, Fla. 11th Jud. Cir. (Jan. 15, 2026). The Order applies to attorneys and self-represented litigants and emphasizes the continuing duty of candor to the tribunal. *Id*. It clarifies that the use of generative AI does not relieve any attorney or self-represented litigant of the obligation to independently verify the accuracy of all factual assertions and legal authority or of the duty to comply

with applicable statutes, procedural rules, and the Rules Regulating the Florida Bar. *Id*. The Order further authorizes sanctions for noncompliance, including—but not limited to—striking the filing, denial of the requested relief, monetary sanctions, contempt proceedings, referral to The Florida Bar or other appropriate authority, and any other sanction deemed appropriate by the Court. *Id*.

Because the Second Amended Complaint relies on fabricated legal authority, Defendants respectfully request that the Court dismiss it as a sanction for failing to conform to the procedural rules.

## V. <u>Count I Fails to State a Cause of Action for Disability Discrimination</u>

In Count I of the Second Amended Complaint, the Plaintiff appears to allege a violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., based on the presence of an alleged "infestation" in his apartment. However, the Plaintiff fails to allege sufficient facts to state a claim under the relevant provisions of the statute and as such should be dismissed.

The FHA, as amended by the Fair Housing Amendments Act of 1988, prohibits discrimination in housing based on disability. See *Pub. L. No. 100-430*, 102 Stat. 1619 (1988) (codified at 42 U.S.C. § 3604(f)). Section 3604(f) makes it unlawful:

> (1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter; (B) a person residing in or intending to reside

in that dwelling after it is sold, rented, or made available; or (C) any person associated with that buyer or renter.

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person or a person associated with that person.

Section 42 U.S.C. § 3604(f)(3)(B) further makes it unlawful to "refuse to make reasonable accommodations in rules, policies, practices, or services when such accommodation may be necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling." A person is disabled within the meaning of the FHA if he has: (1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of such an impairment; or (3) been regarded as having such an impairment." 42 U.S.C. § 3602(h)(1) – (3)).

To set forth a valid FHA claim for disability discrimination based on a failure to provide a reasonable accommodation, a plaintiff must establish that: (1) he is disabled within the meaning of the FHA and that the defendant knew or should have known; (2) the defendant knew the accommodation was necessary to afford the individual equal opportunity to use and enjoy his dwelling; (3) such accommodation is reasonable; and (4) the defendant refused to make the accommodation. *Adams v. Lake*, 2017 U.S. Dist. LEXIS 232324 (M.D. FL 2017) (citing

*Schwartz v. City of Treasure Island*, 544 F.3d 1201, 1218-1219 (11th Cir. 2008)). When there is no accommodation request of insufficient information for the housing entity to know or suspect an accommodation, such cases are dismissed. *Pike v. Heron Cay Homeowners Ass'n*, 2017 U.S. Dist. Lexis 46811 (SDFL Mar 24 2017).

Here, the Plaintiff has not alleged any facts indicating that Defendants took any adverse action against him because of a disability, nor that an alleged infestation was in any way related to or motivated by discriminatory animus toward a disability. At most, the Plaintiff alleges the existence of a condition in the apartment that could affect any tenant regardless of disability status.

The Plaintiff also vaguely mentions the phrase "reasonable accommodation" in his Second Amended Complaint, but he does not allege that he requested a reasonable accommodation from Defendants. See EFC No. 97. Lines 570-73. Without a request for a reasonable accommodation, FHA claims fail. Moreover, he conclusively alleges that he has a disability within the meaning of the FHA but never provides facts to establish that point. See EFC No. 97, Lines 541-42. The Plaintiff merely asserts that Defendants "were informed of [his] disability status during the leasing process," but provides no factual allegations explaining how Defendants were supposedly informed or what information they received. See EFC No. 97, Lines 546-48.

The Plaintiff also never provided verification of the disability-related need for a reasonable accommodation, which would have been necessary since he does not allege to have a visibly obvious or apparent disability. Therefore, Plaintiff has not shown that Defendants knew he had a disability within the meaning of the FHA. Accordingly, Plaintiff has failed to state a plausible claim under 42 U.S.C. § 3604(f), and this cause of action should be dismissed.

## VI. Count II Fails to State a Cause of Action for Violations of Florida Residential Landlord and Tenant Act

Count II of the Plaintiff's Amended Complaint asserts that Defendants failed to maintain the subject property in a condition fit for human habitation and, on that basis, purports to state a cause of action for "Breach of Florida's Residential Landlord Tenant Act." However, "Breach of Florida's Residential Landlord Tenant Act" is not a recognized independent cause of action under Florida law.

In Florida, it is well-established that a violation of the Florida's Residential Landlord Tenant Act is only potential evidence of negligence. *Paterson v. Deeb*, 472 So. 2d 1210 (Fla. 5th DCA 1985); *Bennett M. Lifter, Inc. v. Vardnado*, 480 So. 2d 1336 (Fla. 3rd DCA 1985). However, a violation of the Florida's Residential Landlord Tenant Act is not negligence per se, and thus it must be alleged and proven that the landlord had actual or constructive knowledge of the violation said to be creating a dangerous condition for sufficient time to have it remedied. *Paterson v. Deeb*, 472 So. 2d 1210, 1217 (Fla. 5th DCA 1985) (*citing Firth v. Marhoefer*, 406 So. 2d

521 (Fla. 4th DCA 1981)). A violation of this statute is not conclusive evidence of negligence. *See* Fla. Std. Jury Inst. 401.9.

Here, Plaintiff attempts to plead that a violation of the Florida's Residential Landlord Tenant Act is a cause of action, in itself, and that violation of the statute is negligence per se. Plaintiff attempts to bypass the required elements to prove negligence and attempts to allege that the Defendants' alleged breach of this statute is deemed an automatic breach of the duty to maintain the premises. However, breach of this statute is merely potential evidence that the Defendants may have breached their duty to maintain, which, by itself, does not establish breach, as it is not conclusive evidence of negligence. Accordingly, Count II should be dismissed for failure to state a cause of action.

**VII.** **Count III Fails to State a Cause of Action for Negligence Per Se/or Prima Facie Negligence.**

**a.** **Plaintiff Fails to Plead Negligence Per Se**

Under Florida law, a negligence-per-se theory requires that the plaintiff identify the particular statute, ordinance, or regulation that (i) sets the standard of conduct, (ii) was designed to protect a class of persons that includes the plaintiff, and (iii) was intended to prevent the type of harm alleged—plus causation and damages. See *DeJesus v. Seaboard Coast Line R.R. Co.,* 281 So. 2d 198, 200–01 (Fla. 1973) (explaining the categories of statutes that can support negligence per se and the required fit between the statute, protected class, and harm).

- 13 -

The Eleventh Circuit has enforced these pleading requirements. In *Resnick v. AvMed, Inc.*, the court affirmed dismissal of a negligence-per-se claim where the complaint failed to establish entitlement to relief under Florida law, underscoring that merely invoking the doctrine without tying it to a qualifying statutory violation is insufficient under *Twombly/Iqbal. Resnick v. AvMed, Inc.*, No. 11-13694, slip op. at 22–24 (11th Cir. Sept. 5, 2012) (published) (reversing in part but affirming dismissal of negligence-per-se count for failure to state a claim under Florida law).

Applied here, Plaintiff pleads "negligence per se" but does not identify any statute, code, or regulation that Defendants supposedly violated—much less allege that such enactment protects this Plaintiff from this type of harm. See EFC No. 97, Lines 671-731. That omission defeats the claim at the threshold under *DeJesus* and warrants dismissal under the Eleventh Circuit's pleading standards reflected in *Resnick*.

### b. <u>Plaintiff Fails to Plead Prima Facie Negligence</u>

"To be sustained as a claim of negligence, [the negligence count] must allege four elements: a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012). The Florida Supreme Court has emphasized that these elements represent the fundamental requirements for any negligence claim, stating that "to succeed on a claim of negligence, a plaintiff

must establish the four elements of duty, breach, proximate causation, and damages." *Limones v. Sch. Dist. of Lee Cnty.,* 161 So. 3d 384, 389 (Fla. 2015).

Florida courts recognize four recognized bases for imposing a duty of care: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Wallace v. Dean*, 3 So. 3d 1035, 1046–47 (Fla. 2009).

Plaintiff pleads a generic duty to "exercise reasonable care … including compliance with Florida statutes and administrative rules" governing pesticides, health/sanitary standards, and deceptive practices, but cites no specific statute or rule imposing a duty on these Defendants. That fails *Wallace*'s first duty basis. *See* ECF No. 97, lines 671–75; *Wallace v. Dean*, 3 So. 3d 1035, 1046–47 (Fla. 2009). Plaintiff cites no Florida decision interpreting any enactment to impose the asserted duty (second basis), and no precedent recognizing a common-law duty under these facts (third basis). *Id.* Plaintiff also offers only conclusions—"unsafe, unsanitary, and hazardous conditions," "chronic infestation," "repeated pesticide application"—with no defendant-specific facts establishing a duty under the circumstances (fourth basis). *Id.* Count III therefore fails to plead duty and should be dismissed.

Breach is not plausibly pled. Assertions that Defendants "violated multiple provisions of Florida law," "failed to abate chronic infestation," "authorized repeated pesticide application," and "marketed or leased the dwelling as habitable" are labels and conclusions that identify no specific act, actor, time, or standard of care. Such pleading is insufficient under Rule 8 and routinely rejected at Rule 12(b)(6).

The count recites "direct and proximate" causation and harm over "approximately 975 days," but alleges no non-conclusory facts linking any particular act or omission by any Defendant to a particular injury. The Eleventh Circuit requires factual matter that makes causation plausible, not labels. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Because Plaintiff fails to plead a cognizable duty source, fact-based breach, and a plausible causal nexus to specific damages, Plaintiff's negligence claim should be dismissed under Rule 12(b)(6).

## VIII. Count IV Fails to State a Cause of Action for Violation of FDUTPA, Fla. Stat. § 501.204.

Count IV alleges a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204, which prohibits unfair methods of competition and unfair or deceptive acts or practices in trade or commerce. To state a FDUTPA claim, a plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Bookworld Trade, Inc. v. Daughters of St. Paul,*

*Inc.*, 532 F. Supp. 2d 1350, 2007 WL 4124351 (M.D. Fla. Nov. 16, 2007); *KC Leisure, Inc. v. Haber,* 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008).

"Deceptive" has been defined as a representation, omission, or practice likely to mislead a consumer acting reasonably under the circumstances. *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014). "Unfair" means conduct that offends established public policy or is immoral, unethical, oppressive, or substantially injurious to consumers. *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001).

The Plaintiff's FDUTPA allegations consist of conclusory statements that Defendants acted unfairly or deceptively in connection with the lease, advertising, marketing, and managing residential rental properties. See EFC No. 97, Lines 736-39. The Second Amended Complaint does not identify any misrepresentation, omission or business practice that rises to the level of deception or unfairness as defined by Fla. Stat. § 501.204(1).

FDUTPA permits recovery only for "actual damages," which do not include consequential damages. *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314 (Fla. 4th DCA 1998). Actual damages are defined as the difference between the market value of the product or service as delivered and its value as it should have been delivered. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Plaintiff pleads no diminution in the market value of his unit and no difference

between the value received and the value promised. Without this essential element, Count IV fails as a matter of law and must be dismissed.

### IX. <u>Count V Fails to State a Cause of Action for Fraudulent Inducement</u>.

Fed. R. Civ. P. 9(b) states "[i]n alleging fraud or mistake, a party must state with particularity the circumstance constituting fraud of the mistake." In standard pleadings for fraud, a plaintiff must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1172. "Rule 9(b) does not require a plaintiff to allege specific facts related to the defendant's state of mind when the allegedly fraudulent statements were made." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Rather, "it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." Id. See *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1179.

Count V of Plaintiff's Second Amended Complaint alleges that "Defendants made affirmative representations of material fact, including that the residential unit was 'clean,' 'safe,' 'renovated,' and suitable for habitation." See ECF No. 97

Lines 798-801. Plaintiff does not identify the specific speakers, times or places of the alleged misrepresentation, therefore failing to satisfy Rule 9(b)'s requirements.

Moreover, Florida law prohibits veiling contract breaches as tort claims. "When, as here, a contract has been breached, a tort action lies only for acts independent of those acts establishing the contract's breach." *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("It is well established that breach of contractual terms may not form the basis for a claim in tort. Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort.") *Peebles v. Puig*, 223 So. 3d 1065, 1069 (Fla. 3d DCA 2017). Here, Plaintiff's allegations merely allege failures in the contractual lease relationship, not independent fraudulent conduct. Therefore, Count V should be dismissed for failure to state a proper cause of action in which relief can be granted.

## X. **Count VI Fails to State a Cause of Action for Toxic Trespass and Strict Liability.**

### a. **Plaintiff Fails to Plead Toxic Trespass**

The definition of a claim for trespass is exceedingly broad. Trespass comprehends any misfeasance, transgression, or offense that damages another person's health, reputation, or property. In *Destin v State*, 414 So.2d 516,517-18 (Fla. 1982), the Florida Supreme Court defined trespass as "the 'unlawful interference with one's person, property, or rights'…" and noted that "any act of 'trespass'

made not criminal by statute constitutes a private wrong under the common law which may be remedied by only an action for damages."

Florida toxic-trespass claims require factual allegations showing a physical invasion by an identifiable substance. Courts applying Florida law have rejected toxic-trespass claims where plaintiffs failed to identify what chemical allegedly trespassed, in what form, and at what harmful level. See *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295–99 (11th Cir. 2005) (affirming judgment against plaintiffs asserting toxic trespass where they could not identify the toxic component or establish harmful levels). Absent identification of the allegedly trespassing chemical, Plaintiff cannot plausibly allege a trespassory invasion under Florida law.

Plaintiffs Second Amended Complaint contains no description of any toxic chemical introduced into the Plaintiff's residence by Defendants. Instead, Count VI relies on conclusory labels untethered to concrete facts — precisely the sort of pleading Fed. R. Civ. P. Rule 8 prohibits. Because the complaint neither pleads a discernible substance nor alleges non-conclusory facts establishing an unauthorized physical invasion attributable to any Defendant, the essential elements of trespass are not met, therefore, Count VI should be dismissed.

b. <u>**Plaintiff Fails to Plead a Strict-Liability Claim**</u>

Although Plaintiff asserts that "Defendants'" repeated indoor application of chemical pesticides inside an occupied residential dwelling, without curing the underlying infestation, constituted an "abnormally dangerous activity under Florida law", Count VI still does not plead a cognizable strict-liability claim.

In *Morgan v. W.R. Grace & Co.--Conn.*, 779 So. 2d 503, 504–05 (Fla. 2nd DCA 2000), the Second District Court of Appeal dismissed an abnormally dangerous activity claim where the plaintiff "provided no factual detail in her complaint concerning the level or type of radiation." The court noted that the complaint failed to explain "why, when, or how she came to decide that her property was radioactive." *Id*.

Here, Count VI identifies no governing legal standard beyond the label "abnormally dangerous activity," and pleads no facts addressing the Restatement (Second) of Torts § 520 factors—e.g., the degree of risk, likelihood and gravity of harm, inability to eliminate the risk by due care, common usage, appropriateness to the place, or the value-versus-danger balance—nor does it tie those factors to the specific pesticide(s), concentrations, applicators, times, or locations. Florida courts adopt and apply §§ 519–520 in determining whether an activity is abnormally dangerous, and they require a showing of a physical danger of a certain magnitude—not conclusory labels. *Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp.*, 460 So. 2d 510, 512–13 (Fla. 3d DCA 1984.) The Eleventh

Circuit further requires non-conclusory factual content to make such a theory plausible at the pleading stage. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Further, Plaintiff's own allegations acknowledge landlord-directed pest-control efforts during a tenancy. Florida's residential-tenancy framework affirmatively contemplates extermination as part of ordinary property maintenance; pleading that extermination occurred—without factual matter showing why these particular applications qualify as "abnormally dangerous" rather than a commonly undertaken maintenance activity—does not suffice. And because the count never connects any specific application by any specific Defendant to any specific entry of a particular chemical into Plaintiff's unit and to particular injuries, it also fails the plausibility requirement for strict-liability causation. At bottom, listing "abnormally dangerous activity" in a sentence does not cure the absence of elements and facts. Count VI should be dismissed under Rules 8(a) and 12(b)(6).

## XI. Count VII Fails to State a Cause of Action for Gross Negligence And Culpable Negligence Per Se

Count VII of the Second Amended Complaint should be dismissed because the Plaintiff's allegations do not rise to the level of conduct required for gross negligence under federal or Florida law. Gross negligence has been described as a failure to exercise even that care which a careless person would use. *FDIC v.*

*Gonzalez-Gorrondona*, 833 F. Supp. 1545, 1549 (S.D. Fla. 1993). Florida Statute § 768.72 defines gross negligence as a defendant's conduct that is "so reckless or wanting in care that it constitutes a conscious disregard or indifference to the life, safety, or rights of person exposed to such conduct." In Florida, gross negligence requires "(1) a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than normal and usual peril, (2) a showing that the defendant knew, or should have known, of the imminent danger to another, and (3) that the defendant's conduct demonstrated a conscious indifference to the consequences." *Glaab v. Caudill*, 236 So.2d 180, 183 (Fla. 2d DCA 1970).

In this case, Count IIV alleges that Defendants knew or reasonably should have known that the property suffered from chronic infestation and that repeated pesticide applications over a multi-year period created dangerous indoor conditions. See ECF No. 97, Lines 967-970. The Plaintiff failed to plead any allegations or ultimate facts that would show there was an imminent, clear and/or present danger amounting to more than a normal and usual peril (i.e, a prolonged maintenance dispute), that Defendants knew, or should have known, of imminent danger to the Plaintiff and that Defendants' conduct demonstrated a conscious indifference to the consequences. See *Glaab*, 236 So.2d 180 at 183. According to the Plaintiff's own allegations, Defendants repeated pesticide applications over a

multi-year period in an effort to cure a cockroach infestation. There is no indication that Defendants' alleged conduct constituted a failure to exercise care which even a careless person would use. To the contrary, assuming that the Plaintiff's allegations are true, Defendants took affirmative action in an effort to mitigate the alleged cockroach infestation which he complains.

"Culpable negligence per se" is not a civil cause of action. "Culpable negligence" is a criminal standard under Florida law—conduct so gross and flagrant that it reflects a reckless disregard for human life—codified at Fla. Stat. § 784.05. In discussing Florida offenses for immigration consequences, the Eleventh Circuit likewise treated "culpably negligent child neglect" as a criminal offense requiring a heightened mens rea. *Bastias v. U.S. Att'y Gen.*, 42 F.4th 1266, 1271 (11th Cir. 2022), cert. granted, judgment vacated sub nom. *Bastias v. Garland*, 144 S. Ct. 2704 (2024).

Plaintiff's attempt to fuse "culpable negligence" with negligence per se fails: culpable negligence belongs in criminal prosecutions under § 784.05, and there is no recognized civil claim styled "culpable negligence per se." Accordingly, Count VII should be dismissed for failure to state a civil claim premised on "culpable negligence per se" or gross negligence.

**XII.** **Count VIII Fails to State a Cause of Action for Breach of Quiet Enjoyment and for Reliance on Fabricated Legal Authority.**

A covenant of quiet enjoyment—whether express or implied—protects a tenant from eviction or disturbance caused by defective title or the landlord's conduct. *Hankins v. Smith,* 103 Fla. 892, 897 So. 494 (Fla. 1931). A breach may be shown through actual or constructive eviction. *Hankins v. Smith*, 103 Fla. 892, 895 (Fla. 1931); *Richards v. Dodge*, 150 So. 2d 477, 481 (Fla. 2d DCA 1963). In *Hankins*, the Court defined constructive eviction as "an act which, although not amounting to an actual eviction, is done with the express and implied intention, and has the effect, of essentially interfering with the tenant's beneficial enjoyment of the leased premises." *Hankins*, 103 Fla. at 895. Constructive eviction also requires that the tenant abandon the premises within a reasonable time after the landlord's wrongful act. *Kaplan v. McCabe*, 532 So. 2d 1354, 1356 (Fla. 5th DCA 1988). Even absent constructive eviction, a landlord is liable when authorized acts naturally and foreseeably cause substantial injury to the tenant's peaceful enjoyment. *G & G In-Between Bridge Club Corp. v. Palm Plaza Assocs., Ltd.*, 356 So. 3d 292, 298 (Fla. 2d DCA 2023).

Count VIII alleges breach of quiet enjoyment against all Defendants, but contains no facts showing that CONWAY PROPERTY HOLDINGS, LLC, RANDY X. FERREIRA, or LISA GORSUCH were parties to the lease or owed the Plaintiff any implied covenant of quiet enjoyment. Count VIII also does not contain any facts that would show Defendant BLUE ROCK PREMIER PROPERTIES, LLC, as

the Plaintiff's landlord, breached the implied covenant of quiet enjoyment. The Plaintiff does not allege that Defendant BLUE ROCK PREMIER PROPERTIES, LLC evicted him. Instead, he broadly asserts that all Defendants "breached this covenant by knowingly permitting chronic infestation, repeated pesticide saturation, and unsafe environmental conditions to persist," which allegedly interfered with his possession. See EFC No. 97, Lines 1013-1017.

Even if the Plaintiff's allegations are true, Count VIII fails to state a claim for breach of quiet enjoyment. The Plaintiff does not allege actual or constructive eviction, which is required under Florida law. *Kaplan v. McCabe*, 532 So. 2d 1354, 1356 (Fla. 5th DCA 1988). Nor does he allege any act by Defendant BLUE ROCK PREMIER PROPERTIES, LLC intended to, or that actually did, deprive him of the beneficial use of the premises as required by *Hankins*. Instead, he pleads generalized assertions of "chronic infestation" and "repeated pesticide saturation," without facts showing substantial interference rising to a breach, or any interference attributable to the other Defendants, who were not parties to his lease. Such conclusory allegations do not meet the factual specificity necessary to show that any Defendant substantially impaired his quiet enjoyment.

Additionally, the Second Amended Complaint and its attached Memorandum of Law contain multiple Generative AI "hallucinations" citing to legal authority that does not exist. In Count VIII, Plaintiff asserts that "under

Florida law, every residential lease contains an implied covenant of quiet enjoyment" and cites *Ginsberg v. Lennar Homes, Inc.*, 121 So. 3d 539 (Fla. 4th DCA 2013) and *Canal Co. v. City of St. Petersburg*, 76 So. 2d 429 (Fla. 1954). However, the correct citation for *Ginsberg* is 645 So. 2d 490 (Fla. 3d DCA 1994), and the case neither contains the quoted language nor discusses the implied covenant of quiet enjoyment; it addresses the rule that contract breaches cannot be recast as tort claims. Based upon information and belief, *Canal Co. v. City of St. Petersburg,* 76 So. 2d 429 (Fla. 1954) does not exist despite diligent search.

The Memorandum of Law attached to the Second Amended Complaint also miscites *Ginsberg v. Lennar Homes, Inc.* and adds two more wrongly cited authorities. One is *Hankins v. Smith,* 103 So. 2d 237 (Fla. 2d DCA 1958), which is a real case but is incorrectly cited and mischaracterized. The Plaintiff claims *Hankins* holds that "a breach occurs where the landlord's acts or omissions materially disturb the tenant's beneficial enjoyment of the property, even if the tenant does not vacate," yet *Hankins* says no such thing. See *Hankins v. Smith*, 103 Fla. 892, 895, 138 So. 494, 495 (Fla. 1931). The quotation attributed to *Hankins* appears nowhere in the opinion and is therefore fabricated or AI-generated, fundamentally misrepresenting the case.

The other case the Plaintiff cites in his Memorandum of Law is *Sullivan v. Stock,* 958 F. Supp. 2d 1360, 1366 (M.D. Fla. 2013), which bears a real case name but

is miscited and mischaracterized. The Plaintiff claims *Sullivan* supports the proposition that "substantial interference is actionable," yet no such language appears in the opinion. *Sullivan v. Stock*, 98 So. 2d 507 (Fla. 2d DCA 1957). The Plaintiff's reliance on *Sullivan* is therefore misplaced and further reflects the use of AI-generated or otherwise fabricated legal propositions unsupported by the cited authority. Count VIII should be dismissed because it fails to state a claim upon which relief can be granted and is predicated on incorrect and non-existent case citations.

**XIII.** **Count IX Fails to State a Cause of Action for Breach of Implied Warranty of Habitability.**

The Eleventh Circuit recognizes that a tenant's implied warranty of habitability claim sounds in contract, is anchored in state landlord–tenant law and the lease relationship, and carries contract remedies, such as rent abatement or restitution tied to periods of non-habitability. *Mann v. Pierce*, 803 F.2d 1552, 1557–60 (11th Cir. 1986) (allowing state-law habitability and contract claims and describing equitable rent restitution for substandard conditions).

Here, although the Amended Complaint's preface alleges Defendants "knowingly leased … an apartment … to an elderly, disabled former U.S. Marine for 32 months/975 days," the habitability count does not plead the lease, its basic terms, or which Defendant was landlord/contracting party. *See* ECF No. 97, lines 280–85, 1054–70. This fails to allege the threshold contractual relationship and duty

the count requires under *Mann*, which classifies the implied warranty of habitability as a state-law contract claim. *Mann v. Pierce*, 803 F.2d 1552, 1554–56 (11th Cir. 1986).

The Eleventh Circuit requires application of state substantive law and state-law elements; courts err when they depart. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1021–22 (11th Cir. 2014). In Florida, § 83.51 sets the habitability baseline—requiring code compliance or specified maintenance of structural components/plumbing, and, for multifamily dwellings, reasonable provisions for extermination—obligations that run "during the tenancy." Fla. Stat. § 83.51(1)–(2)(a)1. (2025). Because those duties attach to the landlord-tenant relationship, a count that omits the existence of the tenancy/lease and the defendant's role as landlord fails to connect the claim to the statutory/contract duty. Fla. Stat. § 83.51(1)–(2) (2025).

The count asserts an implied warranty, alleges "chronic infestation and repeated pesticide saturation," and claims harm over 975 days, but cites no governing code provisions, no facts linking conditions to § 83.51 maintenance/extermination duties, and no explanation of how "Defendants" violated the statutory framework. *See* ECF No. 97, lines 1057–66. Under *Winn-Dixie's* Erie-bound approach, such conclusory pleading does not plausibly allege a Florida-law breach.

For example, § 83.51(2)(a)1. addresses extermination, including notice, temporary vacation, and rent abatement when vacating is required. Fla. Stat. § 83.51(2)(a)1. (2025). Plaintiff alleges infestation/pesticide use but pleads no when/what pests/which units/any code violations or whether pesticide use was an attempted compliance measure (and, if so, why deficient). Without such specifics, breach is not plausibly pled.

*Mann* confirms habitability is a contract theory typically measured by rent abatement/restitution for proven periods of non-habitability. 803 F.2d at 1554–56. Plaintiff instead seeks "physical exposure, emotional distress, and economic loss," but alleges no contract-based measure (e.g., abatement tied to the 975-day period, rent paid during non-compliance, or diminution-in-rental-value) and no causal methodology connecting losses to a § 83.51 breach. Under Eleventh Circuit precedent, that failure is fatal. Count IX should be dismissed.

### XIV. Count X Fails to State a Cause of Action for Enterprise/Alter-Ego Liability and Aggravating Circumstances.

Enterprise/Alter-Ego Liability and Aggravating Circumstances are not causes of action, but theories of liability. "Alter ego liability is not a stand-alone cause of action. Rather, it is a theory to impose liability on an individual or corporation for the acts of the alter ego corporation, which must be pled within a substantive cause of action." *Ford v. Marquesas Cap. Partners, LLC*, No. 8:22-CV-2658-SCB-SPF, 2023 WL 6494870, at *2 (M.D. Fla. July 28, 2023). "Piercing the

corporate veil is not itself an action; it is merely a procedural means of allowing

liability on a substantive claim." *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*,

356 F.3d 731, 736 (7th Cir. 2004). The alter ego or mere instrumentality doctrine

outlined in § 41.10 of the Fletcher Cyclopedia of the Law of Corporations states:

> A claim based on the alter ego theory is not in itself a
> claim for substantive relief, but rather is procedural. A
> finding of fact of alter ego, standing alone, creates no
> cause of action. It merely furnishes a means for a
> complainant to reach a second corporation or individual
> upon a cause of action that otherwise would have existed
> only against the first corporation. An attempt to pierce
> the corporate veil is a means of imposing liability on an
> underlying cause of action such as a tort or breach of
> contract. It has been said that the alter ego doctrine is
> thus remedial, not defensive, in nature.

41.10. Alter ego or mere instrumentality doctrine, 1 Fletcher Cyc. Corp.

Federal courts within the 11th Circuit have established clear precedent that

enterprise theories do not constitute independent causes of action. In *Chesapeake*

*Employers' Ins. Co. v. Eades*, 77 F.Supp.3d 1241 (2015), the court explicitly held that

"rather than being a separate cause of action, the joint enterprise theory is a basis

of liability." *Id.* at 1260. Because alter ego liability, aggravating circumstances and

enterprise are not causes of action under federal and Florida law, Count X must be

dismissed.

**XV.    Count XI Fails to State a Cause of Action for Federal RICO.**

**1. The Plaintiff Lacks Standing to Pursue a Federal RICO Claim Because
There Has Been No Threshold Injury to His Business or Property.**

Count XI alleges a violation of federal RICO under 18 U.S.C. §1962(c). A plaintiff only has standing for a RICO claim if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3292, 87 L.Ed.2d 346 (1985). The injury to business or property limitation on RICO standing has a "restrictive significance." *Reiter v. Sonotone Corp.* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). It "helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, 634 F.3d 1352, 1361 (11th Cir. 2011)(citing *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994). Furthermore, the racketeering activity must be more than simply the "but for" cause of the injury; it must also be the proximate cause. *Beck v. Prupis*, 162 F.3d 1090, 1095-1096 (11th Circ. 1998), aff'd, 529 U.S. 494 (2000).

In this case, the Plaintiff lacks standing to pursue a federal RICO claim. Count XI contains no allegations showing that he suffered an injury to his business or property as required under 18 U.S.C. § 1964(c). See *Sedima*, 473 U.S. 479 at 496, 105 S.Ct. 3275 at 3292. The Plaintiff alleges that he suffered injury by virtue of (1) rent paid for an uninhabitable unit, (2) loss of use and enjoyment of the dwelling, (3) expenses associated with exposure to unsafe conditions, and (4) unspecified "other out-of-pocket losses." See EFC No. 97, Lines 1212-1216. None of these

constitute injuries to "business or property" within the meaning of federal RICO. Payment of rent for a residential unit, loss of use and enjoyment of leased housing, and personal discomfort or health-related expenses are personal or contractual injuries, not injuries to a business interest or tangible property interest recognized under RICO. To the extent Plaintiff suggests that he lost personal property value, Count XI contains no factual allegations supporting such a loss; it merely references unspecified "other out-of-pocket losses." *Id*.

Additionally, the Plaintiff fails to allege that Defendants' conduct was the proximate cause of any qualifying injury. The Eleventh Circuit has made clear that a RICO plaintiff must show that the defendant's predicate acts were the direct cause of the alleged injury. See *Beck*, 162 F.3d 1090, 1095-1096. The Plaintiff alleges no facts demonstrating a loss that directly flowed from any purported racketeering violation. Thus, Plaintiff has failed to plead the essential elements of standing to pursue federal RICO claim.

**2. The Plaintiff Failed to Plead the Necessary Elements of a Federal RICO Claim.**

To recover for a federal RICO claim, a plaintiff must establish that a defendant (1) operated or managed; (2) an enterprise; (3) through a pattern; (4) of racketeering activity that included at least two racketeering acts. *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1224 (11th Cir. 2014)(citing *Reeves v. Ernst & Young*, 507

U.S. 170, 172, 185, 113 S.Ct. 1163, 122 L.Ed 2d 525 (1993); *Sedima*, 473 U.S. 479, 496 & n. 14, 105 S.Ct. 3275, 87 L.Ed.2d 346).

First, the Plaintiff alleged Count XI against all Defendants. However, he failed to allege any facts that would show any Defendant operated or managed the alleged enterprise, as required by *Reves*. Merely acting as a landlord, property manager, or related entity does not satisfy the "operation or management" test. Under *Reves* and Eleventh Circuit precedent, a defendant does not meet this standard by performing ordinary business functions; liability under § 1962(c) attaches only to those who direct the enterprise's affairs, not those who merely carry out tasks. *Reves v. Ernst & Young*, 507 U.S. 170, 1170 (1993); *United States v. Starrett*, 55 F.3d 1525, 1542 (11th Cir. 1995).

Second, the Plaintiff also failed to plead a RICO enterprise distinct from the Defendants themselves. To state an enterprise, the Plaintiff must allege an ongoing organization whose members function as a continuing unit and that exists separate and apart from the racketeering activity. *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1274–75 (11th Cir. 2000) (en banc) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). The Plaintiff alleged no facts showing structure, hierarchy, decision-making, or continuity of purpose, but instead describes only unrelated actors engaged in ordinary business activities. See ECF No. 97.

Third, the Plaintiff did not allege a RICO "pattern." A pattern requires both relatedness and continuity—i.e., predicate acts that "amount to, or pose a threat of, continued criminal activity." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264–67 (11th Cir. 2004). And because RICO predicates are limited to the offenses enumerated in 18 U.S.C. § 1961(1), allegations about habitability, rent disputes, or regulatory non-compliance do not constitute predicate acts unless they are pleaded as one of those listed crimes (e.g., actual mail or wire fraud with the required particulars).

Fourth, the Plaintiff failed to plead any qualifying RICO predicate acts with the particularity required by Rule 9(b). Where RICO claims are based on mail or wire fraud, the complaint must allege the specific misrepresentations, who made them, when and where they were made, how they were misleading, and what defendants gained. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). The Plaintiff's vague assertions that Defendants transmitted interstate wire communications—such as "online listings, electronic messages, and lease-related communications"—during marketing and leasing fail to identify who said what, when, where, or how the statements were false or misleading, and therefore do not satisfy Rule 9(b). *Id.* at 1291–92 (affirming dismissal for lack of specificity). Because the Plaintiff has not alleged any facts establishing the four elements require for a federal RICO claim, Count XI should be dismissed.

**3. The Plaintiff Failed to Allege the Existence of Distinct "Person(s)" and "Enterprise" as Required for a Federal RICO Claim.**

The enterprise element requires a plaintiff to allege the existence of two distinct entities: (1) a person and (2) an enterprise that is not simply the same person referred to by a different name. *Florida Evergreen Foliage v. E.I. Dupont De Nemours and Co.*, 336 F. Supp. 1239, 1261 (S.D. Fla. 2004)(citing *United States v. Turkette*, 452 U.S. 576, 583 (1981) and *Gross v. State*, 765 So.2d 39,43 (Fla. 2000). In this case, the Plaintiff failed to allege the existence of a distinct person and an enterprise. He only alleges the existence of an enterprise. It is not readily apparent from the Plaintiff's allegations which Defendant(s) he contends constitute an enterprise. The Plaintiff mentions Defendants CONWAY PROPERTY HOLDINGS, LLC, BLUE ROCK PREMIER PROPERTIES, LLC and RANDY X. FERREIRA. There are no allegations that pertain to Defendant LISA GORSUCH.

**4. The Plaintiff Failed to Comply with the Heightened Pleading Requirements for Fraud.**

Where a RICO claim is premised on mail or wire fraud, the plaintiff must satisfy Rule 9(b)'s heightened pleading requirements. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Rule 9(b) requires particularized allegations identifying the specific misrepresentations or omissions, who made them and when, how they were misleading, and what defendants gained as a

result. *Crawford's Auto Ctr. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1159 (11th Cir. 2019).

Here, the only two predicate acts supporting the Plaintiff's federal RICO claims are alleged fraud. As previously discussed, the Plaintiff failed to state a claim for fraud. In Count V, he alleges that Defendants made "affirmative representations that the unit was 'clean,' 'safe,' 'renovated,' and suitable for habitation." *See* ECF No. 97, Lines 798–801. In Count XI, he similarly alleges that Defendants transmitted interstate wire communications—including online advertisements, electronic listings, emails, and lease documents—that misrepresented or omitted the unit's true condition by portraying it as clean, safe, renovated, and habitable. *See* ECF No. 97, Lines 1183–1188.

However, the Plaintiff failed to comply with the heightened pleading requirements for fraud set forth in Fed. R. Civ. P. 9(b). Count XI does not contain any allegations setting forth (1) precisely what statements were made in what documents or what omissions were made; (2) the time and place of each such statement and the person responsible for making or not making each statement; (3) the content of such statements and the manner in which they mislead the plaintiff and (4) what the defendants obtained, if anything, as a consequence of the alleged fraud. See *Crawford's Auto Ctr.*, 945 F.3d 1150, 1159 (11th Cir. 2019).

### 5. The Plaintiff Failed to Establish a Pattern of Racketeering Activity.

It is well established that in order to prove a "pattern of racketeering activity" it is not sufficient to simply establish two isolated predicate acts. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004). RICO targets ongoing criminal activity, rather than sporadic, isolated criminal acts. *Id*. The Supreme Court case of *H.J. Inc. v Northweestern Bell Telephone Co.*, 492 U.S. 229 (1989), established a continuity requirement. The Supreme Court noted that continuity is centrally a temporal concept – and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear to one another, are distinct requirements. See *Id*. at 242. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. *Id*. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. *Id*.

In this case, the Plaintiff failed to sufficiently allege a pattern of racketeering activity. Count XI does not contain any factual allegations that would show continuity of Defendant(s)' alleged predicate acts of wire and mail fraud. See *H.J. Inc.*, 492 U.S. 229 at 242. The Plaintiff identified only a limited set of electronic communications related to his own leasing transaction in mid-2023 and provides no factual allegations of continued, long-term criminal activity or any threat of

future racketeering. The Plaintiff does not allege any related predicate acts involving other victims or transactions. For the reasons stated above, Count XI must be dismissed for failing to state a cause of action for federal RICO

### XVI. <u>Conclusion</u>

For the foregoing reasons, the Plaintiff's Second Amended Complaint should be dismissed with prejudice for failing to state a cause of action.

WHEREFORE, Defendants respectfully move this Honorable Court for an Order dismissing the Plaintiff's Second Amended Complaint with prejudice and for such other relief this Honorable Court deems just and proper.

**<u>CERTIFICATE OF CONFERRAL</u>**

I HEREBY CERTIFY that prior to filing this Motion, I attempted to schedule a meet and confer with *pro se* Plaintiff, Andrew Ensor, on February 6, 2026 regarding the relief sought, but the Plaintiff indicated that he did not have any availability prior to the filing deadline.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on February 6, 2026 and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

Respectfully submitted,

*Ashley E. Ettaro*
Lindsay T. Brigman, Esquire (654981)
Ashley E. Ettaro, Esquire (1002245)
WICKER SMITH O'HARA
 McCOY & FORD, P.A.
100 S. Ashley Dr., Suite 1800
Tampa, FL  33602
Telephone:   (813) 222-3939
Facsimile:     (813) 222-3938
E-mail: aettaro@wickersmith.com
Attorneys for Defendants

## SERVICE LIST

Andrew James Ensor
2367 Conway Rd., #218
Orlando, FL 32812
Telephone:   (407) 235-5301
AJEnsr@aol.com and via U.S. Mail at: 2367 Conway Road, #218, Orlando, FL 32812

Maura Krause, Esquire
Resnick & Louis, P.C.
4040 NE 2nd Ave., Suite 6D
Miami, FL 33137
Telephone:   (786) 472-6416
MKrause@RLAttorneys.com,AAumiller@RLAttorneys.com,
LSchneider@RLAttorneys.com

Angela Sekerka, Esquire.
Wilson Elser Moskowitz Edelman & Dicker LLP
161 N. Clark Street - Suite 4500
Chicago, IL 60601
Telephone: (914)-872-7992
angela.sekerka@wilsonelser.com